**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE NATIONAL ACADEMY OF TELEVISION ARTS AND SCIENCES, INC. and ACADEMY OF TELEVISION ARTS & SCIENCES, <br><br> *Plaintiffs*, <br><br> v. <br><br> MULTIMEDIA SYSTEM DESIGN, INC. d/b/a CROWDSOURCE THE TRUTH, <br><br> *Defendant* | CIVIL ACTION NO. 20-cv-7269 (VEC) |
| MULTIMEDIA SYSTEM DESIGN, INC. d/b/a CROWDSOURCE THE TRUTH, and JASON GOODMAN, <br><br> *Counterclaim Plaintiffs*, <br><br> v. <br><br> THE NATIONAL ACADEMY OF TELEVISION ARTS AND SCIENCES, INC. and ACADEMY OF TELEVISION ARTS & SCIENCES, <br><br> *Counterclaim Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION**
**TO DISMISS AND/OR STRIKE COUNTERCLAIMS**

December 11, 2020

Margaret A. Esquenet
B. Brett Heavner
Samuel V. Eichner
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................................1

II.    LEGAL STANDARDS ...................................................................................................1

III.   ARGUMENT .................................................................................................................2

      A.    The Copyright Act Preempts Counterclaim Plaintiffs' Tortious
            Interference, Abuse of Process, and Malicious Prosecution Counterclaims
            (Counterclaims 1, 2, and 6)....................................................................................2

      B.    The *Noerr-Pennington* Doctrine Bars Plaintiffs' Tortious Interference,
            Abuse  of Process, and Malicious Prosecution Claims............................................4

      C.    The Tortious Interference Counterclaims Must Be Dismissed...............................6

            1.    The First and Second Counterclaims Fail to Give Fair Notice of the
                  Counterclaims Pleaded Against Counterclaim Defendants ........................7

            2.    Counterclaim Plaintiffs Failed to Plausibly Allege Claims for
                  Tortious Interference With Nonbinding Business Relationships...............8

                 (a)    The Second Counterclaim Fails to Allege Any Specific
                           Business Relationship ........................................................9

                 (b)    The First and Second Counterclaim Fail to Allege
                            Wrongful Means .................................................................9

                 (c)    The First and Second Counterclaims Fail to Allege
                            Causation...........................................................................12

                 (d)    The First Counterclaim Fails to Allege Injury..............................13

            3.    Plaintiffs Was Justified In Serving A DMCA Notice................................14

      D.    The Declaratory Judgment Counterclaims Must Be Dismissed ..........................15

            1.    The Third Counterclaim Serves No Purpose Because It Mirrors
                  Issues Raised in the Complaint, Constitutes No Affirmative Cause
                    of Action, And Is Duplicative of Counterclaim Plaintiffs'
                  Affirmative Defenses ................................................................................16

             2.    The Fourth Counterclaim Serves No Purpose Because It Is Not An
                  Affirmative Cause of Action, Is Duplicative of Counterclaim
                  Plaintiffs' Affirmative Defenses, and Cannot Fully Resolve the
                  Libel Issues in the Case............................................................................18

      E.    Counterclaim Plaintiffs' Anti-SLAPP Claim Must Be Dismissed .......................19

i

F.    Counterclaim Plaintiffs' "Malicious Prosecution/Abuse of Process" Claim Must Fail (Sixth Counterclaim) ...........................................................................21

    1.    Failure to Plead Malicious Prosecution .....................................................22

    2.    Failure to Plead Abuse of Process ............................................................22

IV.   CONCLUSION.........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16 Casa Duse, LLC v. Merkin*,
791 F.3d 247 (2d Cir. 2015).....................................................................................9, 12

*Actava TV, Inc. v. Joint Stock Co.*,
412 F. Supp. 3d 338 (S.D.N.Y. 2019).............................................................................22

*Aldens, Inc. v. Packel*,
524 F.2d 38 (3d Cir. 1975)...............................................................................................15

*Am. Geophysical Union v. Texaco Inc.*,
60 F.3d 913 (2d Cir. 1994)...............................................................................................17

*Arista Records LLC v. Usenet.com., Inc.*,
No. 07-CV-8822-HB, 2008 WL 4974823 (S.D.N.Y. Nov. 24, 2008).........................15, 17, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................2

*Asia TV USA, Ltd. v. Total Cable USA LLC*,
No. 16-cv-6873, 2018 U.S. Dist LEXIS 54026 (S.D.N.Y. Mar. 29, 2018)......................22, 23

*Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc.*,
Case No. 06 Civ. 2652, 2009 WL 884515 (S.D.N.Y. Mar. 31, 2009).....................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................1, 2, 8, 10

*Berry v. Deutsche Bank Trust Co. Ams.*,
No. 07-CIV-7634, 2008 WL 4694968 (S.D.N.Y. Oct. 21, 2008) *aff'd*, 378 F.
App'x 110 (2d Cir. 2010) ................................................................................................23

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
404 U.S. 508 (1972)............................................................................................................4

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994)..........................................................................................................17

*Carvel Corp. v. Noonan*,
3 N.Y.3d 182 (2004)............................................................................................................9

*Carvel Corp. v. Noonan*,
350 F.3d 6 (2d Cir. 2003) ..................................................................................................7

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
   168 F.3d 119 (3d. Cir. 1999) ............................................................................................. 5

*Conley v. Gibson*,
   355 U.S. 41 (1957) ........................................................................................................... 8

*Couch v. Schmidt*,
   612 N.Y.S.2d 511 (N.Y. App. Div. 1994) ...................................................................... 22

*Cuillo v. Shupnick*,
   815 F. Supp. 133 (S.D.N.Y. 1993) ................................................................................ 23

*Curiano v. Suozzi*,
   63 N.Y.2d 113 (N.Y. 1984) ........................................................................................... 23

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010) ............................................................................................ 9

*DirecTV, Inc. v. Lewis*,
   No. 03-cv-6241, 2005 WL 1006030 (W.D.N.Y. Apr. 29, 2005) ...................................... 6

*Downtown Music Publ'g LLC v. Peloton Interactive, Inc.*,
   436 F.3d 754 (S.D.N.Y. 2020) ........................................................................................ 5

*Downtown Music Publ'g LLC v. Peloton Interactive, Inc.*,
   436 F. Supp. 3d 754 (S.D.N.Y. 2020) ........................................................................... 13

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   411 F.3d 384 (2d Cir. 2005) .......................................................................... 15, 17, 19

*Egiazaryan v. Zalmayev*,
   No. 11 CIV. 2670 PKC GWG, 2014 WL 1244790 (S.D.N.Y. Mar. 19, 2014) ............... 21

*Ginx, Inc. v. Soho All.*,
   720 F. Supp. 2d 342 (S.D.N.Y. 2010) ...................................................................... 20, 21

*Godinger Silver Art Ltd. v. Hirschkorn*,
   433 F. Supp. 3d 417 (E.D.N.Y. 2019) ...................................................................... 10, 11

*Gorfinkel v. Ralf Vayntrub, Invar Consulting Ltd.*,
   No. 11-CV-5802, 2014 WL 4175914 (E.D.N.Y. Aug. 20, 2014) .................................. 15, 18

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
   331 F. Supp. 3d 221 (S.D.N.Y. 2018), *reconsideration denied,* No. 15-CV-
   4244 (JGK), 2018 WL 5650004 (S.D.N.Y. Oct. 30, 2018) ............................................ 9

*Hamilton v. Accu-Tek*,
   935 F. Supp. 1307 (E.D.N.Y. 1996) ............................................................................... 5

