

**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
WWW.FINNEGAN.COM

MARGARET A. ESQUENET
202.408.4007
margaret.esquenet@finnegan.com

June 10, 2021

**MEMO ENDORSED**

<u>VIA ECF</u>

Hon. Judge Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:    *NATAS v. Multimedia Systems Design Inc.*, 20-CV-7269 (Caproni, J.)
             <u>Joint Status Letter Regarding Remaining Fact Discovery Issues</u>

Dear Judge Wang,

    We represent the Plaintiffs in the above-referenced matter. We write together with counsel for Defendant and Counterclaim Plaintiffs pursuant to the Court's June 4, 2021 Order (ECF 80) instructing the parties to file an updated joint status letter regarding remaining fact discovery issues.

    *Plaintiffs' Summary*

    Plaintiffs seek discovery sanctions against Defendant/Counterclaim Plaintiffs' for destroying evidence and other discovery misconduct, including failure to produce documents, serial violations of Court orders, and violations of the Federal Rules and Local Rules of Civil Procedure. Specifically, Plaintiffs seek an adverse inference on every issue that Plaintiffs were entitled to seek relevant information but were prevented from doing so due to Defendant/Counterclaim Plaintiffs' discovery misconduct. Also, because such discovery misconduct has dramatically increased Plaintiffs' litigation costs, Plaintiffs request monetary sanctions to recover the attorneys' fees and costs that Plaintiffs incurred due to such misconduct. Below Plaintiffs summarize the discovery issues that form the basis for Plaintiffs' application for discovery sanctions.

    1.    <u>Spoliation of Adobe File</u>. Defendant's representative testified that it edited the Adobe Photoshop Document file used to create the original Infringing Image and destroyed the data in that file relevant to this litigation. Defendant testified that Defendant did so at a time when Defendant knew its conduct was potentially infringing and subject to future litigation. The file would have revealed the facts and circumstances of Defendant's copyright and trademark infringement relevant to intent and bad faith, which supports fee shifting under the Copyright Act; whether Defendant removed copyright management information (CMI) in violation of 17 U.S.C. § 1202; and other information Plaintiffs were denied in discovery due to the file's destruction.

Hon. Judge Ona T. Wang
Page 2

**Defendant's Response**

Plaintiffs' claim of spoliation is absurd. It is not disputed that Defendant created and published the "Crony Graphic" that included a modified image of the EMMY Statuette. The content of that image is not in question.  Plaintiffs fail to explain how a software tool (the Adobe PSD file) used to create the image is relevant, given that it was never seen by the public. The only dispute is whether the "Crony Graphic" was fair use.

Defendant created the image at issue on June 12, 2020.  He received Plaintiffs' copyright strike on August 20, 2020.  Therefore, 9 weeks passed between the creation of the image and Defendant's first indication that litigation was possible. During that time, Defendant saved over the June 12 image numerous times as part of his ordinary course of business. At this time, Defendant had no duty to preserve evidence, nor any reason to believe that litigation was imminent.

      2.    Spoliation of Social Media Evidence.  Defendant/Counterclaim Plaintiff's Exhibit A to the parties June 3, 2021 joint letter suggests that social media accounts with relevant evidence were destroyed and not preserved pursuant to an appropriate litigation hold after this lawsuit began.  *See* Dkt. No. 79-1 at 5-6 (listing YouTube and Facebook accounts deactivated "on or around November 2020").  Those accounts may have revealed information supporting trademark infringement (e.g., comments on the distasteful association of the COVID-19 with the Emmy Statuette and tarnishment of the famous Emmy Statuette); information about Counterclaim Plaintiffs' social media activities promoting paid subscriptions during the time they allegedly lost revenue from the deactivation of one, unmonetized YouTube account; and other information Plaintiffs are unable to ascertain.

**Defendant's Response**

Defendants could have asked questions about Defendants' social media accounts at deposition. For clarity, YouTube and Facebook accounts listed in 79-1 as "terminated on or around November 2020" were terminated by YouTube and Facebook, not Mr. Goodman.

