UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>
THE NATIONAL ACADEMY OF TELEVISION<br>
ARTS AND SCIENCES, INC. and ACADEMY OF<br>
TELEVISION ARTS & SCIENCES,<br>
<br>
        *Plaintiffs*,<br>
<br>
   v.<br>
<br><br>
MULTIMEDIA SYSTEM DESIGN, INC. d/b/a<br>
"CROWDSOURCE THE TRUTH",<br>
<br>
        *Defendant*.
</td><td>20-cv-07269 (VEC)</td></tr>
</table>

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
DEFAULT JUDGMENT, PERMANENT INJUNCTION, AND ATTORNEYS' FEES**

**TABLE OF CONTENTS**

I.     INTRODUCTION ......................................................................................................1

II.    PROCEDURAL HISTORY .......................................................................................1

III.   STATEMENT OF FACTS .........................................................................................3

IV.    ARGUMENT .............................................................................................................5

       A.     DEFAULT JUDGMENT IS APPROPRIATE AS MSD IS NOT
              REPRESENTED BY COUNSEL..................................................................5

       B.     PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION.................6

       C.     PLAINTIFFS ARE ENTITLED TO RECOVER COSTS AND
              ATTORNEYS' FEES .................................................................................10

V.     CONCLUSION ........................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*4 Pillar Dynasty LLC v. New York & Co., Inc.*,
  933 F.3d 202 (2d Cir. 2019) ........................................................................................12

*Allee v. Medrano*,
  416 U.S. 802 (1974) ........................................................................................................9

*Conan Props. Int'l LLC v. Sanchez*,
  2018 U.S. Dist. LEXIS 138203 (E.D.N.Y. Aug. 15, 2018) ...........................................9

*Eagle Assocs. v. Bank of Montreal*,
  926 F.2d 1305 (2d Cir. 1991).........................................................................................5

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ....................................................................................................6, 7

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994) ......................................................................................................10

*Getty Images (US) Inc. v. Advernet, Inc.*,
  797 F. Supp. 2d 399 (S.D.N.Y. 2011)............................................................................5

*Grant v. West*,
  2001 U.S. Dist. LEXIS 19877 (E.D.N.Y. Nov. 6, 2001) ...............................................5

*H. Daya Int'l Co. v. Do Denim LLC*,
  2012 U.S. Dist. LEXIS 92227 (S.D.N.Y. June 29, 2012) ..............................................5

*Idea Vill. Prods. Corp. v. Bling Boutique Store*,
  2018 U.S. Dist. LEXIS 123714 (S.D.N.Y. July 24, 2018)..............................................7

*John Wiley & Son, Inc. v. Williams*,
  2012 U.S. Dist. LEXIS 162741 (S.D.N.Y. Oct. 26, 2012)..............................................9

*Jones v. Niagara Frontier Transp. Authority*,
  722 F.2d 20 (2d Cir. 1983) .........................................................................................5, 6

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  136 S. Ct. 1979 (2016) ............................................................................................10, 11

*Lattanzio v. COMTA*,
  481 F.3d 137 (2d Cir. 2007) ...........................................................................................5

*Matthew Bender & Co. v. W. Pub. Co.*,
    240 F.3d 116 (2d Cir. 2001) ...................................................................... 11, 12

*NY City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010) ...................................................................8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) ..........................................................................................12

*Restoration Hardware, Inc. v. Lighting Design Wholesaler, Inc.*,
    2018 U.S. Dist. LEXIS 65099 (S.D.N.Y. Apr. 18, 2018) .......................................6

*Rolex Watch U.S.A. v. City Styles 313*,
    2012 U.S. Dist. LEXIS 170596 (S.D.N.Y. Nov. 29, 2012) ...................................8

*Rowland v. California Men's Colony*,
    506 U.S. 194 (1993) ............................................................................................5

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) ...............................................................................6, 7

