

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   2/4/2022

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

THE NATIONAL ACADEMY OF
TELEVISION ARTS AND SCIENCES, INC.
and ACADEMY OF TELEVISION ARTS &
SCIENCES

                    Plaintiffs,

        v.

MULTIMEDIA SYSTEM DESIGN, INC.,

                    Defendant

    and

JASON GOODMAN

                    Proposed
                        Defendant-Intervenor

Civil Action No. 20-cv-07269-VEC-OTW

**NOTICE OF MOTION TO
INTERVENE AS DEFENDANT
VACATE DEFAULT JUDGMENT
AND DISMISS WITH PREJUDICE**

PLEASE TAKE NOTICE that, on a date and time set by the court, or as soon thereafter as proposed Defendant-intervenor may be heard, Jason Goodman pro se ("Goodman"), shall move before this Honorable Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order dismissing with prejudice plaintiff's complaint for failure to state a valid claim on which relief can be granted because the Communications Decency Act, 47 U.S.C. § 230, protects operators of interactive computer services, like defendant Multimedia System Design, INC., from the claims asserted against it and because Plaintiff violated New York Judicial Law JUD § 487 and engaged in deliberate deceit of the court to bring about this action.  Newly discovered evidence as of January 24, 2022, and extraordinary circumstances have prevented this evidence from being presented previously.  PLEASE TAKE FURTHER NOTICE that in support of this motion Goodman shall rely upon the attached Memorandum of Law.

Signed this 3rd day of February 2022

Respectfully submitted,

Jason Goodman, Defendant-Intervenor, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE NATIONAL ACADEMY OF TELEVISION ARTS AND SCIENCES, INC. and ACADEMY OF TELEVISION ARTS & SCIENCES<br><br>        Plaintiffs,<br><br>    v.<br><br>MULTIMEDIA SYSTEM DESIGN, INC.,<br><br>          Defendant<br><br>   and<br><br>JASON GOODMAN<br><br>        Proposed<br>        Defendant-Intervenor | Civil Action No. 20-cv-07269-VEC-OTW |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANT**

# TABLE OF CONTENTS

PAGES

INTRODUCTION..................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.............................................2

ARGUMENT.........................................................................................................5

1. **Goodman is Entitled to Intervene as a Matter of Right**...............................7
   a. **The Motion is Timely**...........................................................................8
   b. **Goodman has a Legally Protected Interest in this Litigation**...............8
   c. **Goodman's Interests Would be Impeded As A Practical Matter if Plaintiffs Prevail**..............................................................................................8
   d. **MSD Does Not Adequately Represent Goodman's Interests**.................9
2. **In the Alternative, Goodman Requests Permission to Intervene**...................9
3. **Goodman's Right's Will be Prejudiced if Intervention is Denied**.................9
4. **Conclusion**......................................................................................................9

# TABLE OF AUTHORITIES

**STATUTES**                                                                 **PAGES**

47 US Code § 230(c)(1).................................................................................1, 6

26 US Code § 501(c)(6)................................................................................6

NYCL JUD § 487.........................................................................................5, 7

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 17(b)(2) ...................................................1, 5

Federal Rule of Civil Procedure 60(b)(3) ...................................................7

Federal Rule of Civil Procedure Rule 24(a) ...............................................7

Federal Rule of Civil Procedure Rule 24(a)(2) ..........................................7

Federal Rule of Civil Procedure Rule 24(b)................................................9

Federal Rule of Civil Procedure Rule 24(b)(1)(B)......................................9

## INTRODUCTION

Jason Goodman ("Goodman") seeks intervene as defendant in the above-captioned lawsuit challenging Plaintiff's right to sue Multimedia System Design, INC. ("MSD") for the controversy over a disputed parody image that is the sole and exclusive intellectual property ("IP") of Goodman and was published by Goodman.  While it is not disputed that MSD is a Corporation wholly owned by Goodman and he was its only employee throughout 2020, 2021 and 2022, MSD has no ownership of, or legal claim to the image that is the source of controversy in this matter, or any other content created by Goodman.