*Hassan v. Deutsche Bank A.G.*,
  515 F. Supp. 2d 426 (S.D.N.Y. 2007), *aff'd sub nom. Hassan v. Deutsche
  Bank AG*, 336 F. App'x 21 (2d Cir. 2009) ..................................................................7

*Havoco Am., Ltd. v. Hollobow*,
  702 F.2d 643 (7th Cir. 1983) ....................................................................................5

*IGEN Int'l, Inc. v. Roche Diagnostics GMBH*,
  335 F.3d 303 (4th Cir. 2003) ....................................................................................5

*Interscope Records, et al. v. Kimmel*,
  No. 3:07-cv-0108, 2007 U.S. Dist. LEXIS 43966 (N.D.N.Y. June 18, 2007) ........15

*Ivoclar Vivadent, Inc. v. Ne. Dental & Med. Supplies, Inc.*,
  2006 U.S. Dist. LEXIS 61751 (W.D.N.Y. 2006) ....................................................16

*La Liberte v. Reid*,
  966 F.3d 79 (2d Cir. 2020).................................................................................20, 21

*Lee v. Park Lane Togs*,
  81 F. Supp. 853 (S.D.N.Y. 1948)............................................................................15

*Lokai Holdings, LLC v. Twin Tiger USA, LLC*,
  306 F. Supp. 3d 629 (S.D.N.Y. 2018)........................................................................2

*Lombardo v. Dr. Seuss Enterprises, L.P.*,
  No. 16 CIV. 9974 (AKH), 2017 WL 1378413 (S.D.N.Y. Apr. 7, 2017) ..........10, 11

*Martin Ice Cream Co. v. Chipwich, Inc.*,
  554 F. Supp. 933 (S.D.N.Y. 1983)............................................................................6

*Maverick Recording Co. v. Chowdhury*,
  No. CV-07cv200, 2008 U.S. Dist. LEXIS 63783 (E.D.N.Y. Aug. 19, 2008) ........19

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)................................................................................................18

*Mourabit v. Klein*,
  816 F. App'x 574 (2d Cir. 2020) ..............................................................................3

*N.Y. Stock Exch., Inc. v. Gahary*,
  196 F. Supp. 2d 401 (S.D.N.Y. 2002).................................................................22, 23

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*,
  87 N.Y.2d 614, 664 N.E.2d 492 (1996)....................................................................8

*P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*,
  232 F. Supp. 2d 220 (S.D.N.Y. 2002)......................................................................14

*P.S.I. Metals, Inc. v. Firemen's Ins. Co. of Newark*,
   839 F.2d 42 (2d Cir. 1988)........................................................................................23

*Pentagen Technologies Int'l Ltd. v. United States*,
   172 F. Supp. 2d 464 (S.D.N.Y. 2001) *aff'd*, 63 F. App'x 548 (2d Cir. 2003)..................23, 24

*Perez v. MTA*,
   11 Civ. 8655 (RWS), 2012 WL 1943943 (S.D.N.Y. May 29, 2012) .......................................2

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
   507 F.3d 117 (2d Cir. 2007)........................................................................................2

*PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*,
   818 F.2d 266 (2d Cir. 1987), *abrogated on other grounds by NBT Bancorp
   Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614 (1996) ............................................6, 13

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*,
   508 U.S. 49 (1993)................................................................................................4, 5

*RFP LLC v. SCVNGR, Inc.*,
   788 F. Supp. 2d 191 (S.D.N.Y. 2011)...............................................................11, 12, 13, 14

*Sankin v. Abeshouse*,
   545 F. Supp. 2d 324 (S.D.N.Y. 2008).............................................................................22

*Singh v. City of New York*,
   No. 19-CV-5030, 2020 U.S. Dist. LEXIS 175829 (E.D.N.Y. Sept. 24, 2020) ........................5

*State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*,
   374 F.3d 158 (2d Cir. 2004)........................................................................................7

*Stephens v. Trump Org. LLC*,
   205 F. Supp. 3d 305 (E.D.N.Y. 2016) ...........................................................................9

*Stevens v. Vodka & Milk, LLC*,
   No. 17-CV-8603 (JSR), 2018 WL 11222927 (S.D.N.Y. Mar. 15, 2018).............................3, 4

*Strickrath v. Globalstar, Inc.*,
   No. CO7–1941, 2008 WL 2050990 (N.D. Cal. May 13, 2008)............................................19

*Suburban Restoration Co. v. ACMAT Corp.*,
   700 F.2d 98 (2d Cir. 1983)........................................................................................5

*Sun Microsystems, Inc. v. Versata Enters., Inc.*,
   630 F. Supp. 2d 395 (D. Del. 2009)..............................................................................2

*T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*,
   312 F.3d 90 (2d Cir. 2002)........................................................................................5

*Transcience Corp. v. Big Time Toys, LLC,*
   50 F. Supp. 3d 441 (S.D.N.Y. 2014)...................................................................9

*Veltman v. Norton Simon, Inc.,*
   425 F. Supp. 774 (S.D.N.Y. 1977).....................................................................15

*Video Int'l Prod., Inc. v. Warner-Amex Cable Comm.,*
   858 F.2d 1075 (5th Cir. 1988) ............................................................................5

*Wachovia Bank, N.A. v. Burke,*
   414 F.3d 305 (2d Cir. 2005)................................................................................3

*Wilton v. Seven Falls Co.,*
   515 U.S. 277 (1995)..........................................................................................15

*Yeshiva Chofetz Chaim Radin, Inc. v. Village of New Hempstead,*
   98 F. Supp. 2d 347 (S.D.N.Y. 2000).............................................................19, 21

**Rules**

CPLR § 3211(g)................................................................................................20

CPLR § 3212(h)................................................................................................20

Fed. R. Civ. P. 12....................................................................................6, 20, 21

Fed. R. Civ. P. 12(b)(6).........................................................................1, 2, 8, 16

Fed. R. Civ. P. 12(f)........................................................................................2, 16

Fed. R. Civ. P. 41(a)...........................................................................................19

Fed. R. Civ. P. 56.........................................................................................20, 21

**Statutes**

17 U.S.C. § 106...................................................................................................3

17 U.S.C. § 512(c)..............................................................................................14

17 U.S.C. § 512(c)(3)(A)(v)................................................................................11

17 U.S.C. § 512(g)(2)(C)............................................................................4, 6, 23

NYCRL § 70-a....................................................................................................20

NYCRL § 70-a(1)(a)...........................................................................................20

NYCRL § 76........................................................................................................20

**Other Authorities**

5B Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1380
  (3d ed. 2004) ..........................................................................................................................2

72 N.Y. Jur. 2d Interference § 4 ...............................................................................................14

72 N.Y. Jur. 2d Interference § 12 ...............................................................................................6

72 N.Y. Jur. 2d Interference § 36 .............................................................................................10

U.S. CONST. amend. I .................................................................................................................4

Plaintiffs, The National Academy of Television Arts and Sciences and Academy of Television Arts & Sciences (collectively the "Television Academies") submit this Memorandum of Law In Support of their Cross-Motion to Dismiss and/or Strike Counterclaims (the "Cross-Motion") filed by Multimedia System Design, Inc. d/b/a Crowdsource The Truth and Jason Goodman (collectively "Counterclaim Plaintiffs").