      3.    Defendant's Unsearched Email Addresses.  Defendant/Counterclaim Plaintiffs' document production is deficient for the reasons explained in the parties' May 18, 2021 letter. During Defendant's deposition, Defendant's representative identified email addresses not previously disclosed to Plaintiffs or searched for relevant documents.  These include jasongoodman_2000@yahoo.com, jasongoodman72@protonmail.com, cstt72@protonmail.com, and truth@crowdsourcethetruth.com, from which few, if any, documents were produced.

**Defendant's Response:**

Most of those email addresses are either very old, defunct, or do not belong to Goodman.
- Jasongoodman_2000@yahoo.com is a 21-year-old personal email address as shown by the name "_2000".  This address is rarely if ever used by Mr. Goodman.  Goodman keeps it active because it is linked to some legacy software licenses, but it is no longer used by Goodman for

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

Hon. Judge Ona T. Wang
Page 3

written correspondence.

- jasongoodman72@protonmail.com is an email address that was used by Mr. Goodman during 2017 and not thereafter.

- cstt72@protonmail.com is not Goodman's email address. It is controlled by an individual who uses that email account to harass Goodman.

4. <u>SubscribeStar New Subscriptions Data</u>. Defendant/Counterclaim Plaintiffs' say they derive revenue only from paid subscriptions offered through two websites: Patreon and SubscribeStar. Defendant/Counterclaim Plaintiffs claim damages from new subscriptions lost on these two platforms but have not provided new subscription information for SubscribeStar. Defendant/Counterclaim Plaintiff has also said in a recent video aired in 2021 that Patreon subscribers are encouraged to move to SubscribeStar, which suggests SubscribeStar is the primary platform for Defendant's paid subscriptions. Plaintiffs are entitled to this information, and Defendant/Counterclaim Plaintiffs were ordered by the Court on May 10, 2021 to make efforts to produce this information, but they have not produced any information, said what efforts were made to produce this information, or shared login information that would allow Plaintiffs an opportunity to locate this information.

**Defendants' Response**

On or about May 10, 2021, Defendant produced available reports downloaded from Patreon and SubscribeStar. Apparently, Plaintiffs were satisfied with the information they received regarding Patreon; however, they are not happy with the information from SubscribeStar. Plaintiffs' real complaint seems to be with the functionality of SubscribeStar and the kinds of reports SubscribeStar is capable of generating.

If Plaintiffs know how to get SubscribeStar to generate the report they are looking for, we invite them to tell us how.

5. <u>YouTube "Copyright Strikes" and Correspondence</u>. Counterclaim Plaintiffs' claim damages from lost Patreon/SubscribeStar subscriptions promoted on YouTube, claiming Plaintiffs' DMCA notice caused their YouTube account to be suspended, but refuse to provide information about prior complaints against that same YouTube account. Today, counsel produced a number of duplicative and apparently unreviewed documents showing correspondence with YouTube from irrelevant time periods or irrelevant YouTube accounts. Yet no documents produced to date show *other* complaints against Defendant's Jason Goodman YouTube account, which must have occurred in order for YouTube to terminate the Jason Goodman channel under its "three-strike" policy, and from which Counterclaim Plaintiffs' alleged damages flow.

**Defendant's Response**

Plaintiffs could have asked about Defendant's prior copyright strikes at deposition. On or about February 23, 2021, Defendant produced correspondence with YouTube that referred to copyright

Hon. Judge Ona T. Wang
Page 4

strikes and/or notifications from YouTube. On June 10, 2021, we updated our production to cover the period of February 2021 forward. This complaint has no merit.

6.      **Unpreparedness for Defendant's Deposition**.  Defendant's corporate representative was not prepared to discuss noticed topics during its Rule 30(b)(6) deposition and testified that he did not review the noticed deposition topics with counsel nor otherwise prepare for the deposition. *See* Dkt. 73, Transcript of Deposition of Jason Goodman, 13:20–15:14.  As a result, Defendant's 30(b)(6) representative was unable (or unwilling) to testify on: (1) which YouTube accounts were monetized, or the number/type of subscribers (*see id.*, 35:9–14, 48:14–49:2, 59:16–60:21); (2) Defendant's intentions for the Crony Graphic (*see id.*, 63:23–64:5); (3) the target demographic of Defendant's shows (*see id.*, 64:8–10); and (4) the "precautions" that Defendant testified were taken with respect to copyright permissions (*see id.*, 119:11–25).