*Shapiro, Bernstein & Co. v. Continental Record Co.*,
    386 F.2d 426 (2d Cir. 1967) ...............................................................................5

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
    909 F.3d 519 (2d Cir. 2018) .............................................................................12

*Steele v. Bell*,
    2014 U.S. Dist. LEXIS 44976 (S.D.N.Y. Mar. 3, 2014) ......................................7

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
    800 F. Supp. 2d 515 (S.D.N.Y. 2011) ..........................................................6, 7, 8

*Viva Video, Inc. v. Cabrera*,
    9 F. App'x 77 (2d Cir. 2001) .............................................................................10

**Federal Statutes**

15 U.S.C. § 1116 ..........................................................................................................6

15 U.S.C. § 1117(a) .............................................................................................. 10, 12

17 U.S.C. § 502 ..........................................................................................................6

17 U.S.C. § 505 ........................................................................................................10

28 U.S.C. § 1654 .........................................................................................................5

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................11

Fed. R. Civ. P. 55..........................................................................................................5

Fed. R. Civ. P. 55(b)(2)............................................................................................ 1, 2, 3

Local Civil Rule 55.2(b)..................................................................................................1

## I.   INTRODUCTION

Pursuant to the Court's January 3, 2022 Order and in accordance with Your Honor's

Individual Rules of Practice, the Court's Individual Local Civil Rule 55.2(b), and Federal Rule

of Civil Procedure 55(b)(2), the Academy of Television Arts and Sciences ("ATAS") and The

National Academy of Television Arts and Sciences, Inc. ("NATAS") (collectively, the

"Academies" or "Plaintiffs") respectfully submit this memorandum of law in support of their

Motion for Default Judgment, Permanent Injunction, and Attorneys' Fees against Multimedia

System Design, Inc. d/b/a "Crowdsource the Truth" ("MSD").  For the reasons set forth below,

Plaintiffs respectfully request the following relief against MSD, its respective officers, agents,

servants, employees, successors and assigns, and all persons acting in concert with or under the

direction of MSD (collectively, "Defendant"): 1) the entry of a final judgment and permanent

injunction by default in order to prevent Defendant from infringing Plaintiffs' intellectual

property rights in the future; and 2) an award of costs and attorneys' fees in connection with this

action.

## II.   PROCEDURAL HISTORY

On September 4, 2020, Plaintiffs filed a complaint against MSD alleging copyright

infringement, trademark dilution, trademark infringement, and libel regarding MSD's

unauthorized use of an image depicting Plaintiffs' EMMY Statuette.  (Dkt. 1.)  On October 13,

2020, MSD—then represented by counsel—filed a partial motion to dismiss.  (Dkt. 11.)  It also

simultaneously filed an answer and asserted affirmative defenses and counterclaims.  (Dkt. 12.)

Plaintiffs filed a cross-motion to dismiss MSD's affirmative defenses and counterclaims.  (Dkt.

46.)  Subsequently, the parties engaged in motion practice and discovery.  On July 30, 2021, the

Court issued an order denying MSD's partial motion to dismiss or in the alternative for judgment

on the pleadings and granting Plaintiffs' motion to dismiss certain of MSD's affirmative

defenses and all of its counterclaims, among other rulings.  (Dkt. 98.)

On August 13, 2021, MSD's counsel filed a motion to withdraw.  (Dkt. 100.)  On the

same day, the Court endorsed defense counsel's motion to withdraw.  (Dkt. 104.)  The Court also

ordered MSD to instruct new counsel to file a notice of appearance no later than November 15,

2021, or else the Court would issue an order to show cause why Plaintiff should not be entitled to

default judgment against MSD.  *Id.*  MSD failed to comply with this Court's August 13, 2021

order as no counsel filed a notice of appearance by November 15, 2021.  On November 16, 2021,

the Court ordered MSD to show cause in writing by November 30, 2021 why Plaintiff should not

be entitled to a default judgment.  (Dkt. 131.)  On November 23, 2021, MSD's owner, Jason

Goodman, requested a 90-day extension of time to obtain new counsel for MSD.  (Dkt. 132.)