Pursuant to 47 US Code § 230(c)(1) "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  MSD is a corporation operating the interactive computer service known as Crowdsource the Truth.  Goodman is the creator and publisher of the image at the source of controversy in the case.  MSD is indemnified by 47 U.S. Code § 230, the Communications Decency Act ("CDA").

On information and belief, Goodman alleges that Plaintiff CEO Adam Sharp ("Sharp"), by and through counsel Margaret Esquenet ("Esquenet") has deliberately deceived the Court and the Chairmen of the boards of trustees of the Academy of Television Arts and Sciences ("ATAS") and the National Academy of Television Arts and Sciences ("NATAS"), Frank Scherma ("Scherma") and Terry O'Reilly ("O'Reilly").  In their efforts to bring about this suit for an improper purpose and their own personal wrongful enrichment, Sharp and Esquenet circumvented the corporate hierarchy and exceeded their legal authority, violating Fed. R. Civ. P Rule 17(b)(2) and the laws by which the tax-exempt corporate Plaintiffs are organized.

1

In a phone call on or around January 24, 2022, ATAS CEO and Board Chairman Scherma revealed that he had no knowledge of this lawsuit and had never heard of Goodman, the alleged infringement, or the fact that Esquenet claimed to represent him and ATAS.  NATAS Chairman O'Reilly shared similar statements at his deposition.  He indicated that he was not aware of the dispute over the alleged infringement prior to commencement of the lawsuit and was uncomfortable with efforts that could been seen as politicizing the EMMYs.

## FACTUAL AND PROCEDURAL BACKGROUND

The court is familiar with the controversy that began in or around August 2020 concerning an alleged copyright infringement of the EMMYs statue, the ("Crony image").  The Crony image along with all videos, audio or other content created for and broadcast on Crowdsource the Truth social media properties are the sole and exclusive intellectual property ("IP") of the natural person Jason Goodman.  Defendant in this matter, is a corporation owned by Goodman, but the corporation has no ownership in, nor any legal claim to the Crony image or any video containing the image.  MSD has no ownership in, nor claim to any of Goodman's IP.

It is not disputed that MSD paid for the various online services, including web hosting, live streaming and other components that comprise the interactive social media network known as Crowdsource the Truth.  Despite this fact, MSD does not have any ownership of any content created or published by Goodman.  All audio-visual or other content created by Goodman is Goodman's sole and exclusive IP unless separate IP sharing agreements exist.  No such IP sharing, employment contract, work for hire or other relevant agreement exists between MSD and Goodman or Goodman and any other party.

The court is aware that Defendant's former attorney Jonathan Sndyer ("Snyder") withdrew and cited outside harassment, cyberstalking and abuse by non-party David George

Sweigert ("Sweigert").  Separate and apart from this matter, Sweigert has sued Goodman and attempted to intervene in multiple lawsuits against Goodman but has been denied in every case. This is in part because Sweigert has no real claim or interest in any of the cases but merely seeks to antagonize and harass Goodman by any means he can devise.  Sweigert's direct, remarkably persistent and inappropriate interference with Defendant's attorney have left the Defendant unrepresented and unable to defend Goodman's interests.  Goodman has alleged that Sweigert is engaged in a calculated legal assault ("lawfare") against him for the express purpose of destroying his business and public reputation.

Goodman further alleges that Plaintiff, by and through its counsel has either planned a coordinated effort with Sweigert or otherwise opportunistically sought to gain advantage in this case from Sweigert's continuous strategic attacks on Goodman's legal defense and finances. Plaintiff was made aware of Sweigert's long standing, persistent, inappropriate disruptive activities prior to making their decision to sue.  Goodman urged the Plaintiff to avoid entanglement in unnecessary legal action that would surely be interfered with by this malicious actor who was, in Goodman's estimation, the likely sender of the email that provoked the initial conflict.