## I.      INTRODUCTION

Counterclaim Plaintiffs' counterclaims for tortious interference, declaratory judgment, anti-SLAPP, and malicious prosecution/abuse of process lack merit.  Counterclaim Plaintiffs' tort claims are deficient for a variety for reasons, each of which is independently sufficient to dismiss the claims.  Specifically, each claim is preempted by the Copyright Act, fails to give fair notice of the nature of the claim, defectively pleaded and/or obviated by Television Academies' legitimate submission of a Digital Millennium Copyright Act ("DMCA") notice to enforce their copyright in the EMMY Statuette Design.  Counterclaim Plaintiffs' declaratory judgment claims are duplicative of affirmative defenses, mirror images of Plaintiffs' affirmative claims, and/or fail to fully resolve any of the issues in the case, and accordingly, should be dismissed. Counterclaim Plaintiffs' Anti-SLAPP claim should also be dismissed as inapplicable in federal court.  And Counterclaim Plaintiffs' malicious prosecution/abuse of process claims are not only defectively pleaded but also blocked by the *Noerr-Pennington* doctrine.  They too must be dismissed.

## II.     LEGAL STANDARDS

A complaint will only survive a Rule 12(b)(6) motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must "allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc*., 507 F.3d 117, 121 (2d Cir. 2007).

"Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.  Plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555.  While the Fed. R. Civ. P. 12(b)(6) standard requires courts to presume the truth of a Plaintiffs' plausible factual allegations, courts are not "bound to accept as true a legal conclusion couched as a factual allegation.'" *Perez v. MTA*, 11 Civ. 8655 (RWS), 2012 WL 1943943, at *3 (S.D.N.Y. May 29, 2012) (*quoting Iqbal*, 556 U.S. at 678).

Pursuant to Fed. R. Civ. P. 12(f), a Court may order stricken from a pleading any insufficient defense or redundant, immaterial, impertinent, or scandalous matter.  Motions to strike should be granted when doing so will "streamline the ultimate resolution of the action." 5B Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1380 (3d ed. 2004); *see also Lokai Holdings, LLC v. Twin Tiger USA, LLC*, 306 F. Supp. 3d 629, 645 (S.D.N.Y. 2018) ("Motions to strike serve to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.") (citing *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 402 (D. Del. 2009)).

## III.   ARGUMENT

### A.   The Copyright Act Preempts Counterclaim Plaintiffs' Tortious Interference, Abuse of Process, and Malicious Prosecution Counterclaims (Counterclaims 1, 2, and 6)

Under the doctrine of complete preemption, the Copyright Act preempts a state law claim when (1) "the claim applies to a work of authorship fixed in a tangible medium of expression and

2

falling within the ambit of one of the categories of copyrightable works," and (2) "the claim

seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive

rights already protected by copyright law under 17 U.S.C. § 106." *Mourabit v. Klein*, 816 F.

App'x 574, 577 (2d Cir. 2020).  Similarly, the DMCA was intended to "occup[y] an entire field

of regulation" and "leave[] no room for state law."  *Stevens v. Vodka & Milk, LLC*, No. 17-CV-

8603 (JSR), 2018 WL 11222927, at *2 (S.D.N.Y. Mar. 15, 2018) (*quoting Wachovia Bank, N.A.

v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005)).

Courts routinely find that tort claims premised on "wrongful use of DMCA takedown

notices" are preempted by the federal copyright law. *Id*. at *2 (collecting cases).   In *Stevens v.

Vodka & Milk*, the court found plaintiffs' tortious interference claims preempted by the DMCA,

reasoning that:

> DMCA takedown notices, and the system of which they are a part, are creations
> entirely of federal law. The DMCA is a complex and comprehensive statutory
> regime that meticulously details the steps that providers must take to avoid
> liability and that copyright holders must take to enforce their rights. Congress also
> included express remedies for alleged infringers by providing for a counter-notice
> system and a cause of action if fraudulent use of the notice and takedown
> procedures causes injury . . . . The pervasive nature of the DMCA, including an
> express remedy for the very wrong that counterclaimants here allege, makes
> reasonable the inference that Congress left no room for the States to supplement
> the remedies outlined in the DMCA.

*Stevens v. Vodka & Milk, LLC*, No. 17-CV-8603 (JSR), 2018 WL 11222927, at *2

(S.D.N.Y. Mar. 15, 2018) (internal quotations omitted).

Because Counterclaim Plaintiffs' tortious interference claims (counterclaims one

and two) are premised entirely on allegations of a "wrongful use of [a] DMCA takedown

notice[,]" *Stevens*, 2018 WL 11222927, at *2, they are preempted by federal copyright

law.  *See* ECF No. 12[1] at 36 ¶ 44 (alleging that Plaintiffs "intentionally interfered with

---

[1] Because the pagination and paragraphs in Defendant's Answer, Affirmative Defenses and Counterclaims (ECF No.

Mr. Goodman's relationship with YouTube by submitting to YouTube an allegedly meritless complaint of copyright infringement."); *id*. at 37 ¶ 51 ("The EMMYs wrongful conduct in filing a frivolous copyright claim with YouTube resulted in YouTube de-ranking Crowdsource The Truth's content.")  Accordingly, those claims are preempted by the federal Copyright Act.

The same is true of Counterclaim Plaintiffs' "Malicious Prosecution/Abuse of Process" claim (counterclaim 6), which is based on harm allegedly caused by Plaintiffs' "spurious copyright complaint."  *Id*. at 42 ¶ 84.  Counterclaim Defendants' complaint was filed pursuant to 17 U.S.C. § 512(g)(2)(C) (requiring copyright owner to "file[] an action seeking a court order to restrain the subscriber from engaging in infringing activity" to avoid reposting).  Accordingly, this claim is also premised on the alleged "wrongful use of DMCA takedown notices," as it attempts to plead malicious prosecution and abuse of process flowing from a lawsuit filed pursuant to 17 U.S.C. § 512(g)(2)(C).  Accordingly, counterclaim six is also preempted.  *Stevens*, 2018 WL 11222927, at *2 (S.D.N.Y. Mar. 15, 2018).

> **B.**  **The *Noerr-Pennington* Doctrine Bars Plaintiffs' Tortious Interference, Abuse of Process, and Malicious Prosecution Claims**

The First Amendment guarantees "the right of the people . . . to petition the Government for redress of grievances." U.S. CONST. Amend. I.  This right to petition—i.e., *Noerr-Pennington* immunity—extends to protect a party's right to access the courts.  *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972).

Consistent with the *Noerr-Pennington* doctrine, many courts shield litigants from claims related to the filing of a lawsuit.  *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures*

---

12) restart mid-document, Plaintiffs will use the ECF page number and paragraph when citing to this document.

*Indus.*, 508 U.S. 49, 63–66 (1993) (holding an action to protect a valid copyright falls within the protection of the *Noerr-Pennington* doctrine); *see also IGEN Int'l, Inc. v. Roche Diagnostics GMBH*, 335 F.3d 303, 310 (4th Cir. 2003) ("The *Noerr-Pennington* doctrine grants First Amendment immunity to those who engage in petitioning activity.  This includes the pursuit of litigation."); *see also Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 122 (3d. Cir. 1999); *Video Int'l Prod., Inc. v. Warner-Amex Cable Comm.*, 858 F.2d 1075, 1082-83 (5th Cir. 1988); *Havoco Am., Ltd. v. Hollobow*, 702 F.2d 643, 649 (7th Cir. 1983).

Thus, the *Noerr-Pennington* doctrine bars Counterclaim Plaintiffs' malicious prosecution and abuse of process claims.  *See T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93–94 (2d Cir. 2002) (affirming dismissal of defendant's abuse of process and tortious interference claims under *Noerr-Pennington*); *Suburban Restoration Co. v. ACMAT Corp.*, 700 F.2d 98, 101 (2d Cir. 1983) (collecting cases from the Second Circuit where "counterclaims for . . . abuse of process were dismissed" under *Noerr-Pennington*); *IGEN Int'l*, 335 F.3d at 310; *Singh v. City of New York*, No. 19-CV-5030, 2020 U.S. Dist. LEXIS 175829 (E.D.N.Y. Sept. 24, 2020) (finding that a party was "entitled to immunity under the *Noerr-Pennington* doctrine from claims of abuse of process and tortious interference"); *Hamilton v. Accu-Tek*, 935 F. Supp. 1307, 1317 (E.D.N.Y. 1996) (collecting cases finding that *Noerr-Pennington* extends to, among other things, claims of abuse of process and interference with business relations).