**Defendants' Response:**

Jason Goodman, the sole owner of Defendant Multimedia System Designs, Inc., gave responsive answers to all of Plaintiff's questions. We invite the Court to review the transcript, which shows a fully responsive and well-prepared witness.

7.      **Misconduct During Defendant's Deposition**, Plaintiffs have serious concerns about the conduct of Defendant's corporate representative, who repeatedly obstructed the deposition through unnecessarily lengthy answers to targeted questions.  *See, e.g., id.*, 274:3–275:4 (responding to the question "you received this email on May 25, 2020, is that accurate?" with a response spanning 25 lines); *see also, e.g., id.*, 155:2–158:11, 194:20-200:11; 290:13–292:12. Defendant's counsel also inappropriately used speaking objections to reformulate the examining counsel's questions. *See, e.g., id.*, 123:9-21; 242:25-243:6; 244:6-244:8.

**Defendants' Response:**

Once again, Defendant invites the Court to review the transcript, which shows Plaintiffs' counsel struggling to ask non-argumentative questions and causing delays due to repeated technical failures. Notwithstanding, Defendant's counsel rarely objected, even though many of the questions were objectionable. Defendant stayed considerably longer than the prescribed 7 hours, which ended when Plaintiffs' counsel ran out of questions.

8.      **Serial Violations of Court Orders**.  Defendant/Counterclaim Plaintiffs have violated multiple Court Orders and applicable rules, a summary of which would far exceed the page limitations of this submission.  By way of example, as explained in the parties' May 18, 2021 letter, on May 5, 2021, Defendant/Counterclaim Plaintiffs produced a "document dump" without reviewing any of the documents produced in violation of the Court's December 3, 2020 Order and in violation of the ESI Order (ECF No. 35) and produced approximately 12,000 duplicate documents, and today, Defendant/Counterclaim Plaintiffs produced more duplicates.

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

Hon. Judge Ona T. Wang
Page 5

**Defendant's Response:**

The material facts of this case are not in dispute. Plaintiffs filed a copyright strike against Defendant on August 20, 2020. They did so without considering the existence of fair use, and without consulting counsel on the topic of fair use. Those facts are undisputed, and on the basis of those facts, Plaintiffs should lose on summary judgment.

Undoubtedly aware that they have a weak case on the merits, Plaintiffs' strategy has been to complain endlessly about the most minor discovery issues, hoping to persuade the Court through sheer volume. The Court should not be fooled: Plaintiffs have not been denied evidence; they simply wish it was more favorable to them. Defendant respectfully requests that the Court declare discover over, so that we may proceed to summary judgment and get a ruling on the merits.

Respectfully submitted,

| | |
|---|---|
| FINNEGAN, HENDERSON, FARABOW GARRETT & DUNNER LLP | JOHN H. SNYDER PLLC |
| *(signature)* | *(signature)* |
| Margaret A. Esquenet, Esq. | John H. Snyder, Esq. |
| B. Brett Heavner, Esq. | 555 Fifth Avenue, Suite 1700 |
| Samuel V. Eichner, Esq. | New York, NY 10017 |
| 901 New York Ave, NW | (917) 292-3081 |
| Washington, DC 20001 | john@jhs.nyc |
| margaret.esquenet@finnegan.com | Counsel for Defendant |
| b.brett.heavner@finnegan.com | |
| samuel.eichner@finnegan.com | |
| Counsel for Plaintiffs | |

---

The Court will hold an **in-person** conference in this matter on **Thursday, July 29, 2021 at 3:30 p.m.** at the Daniel Patrick Moynihan Courthouse, 500 Pearl St., Courtroom 20D.

**SO ORDERED.**

*(signature)*

Ona T. Wang      6/23/21
U.S.M.J.