The Court granted the application in part on November 24, 2021, ordering MSD to instruct new

counsel to file a notice of appearance no later than December 15, 2021.  (Dkt. 134).  The Court

also ordered MSD to, no later than December 31, 2021, show cause in writing why Plaintiff

should not be entitled to a default judgment if new defense counsel did not file a timely notice of

appearance.  *Id.*

Again, MSD failed to comply with this Court's order because new counsel did not file a

timely notice of appearance.  (*See* Dkt. 140.)  On December 30, 2021, Mr. Goodman submitted a

letter to the Court stating that "Plaintiff should be denied default judgment for the reasons set

forth in Goodman v. Sharp et al. (*See* 1:21cv106270-VEC)." (Dkt. 139).  On January 3, 2022, the

Court issued an order holding that MSD "failed to show cause by December 31, 2021 why

Plaintiff should not be entitled to a default judgment."  (Dkt. 140.)

In the January 3, 2022 Order, the Court also ordered Plaintiffs to move for default judgment against MSD by January 10, 2022.  *Id.*  Plaintiffs therefore respectfully submit this Motion for Default Judgment, Permanent Injunction, and Attorneys' Fees ("Motion for Default Judgment").

## III.    STATEMENT OF FACTS

For more than 70 years, Plaintiffs have conferred the famous EMMY Award in recognition of excellence and achievement in television programming.  Amended Complaint, ¶ 2.  Since the EMMY Award was first presented in 1949, it has only grown in stature and fame.  *Id.*  Today the EMMY Award is the most famous television entertainment accolade in the world.  *Id.*  Since 1949, the EMMY Award has been conferred in the form of the iconic EMMY Statuette, which is symbolic of, and synonymous with, the famous EMMY Award.  *Id.* at ¶ 3.  The EMMY Statuette is a gold statuette molded in the shape of a winged figure holding an atom and is presented by the Plaintiffs during several annual award shows and featured in invitations, websites, tickets, advertisements, and promotions surrounding the awards.  *Id.* at ¶ 11.

As a result of the EMMY Statuette Design's distinctive nature and inherent strength, widespread use, advertising, publicity, promotion, and substantial sales, the EMMY Statuette has been famous since long before MSD began its unlawful acts alleged below.  *Id.* at ¶ 17.  As set forth in the Amended Complaint, Plaintiffs also co-own numerous valid and subsisting U.S. trademark registrations and U.S. Copyright Office registrations for their EMMY Statuette Design.  *Id.* at ¶ 18.[1]

MSD, a New York Corporation, operates a collection of social media accounts and similar distribution channels.  *Id.* at ¶ 7; MSD's Answer, ¶ 11.  MSD syndicates paid content

---

[1] For the sake of brevity, Plaintiffs respectfully refer the Court to the Complaint (Dkt. 1) and Amended Complaint.  (Dkt. 62).

through Patreon.com and SubscribeStar.com and advertises, markets, and promotes that content

through social media accounts on at least YouTube, Twitter, Facebook, and Instagram.

Amended Complaint, ¶ 27.  On or about June 12, 2020, two weeks before the Daytime EMMY

Awards Show aired on CBS, MSD posted its own award show—entitled "Crony Awards"—on

YouTube and other platforms.  *Id*. at ¶ 29.  The show honored countries that refused to lock

down and/or minimized the COVID-19 pandemic.  *Id*.