Goodman warned of the anticipated increase in time and expense this disruption would likely cause and offered a no-cost resolution including the complete removal the Crony image. Plaintiff will fail to demonstrate how it was calculated that this lawsuit was in the best financial interest of the tax-exempt entities when a no-cost resolution was available.  Moreover, Plaintiff ignored the offer, failed to present it to the Board of trustees as they were legally obligated to do and instead chose to sue, a decision they were and are not legally empowered to make without the knowledge and consent of the Board of Trustees.  Plaintiff has directly benefited from

3

Sweigert's ongoing disruption of MSD's legal defense and has further deceived the court and Chairmen of the boards claiming on the record to have no knowledge of who he is.

On or around August 22, 2020, in an email to NATAS CEO Sharp that preceded this lawsuit, Goodman alerted Sharp to possible financial dangers if the Plaintiff chose litigation to resolve the dispute, stating "I have reason to believe your complaint may have been motivated by an individual I am involved in ongoing litigation with.  To avoid exposing yourself and the television academy to involvement in this litigation I would like to speak with you today. I am confident we can resolve this in a friendly manner."   In a subsequent telephone conversation with Esquenet also preceding the suit, Goodman reiterated his desire to cooperate by removing the image.  Goodman expressed his desire to prevent her client from becoming involved in existing malicious litigation.  Goodman discussed his suspicions surrounding Sweigert and his desire to seek a no cost solution for all involved.

Esquenet and Sharp had and have a fiduciary, legal and ethical obligation to ensure that trustees of the boards of directors of both ATAS and NATAS fully understood the no-cost option Goodman offered before choosing to dedicate a substantial portion of their program service revenue to a proactive lawsuit that may not fall within the context of the tax-exempt entities authorized organizational purpose.  ATAS CEO and Board Chairman Scherma's January 24, 2022 statements reveal he was not made aware of the facts at issue in this case until January 24, 2022 many months after the no cost offer was rejected by Plaintiffs.  If Scherma's statements are true, this represents a fundamental fraud perpetrated by Sharp and Esquenet on this honorable Court and the Chairman of the ATAS board and all its trustees.  On the phone call, Scherma reiterated that Sharp is not authorized to make decisions on behalf of ATAS.  He further clarified that ATAS is a separate entity and that Sharp has no authority to act on ATAS' behalf.

Sharp is the CEO of NATAS.  O'Reilly is chairman of the board of trustees of NATAS.

Scherma is CEO and Chairman of the board of ATAS.  Both NATAS and ATAS (collectively

"the Academies") are tax-exempt, non-profit business associations organized under 26 U.S. Code

§ 501(c)(6).  Unlike for-profit corporations, tax exempt entities and their CEOs cannot

unilaterally decide to allocate substantial sums of tax-exempt funds to activities outside the

authorized organizational purpose or without the knowledge and consent of the board of trustees.

In a telephone conversation with Goodman on or around January 24, 2022, Scherma

stated that he had no knowledge of Goodman, MSD, the lawsuit, or the alleged infringement.

These statements support Goodman's allegation that Sharp and Esquenet both deceived the court

in violation of New York's Judiciary Law - JUD § 487 and operated outside of their legal

authority and violated the laws by which the tax exempt entitles are organized.  Pursuant to Fed

R. Civ. P. Rule 17(b)(2) a valid corporate Plaintiff can only sue in accordance with the laws

under which it was organized.  By brazenly and repeatedly violating those laws, Sharp and

Esquenet have invalidated the corporate entities' standing as Plaintiffs in this case.

## ARGUMENT

### Goodman is the rightful defendant in this matter

Goodman should be permitted to intervene as a matter of right as a defendant in this case.

From the outset, Goodman has attempted to inform the Court that MSD is not a valid defendant.

Despite Goodman's insistence, former counsel Snyder refused to argue this point of fact.  There

is no corporate entity named "Multimedia System Design, Inc., D.B.A. Crowdsource the Truth".