The *Noerr-Pennington* doctrine also bars Counterclaim Plaintiffs' tortious interference claims.  That doctrine applies not just to filed infringement claims, but also to prelitigation activities such as "threat letters."  *Downtown Music Publ'g LLC v. Peloton Interactive, Inc.*, 436 F.3d 754, 762–63 (S.D.N.Y. 2020) ("*Noerr-Pennington* also protects prelitigation efforts, including threat letters.") (internal citations omitted); *see also Prof'l Real Estate Investors*, 508

U.S. at 63–66 (actions to protect valid copyright fall within *Noerr-Pennington*).   Here, the Television Academies' DMCA takedown notice to YouTube is not only a prelitigation activity, but was the direct antecedent to this lawsuit, which was filed to enforce the DMCA takedown notice pursuant to 17 U.S.C. § 512(g)(2)(C) (requiring copyright owner to "file[] an action seeking a court order to restrain the subscriber from engaging in infringing activity" to avoid reposting). Accordingly, the Television Academies prelitigation conduct in serving the DMCA takedown notice is protected by the *Noerr-Pennington* doctrine.  *See id.*; *DirecTV, Inc. v. Lewis*, No. 03-cv-6241, 2005 WL 1006030, at *5 (W.D.N.Y. Apr. 29, 2005) (granting Rule 12 motion to dismiss where "[t]he Court finds that prelitigation activities, such as those engaged in here, are protected by the *Noerr-Pennington* doctrine); *see also Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc.,* Case No. 06 Civ. 2652, 2009 WL 884515, at *6 (S.D.N.Y. Mar. 31, 2009).

Because *Noerr Pennington* immunity bars Counterclaim Plaintiffs' First, Second, and Sixth Counterclaims, they must be dismissed.

### C.      The Tortious Interference Counterclaims Must Be Dismissed

New York law recognizes claims for tortious interference, both with contracts and nonbinding business relationships, but the elements of those claims are different.  *See* 72 N.Y. Jur. 2d Interference § 12.  However, as among the various tortious interference claims based on nonbinding relationships (i.e., tortious interference with business relations, prospective business relations, economic advantage, prospective advantage, or pre-contractual relations), the "elements of the tort are the same."  *Martin Ice Cream Co. v. Chipwich, Inc.*, 554 F. Supp. 933, 945 (S.D.N.Y. 1983); *see also PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 269 (2d Cir. 1987), *abrogated on other grounds by NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc*., 87 N.Y.2d 614, 621 (1996)) ("Regardless of the appellation employed, the elements necessary to establish such a claim remain constant.")

To prevail on a claim for "tortious interference with business relations" under New York law, a party "must prove that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship."  *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 171 (2d Cir. 2004) (*citing Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003); *see also Hassan v. Deutsche Bank A.G.*, 515 F. Supp. 2d 426, 427 (S.D.N.Y. 2007), *aff'd sub nom. Hassan v. Deutsche Bank AG*, 336 F. App'x 21 (2d Cir. 2009) (enumerating those same elements for a claim of "tortious interference with prospective business relations").

### 1.     The First and Second Counterclaims Fail to Give Fair Notice of the Counterclaims Pleaded Against Counterclaim Defendants

Counterclaim Plaintiffs pleaded their First Counterclaim as "Tortious Interference With Business Relations" (claiming interference with their relationship with YouTube) (ECF No. 12 at 36), and their Second Counterclaim as "Tortious Interference With Prospective Business Relations" (claiming interference with relations with future hypothetical Crowdsource the Truth fans) (ECF No. 12 at 37).  Although these claims are pleaded with different titles/headings (i.e., the Second Counterclaim adds "prospective"), a claim for "Tortious Interference With Business Relations" and one for "Tortious Interference With Prospective Business Relations" are substantively identical claims.  *See State St. Bank & Tr. Co.*, 374 F.3d at 171; *Hassan*, 515 F. Supp. 2d at 427.  Accordingly, it is unclear why Counterclaim Plaintiffs chose to title them differently.

Adding to the confusion, the First Counterclaim alleges a "contractual relationship with YouTube," but does not allege that contract was breached.  ECF No. 12 at 36 ¶ 42.  Indeed, to plead a tortious interference with contract claim, plaintiff must allege that a contract was

breached.  *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614, 620, 664 N.E.2d

492, 495 (1996) ("NBT urges that, as a matter of precedent and policy, a defendant's deliberate

interference with plaintiff's contractual rights that causes damage should be punishable as

tortious interference whether or not the contract was actually breached.  New York law is to the

contrary.")  Ultimately, it is ambiguous whether this allegation of a "contractual relationship

with YouTube" is intended to plead a tortious interference with contract claim.

Even before the U.S. Supreme Court raised the pleading standard required under Fed. R.

Civ. P. 12(b)(6), plaintiffs were required to give "fair notice of what the ... claim is and the

grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (*quoting Conley v. Gibson*, 355 U.S. 41,

47 (1957)).  That remains true under the *Iqbal/Twombly* pleading standard.  *Id*.  Yet

Counterclaim Plaintiffs have failed to meet even that less exacting notice-pleading standard, as

their decision to plead different-yet-synonymous appellations for identical claims and alleged a

"contractual relationship" instead of a non-binding business relationship cannot be sustained.

Because Counterclaim Plaintiffs have not properly identified these claims, the Television

Academies cannot properly defend themselves.  Accordingly, Counterclaim Plaintiffs' First and

Second Counterclaims should be dismissed.

### 2.   Counterclaim Plaintiffs Failed to Plausibly Allege Claims for Tortious Interference With Nonbinding Business Relationships

Counterclaim Plaintiffs First Counterclaim for tortious interference with "business

relations" and Second Counterclaim for tortious interference with "prospective business

relations" fail to allege interference with nonbinding business relationships at least because:

a)  The Second Counterclaim fails to identify any specific business relationship;

b)  The First and Second Counterclaims fail to allege wrongful means;

c)  The First Counterclaim and Second Counterclaim fail to allege proximate cause; and

d)  The First and Second Counterclaims fail to allege injury.

### (a)   The Second Counterclaim Fails to Allege Any Specific Business Relationship

The failure to identify a specific business relationship with a third party is "fatal" to a claim of tortious interference. *Stephens v. Trump Org. LLC*, 205 F. Supp. 3d 305, 311–12 (E.D.N.Y. 2016) (*quoting DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 115 (2d Cir. 2010)); *see Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 457 (S.D.N.Y. 2014) (same).

Here, the Second Counterclaim does not identify any specific third party with which Counterclaim Plaintiffs had a business relationship.  Instead, Plaintiffs' Second Counterclaim appears to be based on "YouTube de-ranking Crowdsource The Truth's content" which "resulted in Mr. Goodman missing out on the rapid growth that similar YouTube content creators have achieved based on the spike in viewership associated with the 2020 election."  ECF No. 12 at 37 ¶¶ 51, 52.   Nothing in these allegations "identify specific contracts that they would have won but for the [Counterclaim Defendants'] alleged interference."  *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 244 (S.D.N.Y. 2018), *reconsideration denied,* No. 15-CV-4244 (JGK), 2018 WL 5650004 (S.D.N.Y. Oct. 30, 2018); *Stephens*, 205 F. Supp. 3d at 311–12 (summarily dismissing this claim on this basis alone, without further justification or analysis).