To market its "Crony Awards" show via social media, MSD, without authorization,

created and used an image depicting the EMMY Statuette's winged figure but replaced the

Statuette's atom with a depiction of the SARS-CoV-2 virus, as illustrated by the CDC (the

"Infringing Image").  *Id*. at ¶ 30.  MSD's use of the Infringing Image for its "Crony Awards"

impermissibly associated the famous EMMY Statuette and the EMMY Awards with dangerous

misinformation about the COVID-19 pandemic.  *Id*. at ¶ 31.  MSD's use of the Infringing Image

also linked the famous and venerated EMMY Award, EMMY Statuette, and EMMY Statuette

Design with the term "crony"—a term that is routinely used to denote corruption, nepotism, and

graft.  *Id*. at ¶ 32.  After Plaintiffs exercised their rights under the Digital Millennium Copyright

Act ("DMCA") by issuing a copyright violation notice to YouTube to regarding the Infringing

Image, MSD launched a targeted attack on social media against Plaintiffs and Mr. Adam Sharp,

President and Chief Executive Officer of NATAS.  *Id*. at ¶¶ 9–43.  Although Plaintiffs tried to

resolve this matter without litigation, once MSD filed a DMCA counter notification and refused

to withdraw it, which would compel YouTube to reinstate the Infringing Image, Plaintiffs had no

choice but to file this lawsuit.  *Id*. at ¶ 44.

## IV.    ARGUMENT

### A.    DEFAULT JUDGMENT IS APPROPRIATE AS MSD IS NOT REPRESENTED BY COUNSEL

It is well-established that a corporation cannot proceed *pro se*. *See Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007); *Jones v. Niagara Frontier Transp. Authority*, 722 F.2d 20, 22 (2d Cir. 1983) (citing *Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967)).  While 28 U.S.C. § 1654 grants a right of self-representation in federal court to natural persons, it prohibits a non-attorney individual from representing a corporation or other artificial entity.  *See Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308–10 (2d Cir. 1991). Simply stated, a corporate entity may "appear in the federal courts *only* through licensed counsel." *Rowland v. California Men's Colony*, 506 U.S. 194, 201-202 (1993) (emphasis added).

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, courts in the Second Circuit have entered default judgment against corporations that repeatedly fail to appear by licensed counsel.  *See H. Daya Int'l Co. v. Do Denim LLC*, 2012 U.S. Dist. LEXIS 92227 (S.D.N.Y. June 29, 2012) (granting plaintiff's motion for default judgment when defendant corporation failed to retain new counsel despite "requirements of the law and the order of this Court."); *see also Getty Images (US) Inc. v. Advernet, Inc.*, 797 F. Supp. 2d 399, 434 (S.D.N.Y. 2011) (finding that defendant corporation's repeated and unexcused failures to obtain counsel in copyright infringement lawsuit constitutes willful default). *See also Grant v. West*, 97 CV 6560 (ILG), 97 CV 6561 (ILG), 98 CV 4843 (ILG), 2001 U.S. Dist. LEXIS 19877, at *22 (E.D.N.Y. Nov. 6, 2001) (holding defendant in default after defendant failed to comply with court order requiring it to immediately retain counsel and file a notice of appearance by a specified date).

Although MSD is a corporate entity, it has not been represented by counsel since August

13, 2021.  (Dkt. 104.)   Despite numerous opportunities to retain new counsel, MSD has failed to

do so.  (Dkt. 140.)  Because MSD has failed to retain counsel and cannot represent itself in this

litigation, Plaintiffs respectfully request that the Court grant their Motion for Default Judgment.

*See Jones*, 722 at 22.

### B.        PLAINTIFFS ARE ENTITLED TO A PERMANENT INJUNCTION

Plaintiffs respectfully request that the Court permanently enjoin MSD, its respective

officers, agents, servants, employees, successors and assigns, and all persons acting in concert

with or under the direction of MSD (collectively, "Defendant") from any further infringement of

Plaintiffs' EMMY Statuette for the reasons detailed in the record and summarized herein.