Whether or not the court agrees with Snyder regarding the relevance of this fact, Plaintiff should

still not be allowed to sue the corporation any more than it could YouTube, Twitter, or Facebook

for information published by Goodman.  Corporations that operate interactive computer services

may not be held liable for content placed on those networks by individual content creators.  It is not disputed that MSD is associated with a network of interactive social media properties that are collectively known by the brand name Crowdsource the Truth.  Goodman is the information content publisher in this instance, and he is the sole and exclusive owner of the content he creates including the Crony image and associated videos.

**Plaintiff chose unjustly to sue MSD to compel the depletion of financial resources**

Plaintiff is aware that Goodman is not an attorney but is an unusually experienced pro se defendant who has successfully defended himself in Federal Court previously. The corporation cannot be defended by a non-attorney, but also cannot be treated as the publisher of content created and published by Goodman pursuant to 47 U.S. Code § 230.  On information and belief, Goodman alleges the Plaintiff specifically chose to sue MSD for the sole purpose of harassing Goodman and compelling him to exhaust his limited financial resources on the legal defense of his corporation.  If true, this further supports Goodman's allegation that Plaintiff was and is aligned in purpose and action with Sweigert.

**Plaintiff disqualifies itself by violating Rule 17 and the laws under which it was organized**

NATAS and ATAS are separate but related entities regulated by 26 U.S. Code § 501(c)(6) and other state and federal statutes.  In violation of those laws, Sharp and Esquenet conspired to deceive the court and the board of trustees of ATAS by falsely claiming to represent ATAS in this matter without the consent or knowledge of ATAS CEO and Board Chairman Scherma.  Sharp further deceived the board of trustees of NATAS and ATAS by failing to publicly disclose his privately owned, for-profit political social media consulting company Sharp Things LLC ("Sharp Things").  Esquenet deepened this deception when she stated at an April 30 hearing with Judge Caproni, "Mr. Sharp's other company, that's actually defunct at this point"

(*See* ECF No. 69 Page 47 line 25).  The pair sought to hide Sharp's for-profit political activates and falsely claim representation of ATAS without the authority of their Chairman and CEO in a bad faith effort to sue Goodman and destroy his corporation.  Evidence obtained from the public website for the Connecticut Secretary of State indicates that Sharp Things was in fact active during and throughout the time this lawsuit began, including the time frame in which Esquenet deliberately deceived the court. **(EXHIBIT A)**

**Esquenet conspired with Sharp to deceive the Court in violation of New York JUD § 487**

Sharp and Esquenet went to great lengths to hide details of Sharp's for-profit political activities because this lawsuit is intended to unjustly enrich Sharp's clandestine for-profit business and Esquenet's law firm at the expense of the Plaintiffs and through the illicit use of tax-exempt funds.  If justice is to be properly served in this matter, this fraud upon the court and the individual trustees of the board cannot be allowed to stand.  Esquenet's deliberate deception in denying the active status of Sharp Things violated New York Judiciary Law JUD § 487.  Pursuant to Fed R. Civ. P. Rule 60(b)(3) this fraud should move the court to vacate the default judgement against the Defendant and dismiss this matter with prejudice.

1. **Goodman is Entitled to Intervene as a Matter of Right**

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention as a matter of right. It states in part, "[o]n timely motion, the court must permit anyone to intervene who ... claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).  Intervention as of right is evaluated by a four-part test: (a) the applicant's motion must be timely; (b) the applicant must assert a legally protected interest relating to the

transaction or property that is the subject of the action; (c) the applicant must demonstrate that its interest may be impaired by the action; and (d) the interests of the applicant must not be adequately represented by the parties already involved in the action. United States v. Pitney Bowes, Inc., 25 F.3d 66, 69 (2d Cir. 1994); Floyd v. City of New York, 302 F.R.D. 69, 83 (S.D.N.Y. 2014).