For this reason, the Second Counterclaim should be dismissed.

### (b)   The First and Second Counterclaim Fail to Allege Wrongful Means

Unlike contract interference claims, claims for tortious interference with nonbinding business relationships are only actionable where defendant employs "wrongful means."  *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004).  Generally, to meet this "wrongful means" test, the defendant's conduct must be "criminal or independently tortious."  *Id*.; *see also 16 Casa Duse,*

*LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) (explaining that this "wrongful means" test "sets a high bar"); *Lombardo v. Dr. Seuss Enterprises, L.P.*, No. 16 CIV. 9974 (AKH), 2017 WL 1378413, at *4 (S.D.N.Y. Apr. 7, 2017) ("a plaintiff must allege that a defendant's conduct was motivated solely by malice or to inflict injury by unlawful means, beyond mere self-interest or other economic considerations.")

The First and Second Counterclaims fail to allege—because there would be no basis to do so—that either of the Television Academies employed "wrongful means," i.e., (1) committed a crime, (2) an independent tort, or (3) acted solely out of malice. *See* 72 N.Y. Jur. 2d Interference § 36. Rather than pointing to any specific crime or independent tort (because no such conduct exists), Counterclaim Plaintiffs vaguely allege that "the EMMYs improperly interfered with Mr. Goodman's relationship with YouTube" (ECF No. 12 at 36 ¶ 46) and that "[t]he EMMYs interference was improper" (*id*. at 37 ¶ 56). Such generalized allegations of "impropriety," without more, cannot support tortious interference claims, as Counterclaim Plaintiffs must plead "more than labels and conclusions." *Twombly*, 550 U.S. at 555.

Counterclaim Plaintiffs also vaguely allege that the Television Academies acted with "the improper purpose of harming Mr. Goodman," ECF No. 12 at 20 ¶ 2, but fail, as they must, to plausibly allege that this was Television Academies' sole motivation. *See Godinger Silver Art Ltd. v. Hirschkorn*, 433 F. Supp. 3d 417, 426-27 (E.D.N.Y. 2019). Counterclaim Plaintiffs fail to allege facts that might explain the Television Academies' alleged interest in "damaging Mr. Goodman's relationship with YouTube, other media platforms, as well as potential subscribers and sponsors." ECF No. 12 at 35 ¶ 35. Absent an explicit motive behind such allegations, they cannot "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.

Moreover, when a copyright owner enforces its rights as prescribed by federal law, such

10

actions are presumably taken, at least in part, to protect a valid copyright interest.[2]  *See, e.g.*, *Lombardo v. Dr. Seuss Enterprises, L.P.*, No. 16 CIV. 9974 (AKH), 2017 WL 1378413, at *5 (S.D.N.Y. Apr. 7, 2017) ("The cease-and-desist letters reflect defendant's belief-based on publicly available information—that the Play likely infringed on defendant's intellectual property. Whether that belief was right or wrong, defendant did not send the letters for the sole purpose of injuring plaintiffs. For this reason alone, plaintiffs' tortious interference claim fails."); *see also Godinger Silver Art Ltd.* 433 F. Supp. 3d at 426 ("Plaintiffs make no plausible allegation that Hirschkorn acted for any reason other than his earnest, subjectively held belief that plaintiffs were, in fact, infringing his patents.")  Because there is no dispute that the Television Academies have a valid copyright interest in their EMMY Statuette Design, it is simply not plausible that in serving a DMCA takedown notice on YouTube, they acted solely out of malice, without any concern for enforcing their copyright in the famous EMMY Statuette Design.  Even accepting the truth of Counterclaim Plaintiffs' allegations, the only plausible inference is that the Television Academies served a DMCA notice, at least in part, for the purpose of protecting their intellectual property rights and did not intend solely to inflict harm Counterclaim Plaintiffs.  *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011) (If Counter–Defendants' "interference [was] intended, at least in part, to advance [their] own competing interests," then there was no "wrongful purpose.")

Counterclaim Plaintiffs also allege that the Television Academies' lawsuit is "spurious." *See* ECF No. 12 at 42 ¶ 84.  While it is true that "New York courts have left open the possibility" that "meritless litigation" constitutes "wrongful means," Counterclaim Plaintiffs' claim that the

---

[2] 17 U.S.C. § 512(c)(3)(A)(v) requires the copyright owner to attest under penalty of perjury to a "good faith belief that the use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law."  Counterclaim Plaintiffs have not alleged that this attestation—which is inconsistent with a purely malicious DMCA notice—was untruthful.

Television Academies' lawsuit is meritless has no basis in law or in fact. *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015). Indeed, even if Counterclaim Plaintiffs prevail on their fair use theories, this litigation would not rise to the level of "frivolous, objectively unreasonable, or patently meritless." *Id.* at 263 (2d Cir. 2015) ("We conclude that his insistence, however misguided, on his copyright interest did not amount to 'the sort of egregious wrongdoing that might support a tortious interference claim in the absence of an independently unlawful act or evil motive.") (internal quotations omitted).

Absent plausible "allegations in the complaint capable of supporting a reasonable inference that . . . defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means," Counterclaim Plaintiffs' First and Second Counterclaims for tortious interference should be dismissed. *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011).

**(c)      The First and Second Counterclaims Fail to Allege Causation**

Even assuming that YouTube, by allegedly disabling Counterclaim Plaintiffs' access to YouTube's livestreaming functionality, harmed Counterclaim Plaintiffs (ECF No. 12 at 36 ¶ 47) and caused a loss of "subscribers, supporters, and sponsors," (*id.* at 37 ¶ 55), there is no plausible allegation—no can there be—that the Television Academies' submission of one DMCA takedown notice caused this speculative harm.

Notably, Counterclaim Plaintiffs' pleading reveals that YouTube does not disable or otherwise take action against an account based solely on single takedown notification. ECF No. 12 at 26 ¶ 21 (screen shot of YouTube account referencing "3 copyright strike" policy"). Counterclaim Plaintiffs would have this Court believe that the Television Academies' single DMCA takedown notification was the sole cause of YouTube's alleged temporary suspension of Counterclaim Plaintiffs' access to YouTube streaming functionality. *See* ECF No. 12 at 20–21

¶ 4.  But Counterclaim Plaintiffs do not (and apparently cannot) claim that the Television Academies were the first copyright owner to send a DMCA notification to YouTube regarding content posted by Counterclaim Plaintiffs.  Nor is it plausible (in view of YouTube's three-strike policy) that YouTube suspended the account after receiving just one notification.  *See id*.

Because Counterclaim Plaintiffs' own allegations admit that YouTube's policy is to suspend privileges only after three notifications—not one—Counterclaim Plaintiffs cannot plausibly allege that the Television Academies proximately caused YouTube to suspend Counterclaim Plaintiffs ability to livestream.  *See Downtown Music Publ'g LLC v. Peloton Interactive, Inc.*, 436 F. Supp. 3d 754, 766 (S.D.N.Y. 2020) (dismissing "a claim for tortious interference with prospective business relations under New York law" where plaintiff "insufficiently alleged that it would have entered into sync licenses with the Music Publishers but for [defendant's] conduct.") (internal citations and quotations omitted).  As such, the First and Second Counterclaims must be dismissed on this basis as well.

### (d)      The First Counterclaim Fails to Allege Injury

Where "the underlying business relations remained undisturbed," a claim for tortious interference is "fatally defective."  *RFP LLC*, 788 F. Supp. 2d at 198 (S.D.N.Y. 2011) (*citing PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 269 (2d Cir. 1987), *abrogated on other grounds by NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614, 621 (1996)).