A district court has authority under both the Lanham Act and the Copyright Act to grant

injunctive relief to prevent further violations of a plaintiff's trademarks and copyrights.  *See* 15

U.S.C. § 1116; 17 U.S.C. § 502.  Furthermore, a district court has the authority to grant a

permanent injunction on a motion for default judgment.  *See Restoration Hardware, Inc. v.*

*Lighting Design Wholesaler, Inc.*, No. 17-cv-5553 (KBF), 2018 U.S. Dist. LEXIS 65099, at \*16

(S.D.N.Y. Apr. 18, 2018).

A court may issue a permanent injunction based on a plaintiff's demonstration that it has

succeeded on the merits and: "(1) that it has suffered an irreparable injury; (2) that remedies

available at law, such as monetary damages, are inadequate to compensate for that injury; (3)

that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity

is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Salinger v. Colting*, 607

F.3d 68, 80 (2d Cir. 2010) (extending the *eBay* standard to copyright injunctions); *see also U.S.*

*Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 539–40 (S.D.N.Y. 2011)

(concluding that the four-factored injunction standard articulated in *eBay* and *Salinger* applies to the trademark infringement context).  Further, in intellectual property actions, permanent injunctions are normally granted when, such as here, there is "a threat of continuing violations." *Steele v. Bell*, No. 11-cv-9343 (RA) (RLE), 2014 U.S. Dist. LEXIS 44976, at *22 (S.D.N.Y. Mar. 3, 2014).

As set forth in the Amended Complaint and confirmed by this Court in its order on the parties' motions to dismiss, MSD infringed Plaintiffs' rights in the EMMY Statuette by, *inter alia* creating, reproducing, distributing, displaying, making unauthorized derivative works of, advertising, marketing, promoting, offering for sale, selling, and/or otherwise using or featuring the EMMY Statuette Design, including but not limited to through MSD's creation and dissemination of the Infringing Image.  Amended Complaint, ¶ 54.  *See also* Court's July 30, 2021 Opinion and Order (Dkt. 98).

District courts in this Circuit have issued permanent injunctions when the holders of intellectual property rights have shown potential losses of goodwill or reputation.  *See United States Polo Ass'n* , 800 F. Supp. 2d at 540–41 ("The Court therefore agrees that though the harm the [plaintiffs] will suffer in terms of reputation and goodwill cannot be quantified, the[y] will be irreparably injured in the absence of a permanent injunction.").  *See also Idea Vill. Prods. Corp. v. Bling Boutique Store*, No. 16-CV-9039 (KMW), 2018 U.S. Dist. LEXIS 123714, at *11–13 (S.D.N.Y. July 24, 2018) (finding legal remedies were not sufficient to protect plaintiff in the trademark context because the losses of goodwill and reputation are not precisely quantifiable).  Here, MSD's use of the Infringing Image in connection with its "Crony Awards" and resulting association of the EMMY Statuette and EMMY Awards with dangerous misinformation about

the COVID-19 pandemic has caused irreparable harm to Plaintiffs' goodwill and reputation as

well as to the goodwill and reputation associated with the EMMY Statuette and EMMY Awards.

A showing that there is no adequate remedy at law is satisfied where the harm to a

plaintiff cannot be adequately monetized or is not precisely quantifiable.  *See United States Polo*

*Ass'n*, 800 F. Supp. 2d at 541.  As the irreparable injury requisite for the preliminary injunction

overlaps with the absent lack of adequate remedy at law necessary to establish the equitable

rights, district courts in the Second Circuit have found that remedies at law are inadequate when

the plaintiff suffers loss to reputation and goodwill.  *See id*.; *Rolex Watch U.S.A. v. City Styles*

*313*, 2012 U.S. Dist. LEXIS 170596, at *11 (S.D.N.Y. Nov. 29, 2012) ("there are no adequate

remedies at law because the permanent harm to Plaintiff's reputation cannot be adequately

monetized.").  Here, Plaintiffs have suffered injury to their goodwill and reputation through

MSD's association of the Plaintiffs with dangerous misinformation.  Amended Complaint, ¶ 31.