a. This motion is timely because Judge Caproni has ordered a response to the Motion for Default judgment by February 11 and new evidence that fundamentally impacts the case was discovered on January 24, 2022. The existing parties will not be prejudiced by allowing Goodman intervention in this matter because it will not delay Judge Caproni's order regarding the Motion for Default judgement on or after February 11, 2022.

b. Goodman has a legally protected interest in this action. The image that caused this controversy is Goodman's intellectual property and protection of that interest is threatened by the Motion for Default Judgement. As sole owner and employee of MSD, a substantial financial loss due to default judgement against MSD would directly impact Goodman.

c. Goodman has standing. The Crony image, the item at the core of the controversy in this matter is Goodman's intellectual property that he alleges is first amendment protected parody. Plaintiff's proposed Default Judgment Order includes restrictions on Goodman's constitutional rights to free speech as well as restrictions on his intellectual property and his ongoing business operations. Goodman has a significant and direct interest in vacating the default judgement and reaching a favorable outcome in this action. An unfavorable outcome for the

Defendant constitutes a substantial and imminent injury to Goodman, sufficient to establish his standing to intervene.

**d.**     MSD cannot adequately defend Goodman's interests due to inadequate representation by prior counsel and the present inability to hire new counsel. Goodman's interests in avoiding an unfavorable outcome would be impeded as a practical matter if Plaintiff is allowed to prevail on a Default Judgement.

**2.   In the Alternative, Goodman Requests Permission to Intervene**

If the Court does not grant Goodman's motion to intervene as a matter of right, he respectfully requests that the Court exercise its discretion to allow him to intervene under Rule 24(b). The Court has broad discretion to grant a motion for permissive intervention when the Court determines that (1) the intervenor's claim or defense and the main action have a question of law or fact in common, and that (2) the intervention will not unduly delay or prejudice the adjudication of the original parties' rights. See Fed. R. Civ. P. 24(b)(1)(B)

**3.   Goodman's Right's Will be Prejudiced if Intervention is Denied**

Goodman easily meets the requirements for permissive intervention. First, his proposed defenses, set forth in the attached proposed Motion to Dismiss, have questions of law and fact in common with the original complaint. Second, for the reasons set forth above, the motion is timely and, given the present stage of this litigation, intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.

## CONCLUSION

For the reasons stated above, Goodman respectfully requests that the Court grant his motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permit him to

intervene under Rule 24(b). If granted permission to intervene under either provision, Goodman

attached a proposed motion to dismiss for filing.[3]

---

[3] The text of Rule 24(c) of the Federal Rules of Civil Procedure puts proposed defendant intervenors in an anomalous situation. Rule 24(c) requires that a proposed defendant-intervenor attach a proposed "pleading" to be attached to a motion to intervene. However, a motion to dismiss under Rule 12(b) is not among the "pleadings" set forth in Rule 7(a). As a result, even though a named defendant may file a motion to dismiss under rule 12(b) prior to serving one of the pleadings set forth in Rule 7(a), it is not clear from the text of the rule whether the same opportunity is available to a defendant-intervenor. However, courts have held that a proposed motion to dismiss satisfies Rule 24(c). *See, e.g.*, *Ctr. for Biological Diversity v. Jewell*, No. 15-cv-00019, 2015 WL 13037049, at *2 (D. Ariz. May 12, 2015) ("The Court finds that the stricken Motion to Dismiss would have complied with the substantive requirements of Rule 24(c); it puts the existing parties on sufficient notice of the State's claim or defense, such that the procedural requirements of Rule 24(c) would be met."); *New Century Bank v. Open Solutions, Inc*., No. 10-6537, 2011 WL 1666926, at *3 (E.D. Pa. May 2, 2011).
In the event that the Court decides that Goodman is nonetheless required to attach a proposed answer instead of a motion to dismiss in order to comply with Rule 24(c), Goodman respectfully requests: a) that the Court grant him leave to file a proposed answer, and b) that the Proposed Motion to Dismiss under Rule 12(b)(6) be construed and docketed as a Motion for Judgment on the Pleadings under Rule 12(c).