Counterclaim Plaintiffs' First Counterclaim for "Tortious Interference With Business Relations" claim is based on its alleged relationship with YouTube.  ECF No. 12 at 36. Specifically, Counterclaim Plaintiffs claim harm from YouTube's "suspending Mr. Goodman's access to certain important features including the ability to 'live stream' in real time."  *Id*. at 36 ¶ 47.  Counterclaim Plaintiffs also allege, however, that "[e]ffective October 6, 2020, Mr.

Goodman's YouTube channel was restored to full functionality." *Id*. at 21 ¶ 6.  In addition, Counterclaim Plaintiffs allege that "Mr. Goodman makes no direct revenue from the videos he posts to YouTube, as his content is not monetized." *Id*. at 23 ¶ 12.

Based on Counterclaim Plaintiffs' own allegations, their "underlying business relations" with YouTube "remained undisturbed." *RFP LLC*, 788 F. Supp. 2d at 198.  And even if those relations were disturbed, there would be no financial consequence, as Counterclaim Plaintiffs admit there is no "direct revenue" from YouTube. *Id*. at 23 ¶ 12.  Accordingly, Counterclaim Plaintiffs have failed to allege injury resulting from any interruption in YouTube channel functionality and the First and Second Counterclaims must be dismissed.

### 3.    Plaintiffs Was Justified In Serving A DMCA Notice

Even if Counterclaim Plaintiffs' tortious interference claims are not preempted by the Copyright Act, and even assuming that Counterclaim Plaintiffs can establish that they properly pleaded the various elements of these claims (which as discussed above, they cannot), the Television Academies were justified in serving their DMCA notice.  "Procuring the breach of a contract in the exercise of an equal or superior right is acting with just cause or excuse and is justification for what would otherwise be an actionable wrong."  72 N.Y. Jur. 2d Interference § 4.

Here, the Television Academies have an "equal or superior right," namely, a copyright interest and federal copyright registration in the EMMY Statuette Design.  The Television Academies are permitted to enforce their registered copyrights through the DMCA's notice-and-takedown procedures. *See* 17 U.S.C. § 512(c).  Because that statutory enforcement process is the sole basis for Counterclaim Plaintiffs' tortious interference claims, the Television Academies necessarily "acted with just cause or excuse." 72 N.Y. Jur. 2d Interference § 4; *see also P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 232 F. Supp. 2d 220, 224–25 (S.D.N.Y. 2002)

14

("Seeking to protect a copyright by alerting a third party that the copyright is being infringed constitutes a justification defense to this claim.")

### D.      The Declaratory Judgment Counterclaims Must Be Dismissed

In deciding whether to entertain an action for declaratory judgment, the Second Circuit has instructed district courts to ask "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). Accordingly, if the counterclaim "add[s] nothing to the affirmative defenses" and "do[es] not constitute an independent cause of action," then a district court should dismiss the counterclaim. *Arista Records LLC v. Usenet.com., Inc.*, No. 07-CV-8822-HB, 2008 WL 4974823, at *4 (S.D.N.Y. Nov. 24, 2008).

A federal district court has considerable discretion in determining whether to entertain a declaratory judgment action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *Gorfinkel v. Ralf Vayntrub, Invar Consulting Ltd.*, No. 11-CV-5802, 2014 WL 4175914, at *6 (E.D.N.Y. Aug. 20, 2014) ("It is within the broad discretion of the trial court whether to exercise declaratory jurisdiction.") (quotation omitted).

Courts routinely dismiss declaratory judgment counterclaims that are duplicative or redundant of claims or defenses already pleaded in the litigation. *See Gorfinkel*, 2014 WL 4175914, at *6 (*citing Lee v. Park Lane Togs*, 81 F. Supp. 853, 853–54 (S.D.N.Y. 1948)); *Interscope Records, et al. v. Kimmel,* No. 3:07-cv-0108, 2007 U.S. Dist. LEXIS 43966, at *16 (N.D.N.Y. June 18, 2007); *Aldens, Inc. v. Packel*, 524 F.2d 38, 53 (3d Cir. 1975) (dismissing Attorney General's counterclaim for declaratory relief where counterclaim presented the "identical issues posited by the complaint"); *Veltman v. Norton Simon, Inc.*, 425 F. Supp. 774,

776 (S.D.N.Y. 1977) (dismissing counterclaim for declaratory relief as "redundant" and "moot"); *Ivoclar Vivadent, Inc. v. Ne. Dental & Med. Supplies, Inc.*, 2006 U.S. Dist. LEXIS 61751, at *6 (W.D.N.Y. 2006) (dismissing counterclaim where the counterclaim sought declaratory relief for the same claims enumerated in the underlying suit and was therefore duplicative and redundant).

This Court should dismiss Counterclaim Plaintiffs' two declaratory judgment claims for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Alternatively, the Court should strike the declaratory judgment claims, as they consist of redundant, immaterial, impertinent, and/or scandalous matter. Fed. R. Civ. P. 12(f).

    1.    **The Third Counterclaim Serves No Purpose Because It Mirrors Issues Raised in the Complaint, Constitutes No Affirmative Cause of Action, And Is Duplicative of Counterclaim Plaintiffs' Affirmative Defenses**

The Third Counterclaim for declaratory judgment of fair use alleges the following:

- YouTube has found Counterclaim Plaintiffs' use of the Infringing Image complies with its Terms of Service (ECF No. 12 at 38 ¶ 60) as a "non-infringing fair use (*id*. at 39 ¶ 65) and is "interest[ed]" in the "ultimate judicial resolution of this matter" (*id*. at 39 ¶ 66);

- The "Crony Graphic" appeared on a June 2020 broadcast for 10-15 seconds (*id*. at 38 ¶ 61) and was "*de minimis*" (*id*. at 38 ¶ 62);

- "The use of the Crony Graphic was not commercial in nature, as Mr. Goodman's YouTube channels are not monetized." (*id*. at 38 ¶ 63); and

- "There is public interest in obtaining a court ruling as to the fair use of the Crony Graphic." (*id*. at 39 ¶ 67).

The only portion of these allegations with any relevance to the issue of fair use is entirely duplicative of Counterclaim Plaintiffs' First Affirmative Defense. ECF No. 12 at 17 ("First

Affirmative Defense – the "Crony" graphic was fair use and/or de minimis.")  What remains are impertinent, immaterial, redundant, and dubious factual allegations about YouTube's Terms of Service, its alleged interest in this matter, and the public's alleged interest in this matter, none of which, even if true, could support a claim for a declaratory judgement for fair use.

Accordingly, the Third Counterclaim serves no legitimate purpose in this matter that the First Affirmative Defense does not already serve.  Notably, "fair use is an affirmative defense." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 590 (1994); *see also Am. Geophysical Union v. Texaco Inc*., 60 F.3d 913, 918 (2d Cir. 1994) ("Fair use serves as an affirmative defense to a claim of copyright infringement.")  It is not an "independent cause of action."  *Arista Records*, 2008 WL 4974823, at *4.  Nor do Counterclaim Plaintiffs plead the Third Counterclaim in order to "finalize the controversy" or "offer relief from uncertainty."  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co*., 411 F.3d 384, 389 (2d Cir. 2005).