These injuries are not precisely quantifiable and, as a result, remedies at law cannot adequately

compensate Plaintiffs for their injuries.  Therefore, Plaintiffs respectfully submit that the

requested injunction is necessary to fully redress the irreparable injury that they have suffered

due to MSD's infringing actions.

Further, the balance of hardships unquestionably and overwhelmingly favors Plaintiffs

because they have suffered, and will continue to suffer, irreparable harm to their goodwill and

reputation because of MSD's use of the Infringing Image to deny the severity and impact of the

COVID-19 pandemic.  In contrast, the only hardship Defendant will suffer is the loss of the

ability to continue to infringe Plaintiffs' rights in its copyrights and trademarks.

Additionally, the public interest is clearly served by a permanent injunction, as "[t]he

public has an interest in not being deceived – in being assured that the mark it associates with a

product is not attached to goods of unknown origin and quality." *NY City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 244 (S.D.N.Y. 2010) (granting a motion to enjoin the defendant from any further trademark violations).  *See also John Wiley & Son, Inc. v. Williams*, 2012 U.S. Dist. LEXIS 162741, at *7 (S.D.N.Y. Oct. 26, 2012) ("a permanent injunction would not disserve the public interest; rather, it will protect copyrighted material and encourage compliance with federal law.").  In this case, not only is the public's interest best served by preventing consumer misconception as to the source or sponsorship of MSD's content, but it will be further served by hindering MSD's continued spread of misinformation about the COVID-19 pandemic.

Finally, while Plaintiffs' filing of this lawsuit has temporarily prevented the reinstatement of the infringing content on YouTube, there remains a serious possibility that MSD's content will be reposted and/or that Defendant will continue to infringe Plaintiffs' intellectual property rights should such restraints be lifted.  *See Allee v. Medrano*, 416 U.S. 802, 810-11 (1974) ("It is settled that an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants would be free to return to (their) old ways." (quotation marks omitted)).  *See also Conan Props. Int'l LLC v. Sanchez*, No. 1:17-cv-00162-FB-RLM, 2018 U.S. Dist. LEXIS 138203, at *13 (E.D.N.Y. Aug. 15, 2018) (finding a strong threat of continuing infringement existed based on defendant's filing of a counter-notice after receiving a DMCA takedown notice and belief he could freely copy plaintiff's copyrighted work as long as he made minor modifications, as "such a belief increases the likelihood of ongoing infringement").  Therefore, Plaintiffs respectfully submit that the requested injunction is necessary to fully redress and prevent irreparable injury suffered by the Plaintiffs.

9

### C.   PLAINTIFFS ARE ENTITLED TO RECOVER COSTS AND ATTORNEYS' FEES

Plaintiffs respectfully submit that if the Court grants their motion for default judgment against MSD, they also are entitled to an award of attorneys' fees under both the Copyright Act and the Lanham Act.  *See* 17 U.S.C. § 505; 15 U.S.C. § 1117(a).  Section 505 of the Copyright Act allows the court to "award a reasonable attorney's fee to the prevailing party as part of the costs."  The Lanham Act also provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).

Section 505 of the Copyright Act "grants courts wide latitude to award attorney's fees based on the totality of circumstances in a case."  *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016).  *See also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) (holding that an award of attorneys' fees is a matter of the court's discretion).  There are multiple grounds on which a court may award a prevailing party attoneys' fees in a copyright infringement case, including if the losing party's position was not objectively reasonable.  *See Kirtsaeng*, 579 U.S. at 199 (the Supreme Court held that in exercising its discretion to grant an attorney's fee award under the Copyright Act, a court "should give substantial weight to the objective reasonableness of the losing party's position" as well as "due consideration to all other circumstances relevant to granting fees.").  The Second Circuit has held that "'[o]bjective unreasonableness' is generally used to describe claims that have no legal or factual support."  *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001).  Here, as this Court already held, MSD's affirmative defenses and counterclaims were objectively unreasonable.  In granting Plaintiffs' Motion to Dismiss Defendant's Counterclaims, the Court found that MSD believed that "the best defense *is a poorly thought out offense*."  (Dkt. 98.)   First, regarding MSD's request for a declaratory judgment on the basis that its use of the Infringing Image "was fair use and that Mr. Goodman's commentary