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2022, I caused a true and correct copy of the

foregoing document to be served upon the counsel of record for the Plaintiff via email.

Signed this 3rd day of February 2022
Respectfully submitted,

_____

Jason Goodman, Defendant-Intervenor, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

Application DENIED.

To intervene as of right under Federal Rule of Civil Procedure 24(a), the purported intervenor must , *inter alia*, make a timely motion and show that his interest is not adequately represented by the parties already involved in the action. *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994). Mr. Goodman's motion, filed one year and five months after this lawsuit was commenced, is not timely, and no new information Mr. Goodman presents renders it so. Further, as Mr. Goodman admits that he is Defendant's "sole owner and employee," his interests are already adequately represented in the suit. *See supra* at 8; *see also supra* at 1 ("MSD is a Corporation wholly owned by Goodman and he was its only employee throughout 2020, 2021 and 2022."). Defendant's inability now to retain counsel does not alter that fact.

To intervene permissively under Rule 24(b), a party must have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Intervention, however, cannot be used to "inject collateral issues into an existing action," and the Court has broad discretion to deny an applicant's motion for permissive intervention. *See New York News, Inc. v. Kheel*, 972 F.2d 482, 486–87 (2d Cir. 1992). Mr. Goodman has already filed a separate lawsuit alleging many of the claims he makes here. *See Goodman v. Sharp et al.*, No. 21-cv-10627. These claims are best addressed in that litigation, not in this matter at such a late stage.

The Clerk of Court is respectfully directed to mail a copy of this Order to Jason Goodman at: 252 7th Avenue #6s, New York, NY 10001.

SO ORDERED.

*Valerie Caproni*     2/4/2022

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

**(EXHIBIT A)**

SECRETARY OF THE STATE OF CONNECTICUT

Annual Report

165 CAPITOL AVENUE
P.O. BOX 150470
HARTFORD, CT 06115-0470

```
FILING #0007146658 PG 1 OF 3
        VOL A-00689 PAGE 1967
    FILED 02/11/2021 07:17 PM
SECRETARY OF THE STATE OF CONNECTICUT
```

1.  Name of Limited Liability Company:    SHARP THINGS, LLC

2.  Business ID:    1224702

3.  Report due in the month of:    March, 2020

4.  NAICS Code:    NONE

    Changes:    `541990 (All Other Professional, Scientific, and Technical Services)`

5.  This Limited Liability Company is:    DOMESTIC
    Fee is:    $80.00
    Business Name:    SHARP THINGS, LLC

6.  Mailing Address:    50 DOWNS AVE.
    STAMFORD,CT 06902

    Changes:    `50 DOWNS AVE.`
    `STAMFORD,CT 06902 USA`

7.  Principal Office Address:    50 DOWNS AVE.
    STAMFORD,CT 06902

    Changes:    `50 DOWNS AVE.`
    `STAMFORD,CT 06902 USA`

8.  Address Required in State of Formation
    (Foreign Limited Liability Company):

    Changes:

```
FILING #0007146658 PG 2 OF 3
     VOL A-00689 PAGE 1968
  FILED 02/11/2021 07:17 PM
SECRETARY OF THE STATE OF CONNECTICUT
```

9.  Agent Information

    Agent Type:                                  INDIVIDUAL
    Agent Name:                                  ADAM MIKAEL SHARP
    Agent's Business Address:                    50 DOWNS AVE.
                                                 STAMFORD,CT 06902-7803

    Agent's Residence Address:                   50 DOWNS AVE.
                                                 STAMFORD,CT 06902-7803

    Agent's Mailing Address:

    Agent's Business Address Changes:            50 DOWNS AVE.
                                                 STAMFORD,CT 06902 USA

    Agent's Residence Address Changes:           50 DOWNS AVE.
                                                 STAMFORD,CT 06902 USA