Rather, Counterclaim Plaintiffs allege that YouTube is "interest[ed]" in the "ultimate judicial resolution of this matter" (*id*. at 39 ¶ 66) and that "[t]here is public interest in obtaining a court ruling as to the fair use of the Crony Graphic" (*id*. at 39 ¶ 67).  Such allegations reveal Counterclaim Plaintiffs' improper intentions for its Third Counterclaim, i.e. to make a public statement, as described elsewhere in Counterclaim Plaintiffs' pleading:

> The EMMYs should not be allowed to bully independent content creators who are exercising their God-given right to free speech.  In addition to defending his own interests, Mr. Goodman is prosecuting these counterclaims in order to create a precedent and public record that other New Media independent content creators can look to when they are the victim of similar "lawfare" attacks by large, established interests.
>
> ECF No. 12 at 22 ¶ 7.

Counterclaim Plaintiffs' desire to create a "public record" does not constitute a justiciable controversy with "sufficient immediacy and reality to warrant the issuance of a declaratory

judgment." *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007).  Such is precisely the kind of situation where this Court should exercise its considerable discretion in entertaining declaratory judgment claims and dismiss the Third Counterclaim.  *Gorfinkel*, 2014 WL 4175914, at *6.

> ### 2.   The Fourth Counterclaim Serves No Purpose Because It Is Not An Affirmative Cause of Action, Is Duplicative of Counterclaim Plaintiffs' Affirmative Defenses, and Cannot Fully Resolve the Libel Issues in the Case

Much like the Third Counterclaim, the Fourth Counterclaim seeks a "Declaration That Mr. Goodman's Commentary Was Non-Libelous Protected Speech," (ECF No. 12 at 40).  Such counterclaim is not only duplicative of Counterclaim Plaintiffs' affirmative defenses but also denies only a small portion of the Television Academies' affirmative libel claim and, accordingly, cannot resolve the underlying dispute over the Television Academies' libel claim.

Specifically, the Fourth Counterclaim alleges that "the Goodman Statement was non-libelous free speech." (*id*. at 40 ¶ 74), which is duplicative of the Second Affirmative Defense that "the 'Goodman Statement'. . . [was] protected speech under the First Amendment[.]"  ECF No. 12 at 17.  It also alleges that the Goodman Statement was "speculation," and stressed the absence of any "specific assertions," (*id*. at 40 ¶ 74), which is duplicative of the Seventh Affirmative Defense stating that the Goodman Statement was "opinion and supposition[,]" and that Goodman was "not, in fact, making any factual assertion."  ECF No. 12 at 17.

Moreover, the Fourth Counterclaim pertains only to the "Goodman Statement," which references only one of the four bases for the Television Academies' libel claim, as expressly pleaded in the Television Academies' Complaint.  *See* ECF No. 1 ¶ 76(d) (discussing the libelous claim that "Mr. Sharp became the President of NATAS as a result of nepotism through his father's involvement with a CIA propaganda operation.")  The Fourth Counterclaim seeks a

declaration that the "Goodman Statement" (ECF No. 12 at 13 ¶ 76), a large excerpt that includes the libelous statement at issue in Paragraph 76(d) of Counterclaim Defendants' complaint, was not libelous.

Because the claim for a declaratory judgment that the statement at issue in Paragraph 76(d) of Counterclaim Defendants' complaint is a "mirror image" of the affirmative libel claim, and because the remainder of the Goodman Statement is irrelevant to the Television Academies and to any actual controversy between the parties, it does not "raise an independent case or controversy" and should be dismissed. *Maverick Recording Co. v. Chowdhury*, No. CV-07cv200, 2008 U.S. Dist. LEXIS 63783 (E.D.N.Y. Aug. 19, 2008). The Fourth Counterclaim should also be dismissed because it pertains to only one portion of Counterclaim Defendants' libel claims, and thus cannot "finalize the controversy" or "offer relief from uncertainty." *Duane Reade*, 411 F.3d at 389; *see also Arista Records*, 2008 WL 4974823, at *5 (*citing Strickrath v. Globalstar, Inc*., No. CO7–1941, 2008 WL 2050990, at *5 n. 4 (N.D. Cal. May 13, 2008)) ("The adoption of Fed. R. Civ. P. 41(a), which provides that a plaintiff cannot terminate the action as of right once defendant has filed an answer, means that defendants no longer need a counterclaim solely to protect against a plaintiff's dismissal without prejudice.")

### E.   Counterclaim Plaintiffs' Anti-SLAPP Claim Must Be Dismissed

New York State has enacted a law designed to combat Strategic Lawsuits Against Public Participation ("SLAPP") i.e., an "Anti-SLAPP" law. However, New York's Anti-SLAPP provisions are inapplicable to federal claims, i.e., to the first four of the Television Academies' seven claims. *See* Compl. ¶¶ 51-67; *Yeshiva Chofetz Chaim Radin, Inc. v. Village of New Hempstead*, 98 F. Supp. 2d 347, 360 (S.D.N.Y. 2000) ("There is no reason why a federal claim, brought in a federal court for an alleged violation of the plaintiffs' federal statutory or constitutional rights, should be subjected to different standards of pleading or proof than are

called for under the Federal Rules."); *see also Ginx, Inc. v. Soho All.*, 720 F. Supp. 2d 342, 366

(S.D.N.Y. 2010), *as corrected* (Aug. 19, 2010) ("In every other case this Court has located,

federal courts have declined to apply Anti–SLAPP statutes to federal claims.").

Moreover, following the Second Circuit's decision in *La Liberte v. Reid*, New York Anti-

SLAPP claims cannot lie in federal court—even against state law claims—because the Anti-

SLAPP law imposes a "substantial basis" legal standard that conflicts with the Federal Rules of

Civil Procedure.  Specifically, Sections 70-a and 76 of the New York Civil Rights Law

("NYCRL") allow SLAPP targets to recover "damages, including costs and attorney's fees"

whenever a SLAPP target brings a special motion to dismiss pursuant to CPLR § 3211(g) or a

special motion for summary judgment pursuant to CPLR § 3212(h).  *See* NYCRL § 70-a (*citing*

CPLR § 3211(g) *and* CPLR § 3212(h).  These special motions "shall be granted unless the party

responding to the motion demonstrates that the cause of action has a substantial basis in law or is

supported by a substantial argument for an extension, modification or reversal of existing law."

CPLR §§ 3211(g), 3212(h).  And the substantive relief available to a SLAPP target under the

New York anti-SLAPP law is tied to this "substantial basis" standard.  *See* NYCRL § 70-a(1)(a).

In *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020), the Second Circuit found California's

Anti-SLAPP law inapplicable in federal court because the "probability of success" standard for

the special motion to strike under California's Anti-SLAPP law was inconsistent with the

*Iqbal/Twombly* plausibility standard under Federal Rule of Civil Procedure 12.  The Court

reasoned that "[t]he test is whether a Federal Rule of Civil Procedure answer[s] the same

question as the [special motion to strike]," finding that it did because "[t]he statute thus

establishes the circumstances under which a court must dismiss a plaintiff's claim before trial, a

question that is already answered (differently) by Federal Rules 12 and 56."  *La Liberte*, 966

F.3d at 87 (internal quotations omitted).

The same is true here.  New York's "substantial basis" standard is inconsistent with the *Iqbal/Twombly* plausibility standard under Federal Rule of Civil Procedure 12.  *Egiazaryan v. Zalmayev*, No. 11 CIV. 2670 PKC GWG, 2014 WL 1244790, at *3 (S.D.N.Y. Mar. 19, 2014) ("The Court finds that a claim may be dismissed for failure to state a claim but nonetheless have a substantial basis in fact and law."); *Ginx*, 720 F. Supp. 2d at 366 ("New York's legislature may have adopted the Anti–SLAPP law to elevate a plaintiff's burden at the pleading stage above 'plausibility' (the post-Twombly/Iqbal federal standard) to 'substantial basis,' but the United States Congress has thus far declined to follow suit.")  It is also inconsistent with the summary judgment standard of review that applies under Federal Rule of Civil Procedure 56.  *See La Liberte*, 966 F.3d at 87 (finding that California's Anti-SLAPP law "conflicts with Rule 56, which permits summary judgment only if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'")

"If state and federal law conflicts, federal courts must apply federal procedural law." *Yeshiva Chofetz Chaim Radin, Inc.*, 98 F. Supp. 2d at 359.  Accordingly, Counterclaim Plaintiffs' Fifth Counterclaim should be dismissed.[3]  *La Liberte*, 966 F.3d at 88 ("Accordingly, federal courts must apply Rules 12 and 56 instead of California's special motion to strike.")