10

about Mr. Sharp and his father was not defamatory," the Court held "[n]either is an appropriate basis of a declaratory judgment." *Id.*  Second, the Court dismissed MSD's Anti-SLAPP claim, holding that "§ 70-a of New York's anti-SLAPP law is inapplicable in federal court because the law's 'substantial basis' standard conflicts with the pleading standard articulated in Federal Rule of Civil Procedure 12(b)(6)." *Id.*  Third, the Court held that MSD failed to state "a claim for abuse of DMCA." *Id.*  The Court also denied MSD's Partial Motion to Dismiss in its entirety. *Id.*  In other words, at the motion to dismiss stage, Plaintiffs prevailed on their copyright and trademark infringement claims. *Id.*  Accordingly, Plaintiffs are entitled to an award of attorneys' fees. *See Kirtsaeng*, 579 U.S. at 199.

Even if the Court found MSD's positions objectively reasonable, Plaintiffs are nonetheless entitled to attorneys' fees due to MSD's litigation misconduct in this action. *Id.* at 197 (holding that "a court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses."). *See also Matthew Bender & Co. v. W. Pub. Co.*, 240 F.3d 116, 126 (2d Cir. 2001) ("Misconduct before or during litigation can, in appropriate cases, provide the basis for an award of fees.").  Stated differently, because MSD's "conduct in this litigation . . . was truly in bad faith," as this Court has held, Plaintiffs are entitled to attorneys' fees under the Copyright Act. *Id.* at 125 (2d Cir. 2001).  MSD's consistent litigation misconduct, including for example in connection with written discovery, depositions, and the refusal to cooperate on required joint submissions is well-documented.  (*See*, *e.g.*, Dkts. 54, 58, 63, 66 and related hearing transcripts).  Moreover, on August 25, 2021, the Court ordered Mr. Goodman to "show cause why he should not be sanctioned for violating the protective order in this case." (Dkt. 112.)   MSD's misconduct throughout the course of the litigation warrants an attorneys' fee award to Plaintiff. *Matthew Bender & Co.* at 116.

11

In addition to an award under the Copyright Act, Plaintiffs also are entitled to attorneys' fees under the Lanham Act for the reasons set forth above.  Courts have the power to award attorneys' fees in Lanham Act cases to prevailing plaintiffs if the case is determined to be "exceptional."  15 U.S.C. § 1117(a).  *See 4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 215 (2d Cir. 2019) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014) (defining an exception case as "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated")).  *See also Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 531 (2d Cir. 2018) (concluding that *Octane Fitness* "applies to the Lanham Act's attorney's fee provision.").  In *Octane Fitness*, the Supreme Court specifically mentioned one type of an "exceptional" case: "one that stands out from others with respect to . . . the unreasonable manner in which the case was litigated."  572 U.S. 545.  Since this Court has already highlighted MSD's misconduct, as described above, Plaintiffs should receive an attorneys' fees award in connection with its trademark claims.  *Id.* at 545 ("District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances.").

## V.      CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court grant their Motion for Default Judgment, Permanent Injunction, and Attorneys' Fees in its entirety.

Respectfully submitted,

Dated:  January 10, 2022                    By:  /s/ Margaret A. Esquenet

Margaret A. Esquenet, Esq. (*pro hac vice*)
B. Brett Heavner, Esq. (*pro hac vice*)

12

Mary Kate Brennan, Esq.
901 New York Avenue NW
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400
margaret.esquenet@finnegan.com
b.brett.heavner@finnegan.com
marykate.brennan@finnegan.com

*Attorneys for Plaintiff*