    Agent's Mailing Address Changes:             50 DOWNS AVE.
                                                 STAMFORD,CT 06902 USA

    Name of person accepting appointment:
    Title:
    Signature Accepting Appointment:

    (if agent is a business also print name and title of person signing)

10. Date:                                        02/11/2021

11. Email Address:                               adam@sharpthings.io

12. I hereby certify and state, under penalties of false statement, that all of the information set forth on this annual report is
    true. I hereby electronically sign this report.
    Print Capacity:                              MEMBER / CHAIRMAN & CEO

13. Signature of Authorizer:                     ADAM SHARP

Report Officers/Directors
Business ID : 1224702

FILING #0007146658 PG 3 OF 3
VOL A-00689 PAGE 1969
FILED 02/11/2021 07:17 PM
SECRETARY OF THE STATE OF CONNECTICUT

1.  Full Legal Name:      ADAM MIKAEL SHARP
    Title(s):      MEMBER / CHAIRMAN & CEO
    Residence Addr:      50 DOWNS AVE.
         STAMFORD,CT 06902

    Business Addr:      50 DOWNS AVE.
         STAMFORD,CT 06902

    Res Changes:

    Bus Changes:

2.  Full Legal Name:      CYNTHIA LYNN SHARP
    Title(s):      MEMBER
    Residence Addr:      50 DOWNS AVE.
         STAMFORD,CT 06902

    Business Addr:      50 DOWNS AVE.
         STAMFORD,CT 06902

    Res Changes:

    Bus Changes:

Learn how to leverage transparent company data at scale. Subscribe to our emails

# opencorporates

The Open Database Of The Corporate World

| Company name or numb | Search |

● Companies  ○ Officers

- Log in/Sign up

# SHARP THINGS, LLC

Company Number
   1224702
Status
   Active
Incorporation Date
   16 December 2016 (about 5 years ago)
Company Type
   LLC
Jurisdiction
   Connecticut (US)
Registered Address

- 50 DOWNS AVE.
- STAMFORD
- 06902
- CT
- United States

Directors / Officers

- ADAM MIKAEL SHARP, officer
- CYNTHIA LYNN SHARP, officer

**Source** Connecticut Secretary Of State, Commercial Recording Division, http://www.concord-sots.ct.gov/ , 13 Jan 2022
Add data *(website, address, etc)*

## Company Addresses

Mailing Address

50 DOWNS AVE., STAMFORD, CT, 06902, USA

## Explore company network



## Company network

Not yet available for this company. Click to find out more

## Latest Events

2021-09-27 - 2021-11-01
　　Addition of officer ADAM MIKAEL SHARP, officer
2021-09-27 - 2021-11-01
　　Addition of officer CYNTHIA LYNN SHARP, officer
2021-09-27 - 2021-11-01
　　Removal of officer CYNTHIA LYNN SHARP, member

See all events

**Corporate Grouping User Contributed**

None known. Add one now?
See all corporate groupings

## Similarly named companies

- 🇺🇸 all things sharp, llc (Colorado (US), 4 Jun 2014- )
- 🇺🇸 SHARP THINGS BY ONESHARPLADY LLC (Maryland (US), 29 Mar 2021- )
- 🇺🇸 inactive SHARP THINGS HURT, LLC (Louisiana (US), 21 Jan 2003- )

* While we strive to keep this information correct and up-to-date, it is not the primary source, and the company registry (see source, above) should always be referred to for definitive information
Data on this page last changed January 14 2022

**Problem/question about this data?** Click here

**API** **Open Data**

For access please Log in / Sign up

# About us

- About
- Blog
- Team
- Governance
- Jobs

# Using our data

- Our data
- Our purpose
- Legal/Licence
- User/Cookie privacy policy
- Public records privacy policy

# Help

- API Reference
- Glossary
- Status

# Contact

- Twitter
- Medium
- Newsletter
- Problems with our data?
- Temporary redaction

# Impact

- Impact
- Grants