### F.    Counterclaim Plaintiffs' "Malicious Prosecution/Abuse of Process" Claim Must Fail (Sixth Counterclaim)

Counterclaim Plaintiffs' Sixth Counterclaim alleges a curious mix of "Malicious Prosecution/Abuse of Process."  Each of these is a distinct cause of action in New York.  To the

---

[3] Because New York's anti-SLAPP law does not apply in federal court, the Court has no need to consider whether Counterclaim Plaintiffs have plausibly alleged a claim.  That said, even assuming the Anti-SLAPP law is applicable in federal court, the Television Academies maintain that Counterclaim Plaintiffs have not properly pleaded an Anti-SLAPP claim, at least because Counterclaim Plaintiffs are not protected by New York's Anti-SLAPP law. Accordingly, Counterclaim Defendants' reserve the right to brief these issues in their reply brief.

extent the Counterclaim Plaintiffs seek to combine these causes of action, that is improper.  *See, e.g.*, *N.Y. Stock Exch., Inc. v. Gahary*, 196 F. Supp. 2d 401, 415 (S.D.N.Y. 2002) (citing *Couch v. Schmidt*, 612 N.Y.S.2d 511, 513 (N.Y. App. Div. 1994)) (discussing court's dismissal of defendant's counterclaim because it "is an attempt to make a hybrid claim with some, but not all the necessary elements of abuse of process [and] malicious prosecution").  But even considered as separate causes of action, both claims fail and must be dismissed.

### 1.      Failure to Plead Malicious Prosecution

To show malicious prosecution in New York, a plaintiff must demonstrate "(1) the initiation of an action by the defendant against the plaintiff; (2) begun with malice; (3) without probable cause to believe it can succeed; (4) that ends in failure or, in other words, terminates in favor of the plaintiff."  *Actava TV, Inc. v. Joint Stock Co.*, 412 F. Supp. 3d 338, 351 (S.D.N.Y. 2019) (quoting *Sankin v. Abeshouse*, 545 F. Supp. 2d 324, 327 (S.D.N.Y. 2008)).[4]  If the case upon which a malicious prosecution claim is based "is ongoing, the defendant[] cannot allege that the action has terminated in their favor."  *Asia TV USA*, 2018 U.S. Dist. LEXIS 54026, at *12 (dismissing defendant's malicious prosecution counterclaim).  For that reason alone, Counterclaim Plaintiffs' malicious prosecution claim fails.

### 2.      Failure to Plead Abuse of Process

To prevail on a claim for abuse of process in New York, a claimant "must allege three essential elements: (1) regularly issued process, either civil or criminal; (2) an intent to do harm without excuse or justification; and (3) use of process in a perverted manner to obtain a collateral

---

[4] Other courts have phrased the elements differently, requiring that a plaintiff show that the defendant "(1) prosecute[d] a civil action against the plaintiff, (2) by or at the instance of the defendant, (3) without probable cause, (4) with malice, (5) which terminated in favor of the plaintiff, and (6) caus[ed] special injury."  *Asia TV USA, Ltd. v. Total Cable USA LLC*, No. 16-cv-6873, 2018 U.S. Dist LEXIS 54026, at *11 (S.D.N.Y. Mar. 29, 2018) (internal citations omitted).  Regardless of whether a malicious prosecution claim is broken into four or six elements, however, Counterclaim Plaintiffs' claim still fails.

objective." *N.Y. Stock Exch.*, 196 F. Supp. 2d at 415 (citing *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (N.Y. 1984)).  Merely instituting "a civil action by summons and complaint is not legally considered process capable of being abused."  *Id.* (citing *P.S.I. Metals, Inc. v. Firemen's Ins. Co. of Newark*, 839 F.2d 42, 44 (2d Cir. 1988)).  Even if an action is initiated in bad faith, that cannot alone support an abuse of process claim.  *Asia TV USA*, 2018 U.S. Dist. LEXIS 54026, at *12.

Here, Counterclaim Plaintiffs' abuse of process claim is premised entirely on harm allegedly caused by the Television Academies' "spurious copyright complaint."  *Id*. at 42 ¶ 84.  Yet because "a civil action by summons and complaint is not legally considered process capable of being abused," Counterclaim Plaintiffs' abuse of process claim must also be dismissed.  *N.Y. Stock Exch., Inc.*, 196 F. Supp. 2d at 415; *see also Berry v. Deutsche Bank Trust Co. Ams.*, No. 07-CIV-7634, 2008 WL 4694968, at *7 (S.D.N.Y. Oct. 21, 2008) *aff'd*, 378 F. App'x 110 (2d Cir. 2010) (same); *Pentagen Technologies Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 473 (S.D.N.Y. 2001) *aff'd*, 63 F. App'x 548 (2d Cir. 2003) (holding that there can be no abuse of process if purpose of process is prevailing in litigation itself); *Cuillo v. Shupnick*, 815 F. Supp. 133, 136 (S.D.N.Y. 1993).  As such, Counterclaim Plaintiffs' abuse of process claim must be dismissed.

Such claim must also be dismissed because Counterclaim Plaintiffs have failed to plead an intent to do harm without excuse or justification.  While it is true that Counterclaim Plaintiffs make the implausible allegation that the Television Academies filed this lawsuit with intent to harm Counterclaim Plaintiffs, even if that were true, the Television Academies had a justification for filing the lawsuit, i.e., it was necessary to preserve the Television Academies' rights.  *See* 17 U.S.C. § 512(g)(2)(C) (requiring copyright owner to "file[] an action seeking a court order to restrain the subscriber from engaging in infringing activity" to avoid reposting).

Finally, such claim must also be dismissed for the independent reason that Counterclaim Plaintiffs have failed to plead a purpose collateral to the litigation. *Pentagen Techs. Int'l Ltd.*, 172 F. Supp. 2d at 473. Counterclaim Plaintiffs' allege that "[t]he EMMYs made use of the legal process (filed the complaint in this action) for the improper purpose of preventing Mr. Goodman's YouTube channel from being reinstated." ECF No. 12 at 42 ¶ 85. Yet that allegation is entirely unsupported with any facts and implausible. Counterclaim Plaintiffs have not pleaded any credible allegations—because there are none—that the Television Academies had any interest in Mr. Goodman's YouTube channel beyond the infringing use of the EMMY Statuette Design.

## IV.   CONCLUSION

For the reasons above, respectfully urges the Court to dismiss all six of Counterclaim Plaintiffs' Counterclaims with prejudice.

Dated: December 11, 2020

Respectfully submitted,

s/   *Margaret A. Esquenet*
Samuel V. Eichner (Bar No. SE1967)
samuel.eichner@finnegan.com
Margaret A. Esquenet (admitted *pro hac vice*)
margaret.esquenet@finnegan.com
B. Brett Heavner (admitted *pro hac vice*)
b.brett.heavner@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

**Attorneys for Plaintiffs**
The National Academy of Television Arts and Sciences and the Academy of Television Arts & Sciences

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<u>s/  Samuel V. Eichner</u>