USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/29/2023

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

THE NATIONAL ACADEMY OF TELEVISION ARTS
AND SCIENCES, INC., and ACADEMY OF
TELEVISION ARTS & SCIENCES,

                                        Plaintiff,

                        -against-

MULTIMEDIA SYSTEM DESIGN, INC.
d/b/a "CROWDSOURCE THE TRUTH",

                                        Defendant.
--------------------------------------------------------------------X

20-cv-07269-VEC-OTW

**NOTICE OF MOTION
TO VACATE VOID
JUDGEMENTS**

PLEASE TAKE NOTICE, with this motion, JASON GOODMAN, ("Goodman"), by and

for himself pro se, comes now as the REAL PARTY DEFENDANT IN INTEREST in this case.

Goodman was deprived of his right to a pro se defense by a fraud upon the court, executed by

plaintiffs, with non-party David George Sweigert ("Sweigert"), and judge Valerie Caproni in her

capacity as a private citizen and participant in an ongoing, illegal, clandestine, FBI program to

police social media including Twitter, (now "X Corp") in violation of the Constitution and other

laws.  Judge Caproni acted ultra vires and outside all judicial authority, voiding all rulings in this

case, and forfeiting subject matter jurisdiction pursuant to FRCP Rule 60(b)(4), for the reasons

set forth in the accompanying memorandum.

Dated: New York, New York November 28, 2023

Respectfully submitted,

_____ Jason Goodman
Pro Se Defendant
truth@crowdsourcethetruth.org
252 7th Avenue Apt 6s
New York, NY 10001
347-380-6998

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................... 1

PARTIES AND NON-PARTIES. ........................................................... 3

BACKGROUND. .................................................................................... 5

PLAINTIFFS DELIBERATELY SUED A FALSE PARTY .................................. 8

JUDGE CAPRONI PARTICIPATED IN AN ILLEGAL FBI PROGRAM ........... 11

CONCLUSION ..................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

<span style="font-variant: small-caps;">Cases</span>

*Covington Industries, Inc. v.Resintext A.G.,*
    629 F.2d 730, 732 n. 3 (2d Cir. 1980) ................................................... 2

*Pitbull Prods. v. Universal Netmedia, Inc.,*
    2008 U.S. Dist. LEXIS 30633 (S.D.N.Y. 2008)...................................... 2

*Am. Inst. Of Certified Pub. Accountants ("AICPA") v. Affinity Card, Inc.,*
    8 F. Supp. 2d 372, 375 (S.D.N.Y. 1998) ............................................... 2

*See Kao Hwa Shipping Co. v. China Steel Corp.,*
    816 F. Supp. 910, 913 (S.D.N.Y. 1993) ................................................ 2

*ORIX FINANCIAL SERVICES v. PHIPPS.,*
    291 Cv 2523 (RPP), 2-3 (S.D.N.Y. Aug 14, 2009) ............................... 2

*VALLEY v. NORTHERN FIRE & MARINE INS. CO.,*
    254 U.S. 348,41 S. Ct. 116 1920)........................................................ 2

*WILLIAMSON v. BERRY, 8 HOW.*
    945, 540 12 L. Ed. 1170, 1189 (1850)................................................. 3

*Klugh v. U.S.,*
    620 F.Süpp. 892 (D.S.C. 1985) ........................................................... 3

*United States ex rel.Sweigert v. Elec. Sys. Assocs.,*
    85 F.3d 630 (6th Cir. 1996) ................................................................ 6

*Goodman v City of New York,*
    23-cv-09648-JGLC-GWG).................................................................. 12

*Scheuer v. Rhodes,*
    416 U.S. 232, 94 S. Ct. 1683, 1687 (1974) ......................................... 13

*Local 851 of the Int'l Bhd. of Teamsters v. Thyssen Haniel Logistics,*
    90 F. Supp. 2d 237, 238 (E.D.N.Y. 2000) ........................................... 13

*Matter of Simon (State Comm'n on Judicial Conduct),*
    2016 NY Slip Op 06855, ¶ 1, 28 N.Y.3d 35, 37, 41 N.Y.S.3d 192, 193, 63
    N.E.3d 1136, 1137) ............................................................................................ 15

**STATUTES**

18 U.S. Code §§ 1341–1343).........................................................................10

28 U.S. Code §§ 144 and 455.......................................................................11

**RULES:**

Fed. R. Civ. P. 60(b)(4)................................................................. *passim*

Fed. R. Civ. P. 55(c)......................................................................... 2

Fed. R. Civ. P. 17(a) and (b)............................................................4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X          20-cv-07269-VEC-OTW

THE NATIONAL ACADEMY OF TELEVISION ARTS
AND SCIENCES, INC., and ACADEMY OF                                    **MEMORANDUM IN**
TELEVISION ARTS & SCIENCES,                                           **SUPPORT OF**
                                        Plaintiff,                    **MOTION TO VACATE**
                                        -against-                     **VOID JUDGEMENTS**

MULTIMEDIA SYSTEM DESIGN, INC.
d/b/a "CROWDSOURCE THE TRUTH",

                                        Defendant.
-------------------------------------------------------------------X

JASON GOODMAN, ("Goodman"), by and for himself pro se, comes now as the REAL

PARTY DEFENDANT IN INTEREST in this matter who was deprived of his right to represent

his interests by a fraud upon this court.  The deception involved plaintiffs, non-party David

George Sweigert ("Sweigert"), and judge Valerie Caproni in her capacity as an individual and

participant in an ongoing, illegal, clandestine FBI program that illicitly gained access to social

media users' data including on Twitter, ("X Corp") in violation of the U.S. Constitution and state

and federal laws.  These illegal actions, taken outside all jurisdiction, render each and every

ruling in this matter void.  Judge Caproni's illegal actions cause her to forfeit subject matter

jurisdiction in this case pursuant to FRCP Rule 60(b)(4).  Goodman respectfully submits his

Motion to Vacate Void Judgments under penalty of perjury regarding himself and his own acts,

and with regard to all others, makes the following allegations upon information and belief;

## INTRODUCTION

1.      The default judgment entered against fictitious corporate entity and improper

defendant in this matter, Multimedia System Design, Inc., D/B/A/ Crowdsource the Truth,

("MSDI") is void and must be vacated as a matter of law pursuant to FRCP Rule 60(b)(4), which

states, "a court may relieve a party or its legal representative from a final judgment . . . [if] the judgment is void."  This rule applies in equal force to judgments entered by default.  *See* FRCP. 55(c) ("For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."). Even in an instance where the rule might appear to offer a court discretion to determine if a judgment is or is not void, the Second Circuit determined that a "motion predicated on subsection four [of Rule 60(b)] is unique . . . in that relief is not discretionary and a meritorious defense is not necessary as on motions made pursuant to other 60(b) subsections." *See Covington Industries, Inc. v. Resintext A.G*., 629 F.2d 730, 732 n. 3 (2d Cir. 1980); *Pitbull Prods. v. Universal Netmedia, Inc.*, 2008 U.S. Dist. LEXIS 30633 (S.D.N.Y. 2008); *Am. Inst. Of Certified Pub. Accountants ("AICPA") v. Affinity Card, Inc*., 8 F. Supp. 2d 372, 375 (S.D.N.Y. 1998). As in those cases, the judgment here is void, and so the Court must vacate the default judgment. *See Kao Hwa Shipping Co. v. China Steel Corp*., 816 F. Supp. 910, 913 (S.D.N.Y. 1993) ("Unlike motions pursuant to other subsections of 60(b), the Court has no discretion regarding motions to vacate void judgments under Rule 60(b)(4).")

ORIX FINANCIAL SERVICES v. PHIPPS, 91 Cv. 2523 (RPP), 2-3 (S.D.N.Y. Aug. 14, 2009)

2.	"The law is well-settled that a void order or judgement is void even before reversal", *VALLEY v. NORTHERN FIRE & MARINE INS. CO*., 254 U.S. 348,41 S. Ct. 116 (1920) "Courts are constituted by authority and they cannot go beyond that power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgements and orders are regarded as nullities; they are not voidable, but simply void, and this even prior to reversal."

*WILLIAMSON v. BERRY*, 8 HOW. 945, 540 12 L. Ed. 1170, 1189 (1850).

3.      "A Party Affected by VOID Judicial Action Need Not APPEAL. *State ex rel.*

*Latty*, 907 S.W.2d at 486. It is entitled to no respect whatsoever because it does not affect,

impair, or create legal rights." *Ex parte Spaulding*, 687 S.W.2d at 745 (Teague, J.,concurring).

This cannot be ignored its fact recorded! Judgment is a void judgment if court that rendered

judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner

inconsistent with due process," *Fed. Rules Civ. Proc.*, Rule 60(b)(4), 28 U.S.C.A., U.S.C.A.

Const. Amend. 5 —*Klugh v. U.S.*, 620 F.Süpp. 892 (D.S.C. 1985).

4.      Goodman was denied due process and Judge Caproni violated his Fourteenth

Amendment right to a fair trial and equal protection under the law when she assisted plaintiffs'

fraudulent scheme to prevent Goodman from defending his interests in this case.  Due to these

extraordinary acts outside all jurisdiction, and pursuant to FRCP Rule 60(b)(4), each and every

one of Judge Caproni's rulings in this case are legal nullities, hereby vacated as a matter of law.

### PARTIES AND NON-PARTIES

5.      Jason Goodman ("Goodman") is the Real Party Defendant in Interest in this

matter, a natural person, citizen of New York, the sole owner of, and sole legal entity responsible

for, all intellectual property ("IP") created by and posted on the internet by Goodman.  All times

relevant during this matter, Goodman was and currently is, an investigative journalist, talk show

host and social media personality.  Goodman was previously a Hollywood cinematographer and

CEO of stereoscopic technology and motion picture production company, 21st Century 3D.  (*See*

*American Cinematographer* April 2011, "Discussion with Jason Goodman, founder and CEO of

21st Century 3D," https://www.nxtbook.com/nxtbooks/ac/ac0411/index.php?startid=58#/p/58).

6.     Multimedia System Design, Inc., ("MSD") is an inactive New York Corporation founded in June 1994 and previously owned by Goodman, voluntarily dissolved in March 2023.

7.     21st Century 3D is a world-famous stereoscopic technology and motion picture production company founded by Goodman in or around 1999 in New York City.  In October 2002, the marketing name associated with Goodman's stereoscopic and visual effects work became a legal entity when he registered "21st Century 3D" as an assumed name with the New York Secretary of State and received an assumed name certificate officially forming the corporate legal entity Multimedia System Design, Inc. d.b.a. 21st Century 3D, ("21C3D").

8.     Crowdsource the Truth, ("CSTT") is a marketing name invented by Goodman in or around 2016, and associated with a series of documentary, news and opinion videos Goodman initially produced in his spare time, not involving stereoscopic or visual effects technology, and published on a YouTube channel called JASON GOODMAN.  CSTT is not a corporate or legal business entity and cannot sue or be sued pursuant to FRCP Rule 17(a) or (b).

9.     Multimedia System Design, INC, D/B/A/ Crowdsource the Truth, ("MSDI") is a fictitious non-existent entity devised by Sweigert as part of a scheme.  MSDI does not exist as a legal entity and was never owned or controlled by Goodman.  MSDI is a corporate misnomer deliberately concocted as part of Sweigert's stated goal to sue Goodman "for the rest of his life." MSDI is not a legal business entity and cannot sue or be sued pursuant to FRCP rule 17(a) or (b). MSDI is the wrongful defendant in this matter deliberately selected by plaintiffs as part of their scheme to complicate and obfuscate malicious litigation intended to burden Goodman.

10.     Adam Sharp, ("Sharp") is a well-known social media, broadcast media and political expert and the CEO of Plaintiff, a 501(c)(6) tax-exempt business association, the National Academy of Television Arts and Sciences, ("NATAS").  From 2010 through 2016 Sharp

was employed at X Corp, then Twitter as the company's first U.S. Government liaison. Prior to that, Sharp was employed in the U.S. Senate where he became associated with former President Barack Obama. From 2017 up to and including today, Sharp has also been CEO of the privately held, for profit political consulting company, Sharp Things LLC. Sharp is the putative progenitor of this dispute because he personally sent a copyright complaint to YouTube on or around August 20, 2020, after receiving an allegedly anonymous email three weeks prior on July 28, 2020.

11. Margaret Esquenet, ("Esquenet") is counsel for plaintiffs in this matter. Esquenet was warned of Sweigert's stalking and harassment and that he was suspected of sending the email to lure her client into litigation. She ignored these warnings along with an offer to remove the image immediately for free, declining without consulting plaintiffs indicating a desire to sue.

12. David George Sweigert, ("Sweigert") is a professional hacker and a serial pro se plaintiff who is six and a half years in on his stated plan to sue Goodman "for the rest of his life".

## BACKGROUND

13. Plaintiffs conspired with nonparty Sweigert to execute a scheme intended to foment this action under false pretenses and compel Goodman to hire counsel to defend a false corporate entity. Sweigert then harassed defendant's counsel with approval of the judge and provoked default judgment. Sweigert correctly calculated that Goodman's desire to restore his YouTube channel, which he relied upon to earn a living, would motivate him to retain counsel to resolve such a complicated legal matter as quickly as possible.

14. Sweigert provided a plausible pre-text for plaintiffs with fabricated fraudulent evidence in the form of an email he caused to be sent with the intent of harming Goodman. The email catalyzed this entire action, yet its contents and owner have been treated like matters of national security. Goodman has been persistently blocked from learning who was behind this

email.  Even if Sweigert is not responsible, no one's privacy would be harmed by in-camera review which Judge Caproni has repeatedly rejected outright without any further explanation.

15.     Sweigert has a long-established history as a serial pro se plaintiff who hounds and harasses his perceived enemies with years of vindictive, obsessive, weaponized legal action ("Lawfare") that is improperly filed, improperly prosecuted, and generally brought exclusively to burden the subject with the time-consuming expense of litigation.  (*See United States ex rel. Sweigert v. Elec. Sys. Assocs.*, 85 F.3d 630 (6th Cir. 1996)

16.     At the outset of this matter, the suspicious email was deemed confidential and subject to a Stipulated Order of Protection, ("SOP").  No further investigation into its origin was allowed.  At a public conference with Judge Caproni on April 30, 2021, former attorney for plaintiffs, Samuel Eichner, voluntarily destroyed the confidential, non-public status of the email address when he violated the SOP by announcing the email address, causing it to be recorded in the transcript and placed into the public domain where it is today, (Dkt. 69 Page 42 Line 23).

17.     As the Court is aware, Goodman transmitted the email address to Larry Klayman and others in August 2021, three months after it became public and was no longer controlled by the SOP.  Irrespective of Goodman's intent, understanding, or lack thereof at the time, publishing the email address after May 2021 could not violate the SOP because the SOP only controls confidential, non-public information, which the email address no longer was when Goodman sent it to Klayman.  Goodman was unjustly, and wrongfully enjoined to block access to evidence.

18.     The wrongful injunction blocking evidence is just one of the extraordinary steps taken to deny a fair trial and equal protection under the law.   Judge Caproni ignored inarguable facts recorded in the transcript rather than seeking evidence to prove or disprove Goodman's claims.  Judge Caproni consistently obstructed justice, preventing Goodman from accessing

evidence or mounting a proper defense.  This is because the judge knew true answers and real evidence would unravel the scheme she had worked with Sweigert and Plaintiffs to protect.

19.     This case represents a unique and historic example of judicial misconduct that renders all judgements void pursuant to FRCP Rule 60(b)(4).  Goodman is the real party defendant in interest and judge Caproni obstructed his constitutional right to a fair trial and equal protection under the law by preventing him from accessing evidence that would prove or disprove his claims, and otherwise preventing him from defending his interests in this matter.

20.     Throughout these proceedings Judge Caproni allowed non-party Sweigert to agitate the docket, harass Goodman and his attorney to the point of withdrawal (Dkt. 102), and to defy her orders repeatedly.  Despite Sweigert's non-party status and putative lack of involvement in this case, he has had more influence on the outcome than any party including Goodman.

21.     Judge Caproni aided plaintiffs and Sweigert ab initio, in the commission of a stunning fraud upon the court, without which, this case could not exist.  Plaintiffs and Sweigert concocted a scheme intended to deceive Goodman into hiring counsel to represent a Corporate Phantom invented by Sweigert.  Sweigert then illegally harassed defendant's counsel to the point of withdrawal.  This was planned to deliberately provoke default judgment, and to prevent Goodman from engaging in first amendment activity by destroying his access to social media.

22.     Goodman is entitled to a vacatur by law because he is the real party in interest in the case but was deliberately blocked from defending his interests by a complex fraud upon the court.  Judge Caproni acted ultra vires, outside of all jurisdiction, in violation of the Canons of Judicial Conduct, the Oath of United States Judges, the United States Constitution, and justice itself when she assisted plaintiffs and Sweigert in a fraud upon the court by the following acts;

(1) Sweigert sent, or caused to be sent, a fraudulent email to plaintiffs on July 28, 2020, pertaining to a video published by Goodman six weeks prior on June 12, 2020.

(2) Plaintiffs waited another three weeks, until August 20, 2020, to initiate a fraudulent copyright complaint against the JASON GOODMAN YouTube Channel.  Plaintiffs knew this would cause a ninety-day ban and timed their complaint to prevent broadcasting for two and a half months prior to, and two weeks after, the 2020 presidential election.

(3) Plaintiffs initiated this litigation immediately after Goodman appealed their complaint on YouTube and re-established his ability to broadcast.  The deliberate long delays in complaining as compared to the rush to sue are strong indicators of plaintiffs' motives.

(4) Plaintiffs deceived and coerced Goodman into hiring counsel to defend the phantom corporate entity MSDI in order to convince the Court the wrong entity had been sued and in a good faith effort to restore his YouTube channel which he relies on to earn a living.

(5) Sweigert destroyed Goodman's attorney client relationship late in the litigation leaving him at a significant disadvantage and ultimately unable to hire alternate counsel. Sweigert directly and wrongfully provoked the default judgment and wrongful injunction. Judge Caproni has taken no action to enjoin Sweigert from doing anything in this case.

## PLAINTIFFS DELIBERATELY SUED A FALSE PARTY

23.     After Goodman appealed the spurious YouTube Copyright complaint, his ability to broadcast was restored with the caveat that YouTube would reinstate the ban if a judgement or pending lawsuit were presented within fourteen days.  This prompted Plaintiffs to act quickly, demonstrating a dramatic shift as compared to Sharp's maliciously timed complaint intended to prevent Goodman from broadcasting the election, the true ulterior purpose of this instant action.

24.     Plaintiffs, their attorneys and Sweigert worked like a tag-team behind the scenes with judge Caproni's unfair assistance.  From the outset of this action, they worked together to confound Goodman by preventing him from mounting a pro se defense and preventing him from articulating that he was the Real Party Defendant in Interest in this matter.  They did this by suing a False Party in Interest invented by Sweigert to substantially resemble a corporation previously owned by Goodman.  This ruse successfully deceived YouTube, Goodman, and allegedly the Court, unless as Goodman claims the Court assisted.

25.     Sweigert invented MSDI by conflating the legal doctrines of corporate misnomer and mistaken identity, and enabled plaintiffs to purposely sue the false party.  Goodman did not understand this deception a first, discovering this insidious legal nuance only after it was too late.

26.     Plaintiffs are represented by sophisticated bar members who, unlike Goodman, were aware of the legal doctrine of Real Party In Interest at the outset of this litigation. (*See* https://www.finnegan.com/en/insights/blogs/at-the-ptab-blog/a-real-party-in-interest-determination-is-final-and-non-appealable-including-denial-of-related-motion-to-dismiss-and-discovery.html)

27.     Goodman is not an attorney and was not even aware of the term or concept of Real Party In Interest, until very recently.  Goodman was aware that Plaintiffs had sued a false corporate entity they could have only learned of through Sweigert and did so deliberately to prevent Goodman from defending his interests in this action pro se.

28.     Goodman was compelled to hire Snyder who failed to instruct the Court that the wrong entity had been sued, failed to depose Sharp and bungled the case.  Snyder repeatedly refused to make Goodman's argument insisting the name in the caption, "didn't matter."  This

perplexed Goodman at the time, but he was unable to address the impasse and grew increasingly uncomfortable challenging his own lawyer while trusting him to unravel this complex fraud.

29.     There is no obviously discernable way for plaintiffs to have learned the name of false entity MSDI, or to have even associated the real MSD with Goodman's CSTT brand unless told to do so by Sweigert.  Now that Judge Caproni's show cause order has provided evidence of unfair bias against Goodman and in favor of Plaintiffs' apparatchik, Sweigert, plaintiffs can no longer dismiss these objections as "conspiracy theory."  Any real challenge to this claim must be supported by an explanation as to how plaintiffs learned of the Corporate Phantom MSDI if not through Sweigert and why they chose to sue it and not Goodman if not for the reasons alleged.

30.     Sweigert is the only person to have ever used the name MSDI previously.  He created it and has engaged in a series of abusive actions in which he attempts to sue it repeatedly across a number of U.S. District Courts to drain Goodman's money one retainer fee at time.

31.     Sweigert's pattern and practice of luring entities into unnecessary legal battles with Goodman is on display in the Southern District of Indiana.  Sweigert has been accused of violating 18 U.S. Code §§ 1341–1343 in more sham litigation against Goodman. **(EXHIBIT A)**

32.     Sweigert has documented his efforts as he attempts to entice Nintendo America into suing Goodman over alleged copyright infringement for parody images, demonstrating a pattern and practice precisely matching Goodman's allegations here.  **(EXHIBIT B)**

33.     Plaintiffs' unfair attack on Goodman's ability to earn a living caused him to quickly hire Snyder in hopes of resolving the matter and restoring the YouTube channel in time to take advantage of the history making, once in a lifetime opportunity of broadcasting during the 2020 election and covering the controversy that immediately followed and continues today.

34.     This of course did not happen; Goodman was only drawn into more contentious and expensive litigation until Snyder withdrew, leaving the case in shambles and Goodman nearly financially ruined unable to retain new counsel despite trying for months.

35.     Judge Caproni took no action even after Snyder cited Sweigert's inappropriate, if not explicitly illegal harassment and cyber stalking.  Even though Judge Caproni simultaneously presided over Sweigert v Goodman, she did nothing to curtail Sweigert's outrageous, vexatious behavior openly demonstrating approval.  This inaction granted at least tacit if not direct support.

## JUDGE CAPRONI PARTICIPATED IN AN ILLEGAL FBI PROGRAM

36.     Judge Caproni violated Goodman's constitutional right to a fair trial and fair treatment under the law when she acted outside all jurisdiction to protect an illegal FBI program within X Corp that she helped establish in or around 2010 while she was employed as FBI General Counsel and Sharp was employed as X Corp's first in history, U.S. Government liaison.

37.     Judge Caproni's violations of law in this matter in service of this illegal FBI program, inter alia invoke automatic disqualification pursuant to 28 U.S. Code §§ 144 and 455 but also render all judgments in this matter void pursuant to Rule 60(b)(4).  New evidence of fraud on the docket augments the strong evidence previously filed.  (Dkt. 167 Page 94).

38.     Judge Caproni acted outside her judicial authority and outside all jurisdiction, in contradiction of justice, the law and in violation of the U.S. Constitution when she acted to protect an illicit, clandestine FBI program that was not publicly known at the outset of this action and which she helped establish in violation of law, prior to her tenure as a district court judge.

39.     Goodman published a report on December 22, 2022, titled *The Twitter Coup*, that is attached hereto and fully realleged in its entirety as if initially set forth herein. **(EXHIBIT C)**

40.     The report provides evidence in support of allegations that Judge Caproni

worked with CEO for Plaintiffs Sharp, while he was X Corp's U.S. Government liaison, and she

was FBI General Counsel in or around 2010, to create an illegal secret program that granted U.S.

government agencies including the FBI access to online users' data without their knowledge.

41.     This illegal FBI program is currently being investigated by the House Judiciary

Committee and the House Weaponization of Government Committee in Congress. (*See*

https://twitter.com/Weaponization/status/1729184280650404084,

https://twitter.com/JudiciaryGOP/status/169224463497339387,

https://twitter.com/JudiciaryGOP/status/168202428853295105)

42.     This previously hidden illegal FBI program was first publicly exposed when X

Corp's new management fired former FBI General Counsel James Baker from his position as

deputy general counsel at X Corp and released a series of corporate records exposing the FBI

program, (the "Twitter Files"). (*See* https://www.nationalreview.com/news/my-jaw-dropped-

explosive-musk-biography-reveals-why-ex-fbi-lawyer-jim-baker-was-fired-from-twitter/) and

(https://en.wikipedia.org/wiki/Twitter_Files)

43.     On November 1, 2022, Goodman was physically attacked when he traveled to X

Corp's New York headquarters to alert new owner Elon Musk ("Musk") of the FBI program.

Various NYPD officers who responded to the incident violated Goodman's rights and are now

subject to a separate action, (*See Goodman v City of New York* :23-cv-09648-JGLC-GWG).

44.     Sweigert has already demonstrated repeated intentions to inappropriately disrupt

another Goodman matter he is supposed to have nothing to do with, *Goodman v City of New*

*York*.  Unlike here however, his scurrilous filings in that action were promptly stricken from the

record as his letter motion (Dkt. 181) should have been. (*See* 1:23-cv-09648-JGLC-GWG Dkt. 5)

45.     Judge Caproni violated Goodman's rights, acted ultra vires, outside all jurisdiction and in excess of her judicial authority when she acted in furtherance of an illegal FBI conspiracy that she helped establish and which she participates in continuously, up to and including today.

46.     Judges may not conspire with agencies in the Executive Branch, or with plaintiffs to illegally provide them advantages in litigation as Judge Caproni has here.  Because this activity is outside the context of all judicial authority, each and every ruling in this matter is void pursuant to FRCP Rule 60(b)(4).  Judges may not depart from the law at their own discretion. Judge Caproni exceeded her judicial authority by violating the doctrine of separation of powers.

47.     "When a judge acts as a trespasser of the law, when a judge does not follow the law, the Judge loses subject-matter jurisdiction and the judges orders are not voidable, but VOID, and of no legal force or effect. The U.S. Supreme Court stated that "when a state officer acts under a state law in a manner violative of the Federal Constitution, he comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States."

*Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683, 1687 (1974)

48.     A judge or other government official, "acts ultra vires only where there is no colorable basis for the exercise of authority at issue. A valid ultra vires claim rests on the officer's lack of delegated power, while a claim of error in the exercise of that power is therefore not sufficient to evade a sovereign immunity defense."

*Local 851 of the Int'l Bhd. of Teamsters v. Thyssen Haniel Logistics*, 90 F. Supp. 2d 237, 238 (E.D.N.Y. 2000)

49.     Extra-constitutional activity is outside all jurisdiction for any judge, but it is regular practice for judge Caproni.  She has been admonished repeatedly throughout her career with accusations of illegally exceeding her authority.  As FBI General Counsel, she opposed ending the unconstitutional Patriot Act, (*See* https://www.govexec.com/defense/2005/03/fbi-official-privacy-advocate-clash-over-patriot-act/18839/) and was later punished for abusing it. The late John Conyers, then Ranking Democrat in the House Judiciary Committee said, "Today's hearing showed that the FBI broke the law on telephone records privacy and the General Counsel's Office, headed by Valerie Caproni, sanctioned it and must face consequences."

50.     Just as she did at the FBI, Judge Caproni enabled illegal activity here and as the late John Conyers said, she must face the consequences of losing subject matter jurisdiction.

51.     From the outset, Judge Caproni has acted on behalf of plaintiffs and through Sweigert to deny Goodman's right to equal protection under the law and a fair trial.  Just as Sweigert masks harassment within sham litigation seeking indemnity from actionable claims, Judge Caproni seeks to mask extrajudicial activity by taking action vicariously through Sweigert.

52.     It cannot possibly be construed as legitimate judicial conduct for a judge to enable or allow the criminal harassment and cyber stalking of defendant's counsel by a known non-party with known malicious intent to affect the outcome of the case as occurred here.

53.     There can no longer be any doubt as to plaintiffs's tru motive in bringing this action.  Burdening Goodman with litigation, stopping him from broadcasting the presidential election and destroying his business were priorities.  Curing injuries was irrelevant.

54.     Judge Caproni assisted the tax-exempt 501(c)(6) business association plaintiffs, in using tax exempt funds, to jam up the mechanisms of justice with a lawsuit intended to deprive a tax paying U.S. citizen of his right to access the courts and the first amendment on the internet.

55.   "For purposes of judicial misconduct, the ultimate sanction of removal typically is reserved for truly egregious circumstances that extend beyond the limits of even extremely poor judgment, but it must also be kept in mind that the truly egregious standard is measured with due regard to the higher standard of conduct to which judges are held. Removal thus is warranted when a judge exhibits a pattern of injudicious behavior which cannot be viewed as acceptable conduct by one holding judicial office, or an abuse of the power of his or her office in a manner that has irredeemably damaged public confidence in the integrity of his or her court."

*Matter of Simon (State Comm'n on Judicial Conduct),* 2016 NY Slip Op 06855, ¶ 1, 28 N.Y.3d 35, 37, 41 N.Y.S.3d 192, 193, 63 N.E.3d 1136, 1137

## CONCLUSION

Judge Caproni's actions in this case irredeemably damage public confidence in her court. These egregious circumstances extend beyond the limits of extremely poor judgment and for the reasons stated herein, pursuant to FRCP Rule 60(b)(4), each and every ruling in this matter is a legal nullity due to judge Caproni's violations of law and abuse of Goodman's constitutional rights in excess of her judicial authority and outside all jurisdictions.  For the reasons stated herein, Judge Valerie Caproni has forfeited subject matter jurisdiction in this case, and each and every orders and judgement in this case is deemed void and vacated as a matter of law.

Dated: New York, New York November 28, 2023

Respectfully submitted,

Jason Goodman
Pro Se Real Party Defendant in Interest
truth@crowdsourcethetruth.org
252 7th Avenue Apt 6s
New York, NY 10001
347-380-6998

**EXHIBIT A**

**FILED**
**11/22/2023**
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

1:23-cv-01228-JRS-MG

-------------------------------------------------------------------X

D. G. SWEIGERT

Plaintiff,

-against-

JASON GOODMAN et al
Defendant.

-------------------------------------------------------------------X

**MEMORANDUM IN
SUPPORT OF
MOTION TO STAY
PROCEEDINGS FOR
INVESTIGATION
INTO FRUAD ON THE
COURT**

Defendant, Jason Goodman, ("Goodman") by and for himself pro se, respectfully moves

the Court for an order staying the proceedings and opening an investigation into documents filed

and fraud upon the court by Plaintiff David George Sweigert, ("Sweigert") for the reasons below;

### INTRODUCTION

1.      "No matter who allegedly commits a fraud on the court--a party, an attorney, or a

nonparty witness--the court has the inherent power to conduct proceedings to investigate that

allegation and, if it is proven, to punish that conduct."

*De Manez v. Bridgestone Firestone* N. Am. Tire, LLC, 533 F.3d 578, 582 (7th Cir. 2008)

2.      David George Sweigert ("Sweigert") is a serial pro se plaintiff who began

relentlessly cyberstalking and harassing Goodman in 2017.  Shortly after Goodman founded

Crowdsource the Truth ("CSTT"), Sweigert announced plans to sue him "for the rest of his life."

3.      CSTT began as a personal project and hobby eventually occupied more and more

of Goodman's time after his formerly successful Multimedia System Design, INC DBA 21st

Century 3D, ("MSD") failed in the wake of Hollywood's turn away from 3D movies at the end

of 2014.  Goodman reconfigured his life and changed careers from Hollywood visual effects

cinematographer to investigative journalist and talk show host.  Goodman's novel and

remarkably effective, internet based, crowdsourced investigative journalism technique was innovative in 2016 and has now become a core component of his popular news and talk show.

4.     Over the years CSTT has evolved from a hobby into an unincorporated private business and has become the new focus of Goodman's life and work.  MSD, his now defunct corporation is no longer active, and Goodman is not a stereoscopic cinematographer or CEO in Hollywood.  Despite this, Sweigert attempts to repeatedly deceive Courts into believing this legacy corporation is responsible for Goodman's personal activity and postings on the internet.

5.     Even if the alleged corporate entities were real, and even if Goodman were the CEO at the time of the alleged acts, 47 U.S. Code § 230 prevents anyone from suing any user or provider of interactive computer services for posting made by Goodman, irrespective of job title or stock ownership.  Goodman, like MSD or MSDI is a unique user or provider of interactive computer services.  Sweigert knows this from previous litigation, and seeks alternate venues to make similar claims in an effort to compel Goodman to defend himself in multiple courts.

6.     Sweigert has a particular specialty in crafting complex sham litigation which is precisely what he attempts here.  He has publicly declared his intent to sue Goodman "for the rest of his life" and has been following through on that promise ever since.  To that end, he has extensively researched Goodman's life and attempts to conflate legacy corporate entities with Goodman's current anti-corruption journalism so that he may sue fictitious corporations of his own design.  This is solely intended to deceive the Court and compel Goodman to hire counsel to unwind the confusing corporate phantom and otherwise complicate already vexatious litigation.

7.     Recently, Sweigert has taken to adding corporate plaintiffs who Goodman relies on for his business such as Patreon.com.  Sweigert then uses the threat of endless litigation to compel social media platforms to terminate Goodman's access.  Using this tactic, he coerced

Google to terminate Goodman's accounts in exchange for dismissal from *Sweigert v Goodman et al,* which they did prior to any ruling from the Court. (*See* 1:23-cv-06881-JGK-VF Dkt. 62)

8.      Sweigert likely intends similar action toward Patreon.com here.  He persists in litigating against Goodman in any venue and any U.S. District Court that will allow him as he seeks out unique statutes that may damage Goodman while exploiting the Court.  Sweigert's maniacal pattern and practice of pursing sham litigation has become so obvious it is now self-evident.  The Court need only examine pacer.gov to see his history of nonsensical litigation.

9.      Nothing about this approach is consistent with the acts of a litigant attempting to recover damages or cure injuries.  Sweigert's enthusiasm for harming Goodman is so great, his personal obsession with him so deeply disturbing, that he shows no consideration for the vast resources expended or laws broken in the process of antagonizing Goodman with legal traps.

10.     Sweigert selected SDIND to access laws specific to the venue and to abuse this Court and Goodman's rights.  Because neither he nor Goodman live in Indiana and no claims pertain to any action directed at Indiana, Sweigert relies on fraud and deception to litigate here.

11.     When Sweigert brought this action on July 12, 2023, it was nearly identical to a case filed one week prior in SDNY, (*See* Sweigert v Goodman 1:23-cv-05875-JGK-VF).  This shotgun approach to sham litigation gives Sweigert access to any venue with a "Mad Libs" style "quick release" pleading that he then refines and amends to exploit unique aspects of the venue.

## BACKGROUND

12.     Since 2017, Sweigert has involved himself in nearly two dozen legal actions against Goodman.  The sheer volume of filings, appeals, amicus curiae briefs, attempted interventions, and other vexations actions have become too numerous to track.  Sweigert has filed so many legal actions against Goodman, he is running out of venues free of judges who

shun his "judicial gamesmanship" as judge Valerie Caproni called it, when she said the behavior

would not be tolerated, but failed to act, (*See* Case 1:18-cv-08653-VEC-SDA Dkt. 383 Page 4).

13.     Virtually every day, Sweigert concocts some new scheme more complex than the

last, in his ongoing effort to put Goodman in legal jeopardy.  To that end, and specifically so he

could access Indiana law, Sweigert fraudulently represented that 1522 Vance Avenue Fort Wayne

Indiana was an address at which he resided or could receive mail when he filed a change of

address, (ECF No. 4).  Goodman alleges this outrageous fraud upon the Court was perpetrated in

violation of 18 U.S. Code §§ 1341 and 1343 so Sweigert could claim the Court has jurisdiction

over matters intended to harass Goodman.  Goodman hopes the Court will use its substantial

power to investigate these allegations and upon verification, act with its full strength to punish

the guilty, including if appropriate, referral to Attorney General Rokita for criminal prosecution.

## SPECIFIC ALLEGATIONS

### I.     Fraud Upon the Court and Violation of 18 U.S. Code § 1341

14.     On August 5, 2023, Sweigert set the stage for multiple violations of 18 U.S. Code

§ 1341 when he filed a change of address notice with intent to deceive the Court into believing

that he was either a resident of 1522 Vance Avenue Fort Wayne Indiana or able to receive USPS

mail there.  Neither claim is true and when Sweigert coerced litigants to direct USPS mail to be

sent to that address in furtherance of the scheme to defraud the Court, he violated § 1341.

15.     "The federal mail fraud statute criminalizes the use of the mails in the service of,

inter alia, "any scheme or artifice to defraud." 18 U.S.C.S. § 1341."

*United States v. Nayak*, 769 F.3d 978, 978 (7th Cir. 2014)

16.     Surely the Court cannot tolerate litigation practices that violate criminal statutes.

By knowingly filing a false change of address, Sweigert devised a scheme intended to defraud

this honorable Court into ensuring him access to the laws and valuable judicial resources of the people of the state of Indiana for his own misguided, vindictive crusade to occupy Goodman's life with senseless litigation. By inducing litigants and the Court to send mail via USPS to 1522 Vance Avenue, he used the mails in service of and furtherance of his fraudulent scheme.

17. "The mail and wire fraud statutes require a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises. 18 U.S.C.S. § 1341. This language has been given a broad interpretation and may be read to reach certain types of fraudulent settlement communications."

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 925 (9th Cir. 2006)

18. The broad language and intent of the mail fraud statue, and the Court's inherent power and broad discretion, grant it the tools required to thoroughly investigate these serious charges and punish the Plaintiff with appropriate sanctions should they be proven true.

19. On October 30, 2023, Goodman received an article of returned mail via USPS. The envelope contained a motion Goodman had filed with the clerk of the Second Circuit Appellate Court and served upon Sweigert via USPS to his registered address of record in the case. (*See* Goodman v Bouzy Case 23-1100, Document 59, 11/13/2023, 3589511, Page2 of 6).

20. On November 14, 2023, the Second Circuit indicated it was also unable to send mail to Sweigert in Fort Wayne Indiana, (*See* Case 23-1100, Document 64).

21. Public property records indicate the home at 1522 Vance Avenue was sold by plaintiff's brother Robert A. Sweigert in 2018. **(EXHIBIT A)**

22. Even this honorable Court has been unable to deliver mail to the Plaintiff at 1522 Vance Ave, (ECF No. 9) because he is not a resident of 1522 Vance Avenue, he cannot receive

mail there, and he deliberately deceived the Court when he filed a change of address notification. He did so for the ulterior purpose of harassing Goodman through manipulation of this case.

## II.     Fraud Upon the Court and Violation of 18 U.S. Code § 1343

23.     Sweigert moved to consolidate a case from the Eastern District of Michigan that he had been unable to serve because the defendant was a phantom corporation he concocted in a scheme to deceive Goodman into hiring counsel, (*See* Case 1:23-cv-06881-JGK Document 33).

24.     Proceeding with good faith, intending to counteract the increasingly malicious Lawfare campaign, and with a view toward judicial efficiency, Goodman moved to consolidate this instant action with the SDNY and MIED cases on November 20, 2023, (*See* Case 1:23-cv-05875-JGK-VF Dkt. 77), albeit incorrectly filing the motion with SDNY before this Court.

25.     Goodman realizes now that this was an error.  Goodman is not an attorney and despite years of unintended pro se defendant status there are tremendous gaps in his knowledge of law and Court procedure.  Goodman mistakenly filed the motion in the SDNY and only realized this after the filing.  On or about November 22, Sweigert filed a letter motion with the SDNY explaining Goodman's error and his desire to access the venue in SDIND. **(EXHBIT B)**

26.     Goodman alleges on information and belief that Sweigert violated 18 U.S. Code § 1343 when he filed two requests for summonses on the Court's ECF docket, (ECF Nos 14 and 15).  These may be completely normal filings that the plaintiff made on Saturday November 18, 2023, prior to Goodman's flawed motion to consolidate, however several points of suspicious evidence raise questions about these filings sufficient for the Court to investigate further.

27.     At the outset and given that this instant action was initiated by Sweigert on July 12, 2023, the timing of the request for summonses is by defemination, at least coincidental.

28.     Plaintiff Sweigert is a professional hacker who has spent the last six and half years scheming daily about novel ways to bring malicious, vexatious litigation against Goodman. Sweigert is the author of *The Ethical Hacker's Field Operations Guide: Learning the Art of Penetration Testing,* (https://www.amazon.com/Ethical-Hackers-Field-Operations-Guide/dp/1517763096/ref=sr_1_4?crid=2G7KR63CS38SC&keywords=ethical+hackers+field+sweigert&qid=1700670601&sprefix=ethical+hackers+field+sweigert%2Caps%2C67&sr=8-4).

29.     Sweigert's hacking book teaches readers about topics including social engineering, sometimes known as deception, and penetration testing ("Pen Testing") which involves repeatedly attacking a secure system, such as the Court's ECF Docket, until a weakness is found and exploited.  An ethical hacker employed by the Court might do this to learn how someone could compromise a secure system.  If Goodman is correct, and Sweigert used social engineering and Pen Testing tactics to violate the authenticity of the ECF docket, this would be a matter of the utmost importance and should prompt the Court to alter its cyber security posture.

## PLAINTIFF'S HISTORY OF MANIPULATED ECF FILINGS

30.     Previously in MIED, Goodman alleged Sweigert participated in a scheme to alter a filing with the intent to affect the outcome of the case.  Goodman filed an amicus curiae brief citing evidence he found which provoked Judge Gershwin Drain to call for an evidentiary hearing including Goodman.  Less than a day before its scheduled time, the hearing was canceled with no explanation. (*See* Sweigert v Cable News Network 2:20-cv-12933-GAD-KGA)

31.     MIED offers a sophisticated web site to pro se litigants rather than filing via email to the clerk's office like most other district courts.  When litigants upload documents to be entered by the clerks, the MIED pro se filing portal automatically sends an email receipt, like the one Goodman received after he filed the amicus curiae brief. **(EXHIBT C)**

32.    It would be easy to prove or disprove Goodman's allegations by presenting the receipt from the MIED pro se electronic filing portal, however no receipt has been produced.  It has been more than two years and rather than produce a receipt, both Sweigert and his brother have sued Goodman unsuccessfully without even attempting to refute Goodman's evidence.

33.    A plaintiff with no suspicious filing history, who did not engage in serial vexatious litigation, cyberstalking, and harassment, might persuade a court that the anomalous evidence in the November 18 filing was coincidence or a byproduct of the clerk's normal processes.  Here however, with plaintiff Sweigert, these suppositions cannot be taken for granted.

34.    The creation dates on Plaintiffs filings at ECF Nos. 14 and 15 are in conflict with the filing date.  The documents are stamped as filed on Saturday November 18, but inspection of the document properties show that it was not created until November 20.  While it is possible for something like this to happen with a normal filing on a Saturday, it is unusual that the clerks did not enter the filing that following Monday and rather waited one day until Tuesday November 21, despite evidence of interaction with the document the day before.  **(EXHIBIT D)**

35.    These sorts of anomalies in document metadata can sometimes be explained by the normal activates of the clerks and the functions required of them in transferring litigants' filings from pro se filing systems to the ECF docket.  However, in this case due to the plaintiff's history of litigation chicanery there remain reasons to be extremely suspicious.

36.    One way the Court could verify the authenticity of the filing would be to have its own Information Technology ("IT") staff examine the time date the email containing this filing arrived at the clerk's office as recorded on the clerk's computer.  If the arrival time and date is November 18, then the email is likely authentic.  If it is not, it is likely evidence of deception.

37.     One way a nefarious plaintiff could make the Court believe they had filed the summonses three days prior would be to set the date on their computer back three days and then file on temporary-efiling@insd.uscourts.gov.  To an unsuspecting clerk, the email would appear to have been sent the prior Saturday, November 18 not the actual date, Monday November 20.

38.     A social engineering enhancement of this scheme might involve placing a call to the clerk's office late on Monday November 20, and saying something like, "I filed something on Saturday via email filing and it has not yet been entered, could you please check if the email arrived?"  Such a conversation between a pro se litigant and a clerk would not inherently raise suspicion, and the unsuspecting clerk would be likely to find what appeared to be a two-day old submission that had simply been missed earlier that day.  This is speculation of course, but based on the totality of evidence, an inquiry with the clerks would be a prudent step in an investigation.

39.     Perhaps the strongest evidence of deception is the motive and timing provided by Sweigert's filing with the SDNY on November 22, 2023.  (*See* 1:23-cv-06881-JGK-VF Dkt. 70). This letter explains his motive for wanting to access SDIND.  Timing suggests the need to deceive the Court into believing his false November 18 filing prompted Goodman's motion to consolidate which is not true.  Had Goodman filed his motion correctly, Sweigert would not have had the opportunity, need or idea that motivated his alleged attack on the Court's ECF Docket.

40.     If the Court's simple investigation of the email arrival date does determine there has been manipulation, the Court must take swift and decisive action.  Such illicit acts intended to gain advantage in litigation are an affront to the civilized dissemination of justice and the lowest form of deception.  As arduous as Sweigert's years of legal battering have been for Goodman, the damage Sweigert does to society overall is far greater.  By jamming up the mechanisms of justice with his fraudulent nonsense and criminal schemes, Sweigert denies

American citizens access to the courts. This is denial of justice writ large. Sweigert is a menace to society whose more than half decade long screed of psychopathic litigation must end now.

## CONCLUSION

For the reasons stated herein, to prevent the ongoing manifest injustice and abuse of the Courts for vindictive, vengeful, or personal ulterior purposes, this Court must fully investigate these serious, evidence backed allegations of criminal action and fraud upon the Court. Upon appropriate finding and in the furtherance of justice, this Honorable Court must act to the fullest extent of its power and legal authority to punish offending litigants and preserve the integrity of the Judicial Branch of the United States Government which the disgraceful actions of Plaintiff Sweigert routinely diminish and attack for his own psychotic enrichment.

Dated: New York, New York November 22, 2023

Respectfully submitted,

Jason Goodman
Pro Se Defendant
truth@crowdsourcethetruth.org
252 7th Avenue Apt 6s
New York, NY 10001
347-380-6998

**EXHIBIT A**

**PUBLIC PROPERTY RECORD**
**1522 VANCE AVE**
**FORT WAYNE, IN 46805**





**1522 Vance Ave.**
Fort Wayne, IN 46805

| | |
|---|---|
| Overview | |
| Possible Owners | 3 |
| Possible Residents | 12 |
| Property Details | 4 |
| Building Permits | 7 |
| Deeds | 3 |
| Liens | 4 |
| Property Valuation | 4 |
| Homes Nearby | 210 |
| Schools & Area | 116 |

♡ Save    🔔 Monitor    📄 PDF    ☰ List    ⋯ More

## Possible Ownership Timeline

📢 Leave feedback

🏃 Is something missing?

**2018 - Present**  ● **Hernadez, Alfredo|gonzalez, Lorena**
Date of purchase **November 2018**

**2018 - 2018**  ● **Wcc Properties Llc**
Date of purchase **October 2018**

**2013 - 2018**  ● **Robert A Sweigert**
Date of purchase **September 2013**

**unknown - 2013**  ● **Robert A Sweigert**
Date of purchase **unknown**

Is this accurate?
👍 👎

## 12 Possible Residents

⌄ Learn more

**Andrew G Sweigert**    View person report

Current location 1522 Vance Ave. Fort Wayne, IN 46805
Dates seen 2009 - 2023

Is this accurate?
👍 👎

**Robert A Sweigert**    View person report

May also go by ROBERT A SWIGERT
Current location 1522 Vance Ave. Fort Wayne, IN 46805
Dates seen 2013 - 2018

Is this accurate?
👍 👎

# 1522 Vance Ave

Fort Wayne, IN 46805



# Property

## Information

**Tax Year/Pay Year**
2022 / 2023

**Parcel Number**
02-07-36-226-005.000-074

**Property Type**
Real

**Tax Unit / Description**
74 - FW Wayne

**Property Class**
RESIDENTIAL ONE FAMILY DWELLING ON A
PLATTED LOT

**Owner of Record**
Hernandez Alfredo & Gonzalez Lorena

**Mailing Address**
1522 Vance Ave
Fort Wayne, IN 46805

**Mortgage Company**
no data

**Mtg Company Last Changed**
no data

**Tif**
no data

**Provide Electronic Billing?**
No

**Duplicate Number**
1852667

**Homestead Credit Filed?**
Yes

**Over 65 Circuit Breaker?**
No

## Legal Description

Note: Not to be used on legal documents

**Description**
W 1/2 N 136' Lot 71 Elizabeth C Hanna Subdivision of Plat C

no data

**Section**
0036

**Township**
0007

**Range**

no data

**Parcel Acres**
no data

**Lot Number**
71

**Block/Subdivision**
no data

# Billing

## $36.68
Current Account Balance

## Detail

|  | Tax Bill | Adjustments | Balance |
|---|---|---|---|
| **Spring Tax:** | $733.47 | $0.00 | $733.47 |
| **Spring Penalty:** | $73.35 | $0.00 | $73.35 |
| **Spring Annual:** | $0.00 | $0.00 | $0.00 |
| **Fall Tax:** | $733.47 | $0.00 | $733.47 |
| **Fall Penalty:** | $0.00 | $0.00 | $0.00 |
| **Fall Annual:** | $0.00 | $0.00 | $0.00 |
| **Delq NTS Tax:** | $0.00 | $0.00 | $0.00 |
| **Delq NTS Pen:** | $0.00 | $0.00 | $0.00 |
| **Delq TS Tax:** | $0.00 | $0.00 | $0.00 |
| **Delq TS Pen:** | $0.00 | $0.00 | $0.00 |
| **Other Assess:** | $0.00 | $0.00 | $0.00 |
| **Late Fine:** | $0.00 | $0.00 | $0.00 |
| **20% Penalty:** | $0.00 | $0.00 | $0.00 |
| **Demand Fee:** | $0.00 | $0.00 | $0.00 |
| **Jdg Tax/Pen/Int:** | $0.00 | $0.00 | $0.00 |
| **Judgement Fee:** | $0.00 | $0.00 | $0.00 |
| **Advert Fee:** | $0.00 | $0.00 | $0.00 |
| **Tax Sale Fee:** | $0.00 | $0.00 | $0.00 |

|  | Tax Bill | Adjustments | Balance |
|---|---|---|---|
| **NSF Fee:** | $0.00 | $0.00 | $0.00 |
| **Certified to Court:** | $0.00 | $0.00 | $0.00 |
| **LIT Credits:** | $201.87 | $0.00 | $201.87 |
| **PTRC:** | $0.00 | $0.00 | $0.00 |
| **HMST Credit:** | $0.00 | $0.00 | $0.00 |
| **Circuit Breaker:** | $19.02 | $0.00 | $19.02 |
| **Over 65 CB:** | $0.00 | $0.00 | $0.00 |
| **Tax and Penalty:** |  |  | $1,540.29 |
| **Other Assess (+):** |  |  | $0.00 |
| **Fees (+):** |  |  | $0.00 |
| **Cert to Court (-):** |  |  | $0.00 |
| **Subtotal:** |  |  | $1,540.29 |
| **Receipts:** |  |  | $1,503.61 |
| **Total Due:** |  |  | $36.68 |
| **Surplus Transfer:** |  |  | $0.00 |
| **Account Balance:** |  |  | $36.68 |

## Tax History

| Pay Year | Spring | Fall | Delinquencies | Total Tax | Payments |
|---|---|---|---|---|---|
| **2023** | $733.47 | $733.47 | $73.35 | $1,540.29 | $1,503.61 |
| **2022** | $619.52 | $619.52 | $627.20 | $1,866.24 | $1,866.24 |
| **2021** | $570.18 | $570.18 | $0.00 | $1,140.36 | $570.18 |
| **2020** | $519.72 | $519.72 | $222.16 | $1,261.60 | $1,261.60 |
| **2019** | $211.58 | $211.58 | $0.00 | $423.16 | $211.58 |
| **2018** | $590.63 | $590.63 | $29.53 | $1,210.79 | $1,210.79 |
| **2017** | $883.62 | $883.62 | $928.86 | $2,696.10 | $2,696.10 |
| **2016** | $884.64 | $884.64 | $88.46 | $1,857.74 | $928.88 |
| **2015** | $848.98 | $848.98 | $0.00 | $1,697.96 | $1,697.96 |
| **2014** | $235.92 | $235.92 | $0.00 | $471.84 | $471.84 |
| **2013** | $198.35 | $198.35 | $0.00 | $396.70 | $396.70 |
| **2012** | $194.46 | $194.46 | $209.70 | $598.62 | $598.62 |
| **2011** | $190.64 | $235.64 | $490.01 | $916.29 | $716.12 |

## Payments

| Payable Year | Entry Date | Payable Period | Amount Paid | | Property Project |
|---|---|---|---|---|---|
| **2023** | 06/20/2023 | F | $733.47 | Lock Box Payment 6/10/2023 Check Nbr 858363 | N |
| **2023** | 06/20/2023 | F | $770.14 | Lock Box Payment 6/10/2023 Check Nbr 858363 | N |

# Tax Overview

## Tax Summary

| Tax Summary Item | 2022 | 2023 |
|---|---|---|
| **1. Gross assessed value of property** | | |
| 1a. Gross assessed value of land and improvements | $113,500 | $132,600 |
| 1b. Gross assessed value of all other residential property | $0 | $0 |
| 1c. Gross assessed value of all other property | $0 | $0 |
| **2. Equals total gross assessed value of property** | $113,500 | $132,600 |
| 2a. Minus deductions | ($68,975) | ($75,660) |
| **3. Equals subtotal of net assessed value of property** | $44,525 | $56,940 |
| 3a. Multiplied by your local tax rate | 3.153 | 2.9642 |
| **4. Equals gross tax liability** | $1,403.86 | $1,687.83 |
| 4a. Minus local property tax credits | ($164.82) | ($201.87) |
| 4b. Minus savings due to property tax cap | $0.00 | ($19.02) |
| 4c. Minus savings due to 65 years & older cap | $0.00 | $0.00 |
| **5. Total property tax liability** | $1,239.04 | $1,466.94 |

## Assessed Values as of 03/21/2022

| | |
|---|---|
| Land Value | $20,500 |
| Improvements | $112,100 |

## Other Assessments

| Assessment Name | Billing | Adjustments | Balance | |
|---|---|---|---|---|
| | | No data | | |

## Exemptions / Deductions

| Description | Amount |
|---|---|
| Homestead Stand | $45,000.00 |
| Homestead Supp | $30,660.00 |
| **Count: 2** | **$75,660.00** |

## History

### Property

| Event | Date | Time | Effective Date | Create Year | Related Property Key | Book | Page | Doc Nbr |
|---|---|---|---|---|---|---|---|---|
| No data | | | | | | | | |

### Transfer

| Transferred From | Transfer Date | Reference Number | Document Number | Book | Page |
|---|---|---|---|---|---|
| WCC Properties LLC | 10/12/2018 | | 2018052500 | | |
| Sweigert Robert A | 09/13/2018 | | 2018047443 | | |
| Sweigert George H & Catherine | 08/28/2013 | | 2013050232 | | |
| Krudop James & Elizabeth L | 05/08/1970 | 0d1471 | | | |
| Prior To Tax System | 01/01/1801 | | | | |

Last Updated August 11, 2023
Copyright © 2023 Low Associates, Inc.

**EXHIBIT B**

Plaintiff Sweigert's Letter Motion to SDNY Entered November 22, 2023

D. G. SWEIGERT, C/O, MAILBOX, PMB 13339
514 Americas Way, Box Elder, SD 57719
Spoliation-notice@mailbox.org

November 22, 2023

*Sweigert v. Goodman,* **23-cv-05875-JGK**
**Associated action: 23-cv-06881-JGK**

U.S. District Judge Honorable John G. Koeltl
U.S. District Court
for the Southern District of New York
500 Pearl Street, New York, N.Y. 10007
Via ECF filing

SUBJ:     Plaintiff's OBJECTION to Defendant's motion papers ECF no. 77

Dear Judge Koeltl,

1.     Yesterday Defendant Jason Goodman docketed his motion papers as ECF no. 77 known as "NOTICE OF MOTION TO CONSOLIDATE RELATED LITIGATION". Without filing papers in the U.S. District Court for the Southern District of Indiana, Mr. Goodman seeks consolidation of the Indiana legal action 23-cv-01228-JRS-MG into the S.D.N.Y. forum. The Plaintiff OBJECTS.

2.     Although Mr. Goodman cites Fed. R. Civ. Proc. Rule 42(a) in his ECF no. 77 papers, the S.D.N.Y. has no jurisdiction in this matter and can not transfer an Indiana legal action. The Court only has powers to consolidation legal actions in the same district.

3.     It is instructive to note, "[u]nder Federal Rule of Civil Procedure 42(a), the Court only has the power to consolidate actions before the same federal district court. *Facen v. Royal Rotterdam Lloyd S S Co.,* 12 F.R.D. 443 (S.D.N.Y. 1952). The motion to consolidate is denied because the related action is now pending in Vermont state court," *Marathon Search Partners of Burlington, Inc. v. Axelrod,* 16 Civ. 7452 (RWS) (S.D.N.Y. Oct. 21, 2016).

4.     Again, "[b]ut the application must be made in the district in which the case is pending and not in the district to which it is to be removed." *Facen v. Royal Rotterdam Lloyd S.S. Co., et. al. v. Royal Rotterdam Lloyd S.S. Co*., 12 F.R.D. 443 (S.D.N.Y. 1952); see *National Equipment Rental, Ltd. v. A.L. Fowler, D.O.,* 287 F.2d 43 (2nd Cir. 1961)," *Robeson v. Howard University,* 00 Civ. 7389 (GBD) (S.D.N.Y. Jan. 28, 2002).

5.     Contrary to Mr. Goodman's motion papers the Indiana legal action is not similar in nature or fact pattern to the litigation before this Court. The Indiana action addresses the on-going slander, smear, libel and misappropriation related to George H. Sweigert, (Plaintiff's father) a disabled veteran who served honorably for five (5) years as a U.S. Army Staff Sergeant (with the Combat Infantry Badge) in World War II South Pacific campaigns. This includes action at Guadalcanal, the Fiji Islands, Philippines, the Solomons Islands, and other bloody conflicts.

6.  The Indiana legal action is based upon Indiana Crime Victims Act (ICVA), theft, Ind. Code § 35-43-4-2, deception, Ind. Code § 35-43-5-3. and the Plaintiff's rights (as his father's heir) under Indiana's statutory protection for the right of publicity, Ind. Code § 32-36-1-8(a). Additionally, there is a co-defendant known as PATREON, INC.

7.  Below is a sample artifact (Mr. Goodman's Twitter account) from the Indiana action.



8.  Indiana allows actions to protect the reputation and legacy of deceased individuals. Plaintiff's father lived in Indiana for thirty (30) years and served as an instructor of electronics technology at an Indiana state university. Anticipated witnesses include son Robert A. Sweigert and grandson Andrew G. Sweigert (cited by Mr. Goodman in his ECF no. 77 papers), both residents of Fort Wayne, Indiana.

Respectfully,     Signed 11/22/2023

**D.G. SWEIGERT, PRO SE PLAINTIFF**

## CERTIFICATE OF SERVICE

Hereby certified that a PDF copy of this letter has been sent via electronic mail to:

Jason Goodman, truth@crowdsourcethetruth.org

Certified under penalties of perjury.

Respectfully,     Signed this November 22nd, 2023 (11/22/2023)

**D.G. SWEIGERT, PRO SE PLAINTIFF**

**EXHIBIT C**

Electronic filing receipt for Amicus Curiae Brief from Eastern District of Michigan Pro Se Electronic Filing Portal



**From:** no-reply@mied.uscourts.gov
**Subject:** Pro Se Document Submission
**Date:** July 20, 2021 at 12:51 PM
**To:** truth@crowdsourcethetruth.org

# Pro Se Document Submission

Filer's Name: Jason Goodman

Filer's Email: truth@crowdsourcethetruth.org

Filer's Phone: 323-744-7594

Case Number: cv 12933-GAD-KGA

Filer's Signature: S/ Jason Goodman

---

File 1: Uploaded as "Amicus Brief Goodman with Exhibit.pdf", saved and attached as "File_1_ProSe_20210720_11_10_15_213.pdf"
Description: Amicus Curiae brief from Pro Se non-party Jason Goodman

I agree to each of the following:

1. I am intending to file the attached document(s) with the court.
2. I am not a licensed attorney, e-filer or submitting on behalf of an incarcerated party.
3. If filing a new case and paying the filing fee, the payment information will be sent in a separate email. Do not upload summons until payment of the filing has been received or directed to do so by the Court.

For technical assistance, please call (313) 234-5025.

**EXHIBIT D**

ECF NO. 14
Document Properties in Adobe Acrobat Reader Reveal Evidence of Alleged Document Manipulation

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Indiana ▾

| | | |
|---|---|---|
| D. G. Sweigert | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. 23-cv-01228-JRS-MG |
| JASON GOODMAN | ) | |
| dba 21st Century 3D | ) | |
| dba CrowdSource The Truth | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

**FILED**

**11/18/2023**

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

JASON GOODMAN
252 7th Ave #6S
New York, NY 10001

A lawsuit has been filed agai

Within 21 days after service
are the United States or a United Stat
P. 12 (a)(2) or (3) — you must serve
the Federal Rules of Civil Procedure.
whose name and address are:

D.G. S
PMB
514 A
Box E

If you fail to respond, judgm
You also must file your answer or m

Date: _____

---

**Document Properties**

| Description | Security | Fonts | Initial View | Custom | Advanced |

Description

File: 014.pdf

Title:

Author:

Subject:

Keywords:

Created: 11/20/23, 2:58:05 PM          [Additional Metadata...]
Modified: 11/21/23, 11:34:10 AM
Application:

Advanced

PDF Producer: iText® 7.1.6 ©2000-2019 iText Group NV (Administrative Office of the United
PDF Version: 1.7 (Acrobat 8.x)
Location: /Users/jasongoodman/Documents/D George Sweigert v Goodman/Indiana/Pac...
File Size: 60.69 KB (62,147 Bytes)
Page Size: 8.50 x 11.00 in          Number of Pages: 2
Tagged PDF: No          Fast Web View: No

Help          Cancel          OK

**EXHIBIT B**

# United States of America

## United States Patent and Trademark Office



**Reg. No. 7,070,501**

**Registered Jun. 06, 2023**

**Int. Cl.: 9, 14, 16, 18, 24, 25, 28, 30, 41**

**Service Mark**

**Trademark**

**Principal Register**

Nintendo of America Inc. (WASHINGTON Corporation )
4600 150th Avenue NE
Redmond WA 98052
UNITED STATES

CLASS 9: Recorded electronic game programs; downloadable electronic game programs; recorded video game programs; downloadable video game programs; video game cartridges; memory cards for video game machines; cases for smartphones; covers for smartphones; recorded computer game software; downloadable computer game software for use on mobile and cellular phones; downloadable image files containing artwork, text, audio, videos relating to video games; downloadable music files; downloadable electronic publications, namely, fiction stories, booklets, manuals and newsletters in the field of video games; headphones; earphones; batteries

CLASS 14: Key rings; key chains comprised of split rings with decorative fobs or trinkets; charms for key rings; jewelry boxes; commemorative coins; collectible coins; jewelry; necklaces; bracelets; jewelry charms; earrings; tie pins; rings (jewelry); medals; ornamental lapel pins; shoe jewelry; watches; clocks; watch bands

CLASS 16: Office requisites, namely, binders and folders; wrapping paper; paper bags and sacks; place mats of paper; coasters of paper; table napkins of paper; tablecloths of paper; paper; stationery; notebooks; pen cases; paint boxes for use in schools; writing implements; pens; pencils; pen cases; rubber erasers; pencil sharpeners, electric or non-electric; postcards; greeting cards; stickers; wall decals; printed matter, namely, calendars, children's activities books, magazines and manuals in the field of video games; books in the field of children's entertainment, fiction stories, and video games; comic books; posters; paintings; photograph stands; paper party decorations

CLASS 18: Clothing for pets; collars for animals; bags, namely, book bags, carry-on bags, shoulder bags, handbags, backpacks, drawstring pouches, travel bags, and luggage; school bags; rucksacks; suitcases; credit card cases; purses; wallets; key cases; luggage tags; garment bags for travel; bags for sports; vanity cases, not fitted; umbrellas

CLASS 24: Fabrics for textile use; adhesive fabric for application by heat; towels of textile; handkerchiefs of textile; quilts; children's blankets; bed blankets; picnic blankets; throws; fleece blankets; travelling rugs; lap robes; covers for cushions;



**Katherine Kelly Vidal**

**Director of the United States
Patent and Trademark Office**



pillowcases; bed linen; tablemats of textile; table napkins of textile; place mats of textile; coasters of textile; flags of textile or plastic; banners of textile or plastic; blankets for household pets; wall hangings of textile; unfitted fabric furniture covers; bed covers; curtains of textile or plastic; household linen; sleeping bags

CLASS 25: Clothing, namely, polo shirts, sweatshirts, parkas, jackets, raincoats, pants, dresses, sweatpants, skirts, and sweaters; shirts; tee-shirts; pajamas; underwear; bathing suits; socks; scarves; neck scarves; ear muffs; gloves; bibs not of paper; hats; caps being headwear; cap peaks; belts for clothing; footwear; sports shoes; sandals; slippers; masquerade costumes; Halloween costumes

CLASS 28: Games, namely, card games, promotional game cards, puzzles, trading card games; toys, namely, toy balls, toy key chains, toy figures, water toys, plush toys, inflatable toys, party favors in the nature of small toys, toy balloons, toy building blocks, toy vehicle; ride-on toys; ride-on toys and accessories therefor; stuffed toys; dolls; portable games with liquid crystal displays; protective films adapted for screens for portable games; video game machines; controllers for game consoles; hand-held units for playing video games; arcade video game machines; board games; playing cards; ornaments for Christmas trees, except lights, candles and confectionery; protective carrying cases specially adapted for handheld video games

CLASS 30: Tea; tea-based beverages; coffee; coffee-based beverages; cocoa; cocoa-based beverages; pastries; candies; ice cream; cookies; chocolate; popcorn; chewing gum; bread and buns; sandwiches; pizzas; pies; cakes; pancakes; frozen yogurt; crackers; mints for breath freshening; seasonings; ketchup; dressings for salad; cereal preparations, namely, oatmeal, corn flakes, breakfast cereals, cereal-based snack foods, and cereal bars; noodles; pasta; pasta sauce; rice

CLASS 41: Entertainment services, namely, providing non-downloadable images featuring images of characters and scenes from an electronic game via a global computer network and wireless networks; entertainment services, namely, providing non-downloadable prerecorded music and sounds in the field of video games, all on-line via a global computer network; entertainment services, namely, providing temporary use of non-downloadable video games; entertainment services, namely, providing online electronic games; providing information in the field of entertainment; providing non-downloadable online electronic publications, namely, online journals and interactive online blogs featuring user generated or specified content in the field of video games and online publications in the nature of e-books in the field of video games; providing on-line videos featuring video games, not downloadable; providing online music, not downloadable; presentation of live show performances; presentation of musical performances; arranging and conducting of concerts; organization and arrangement of video game events for entertainment purposes; organization and arrangement of entertainment shows and events; providing on-line computer games; organization of electronic game competitions for entertainment purposes; providing amusement arcade services

PRIORITY DATE OF 02-18-2021 IS CLAIMED

OWNER OF INTERNATIONAL REGISTRATION 1594401A DATED 03-10-2021, EXPIRES 03-10-2031

SER. NO. 79-312,295, FILED 03-10-2021

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.




**Ghost Town NYC – Stupid Mario World in an Uproar as Goodman v Bouzy Shifts Into High Gear (RICO)**
Crowdsource the Truth 8 · 1.4K views · Streamed 6 months ago
People were upset when I said Nate the Liar had joined Stupid Mario World. There have been a lot of developments since then. Become a sponsor & enjoy exclusive content on SubscribeStar,...


**Ghost Town NYC – It's Official Nate the Liar Joins Stupid Mario World Announces the End of LawTube**
Crowdsource the Truth 8 · 1.4K views · Streamed 8 months ago
Many people were confused by Nate the Lawyer's December 26, 2022 livestream dedicated to #BouzyBucks. He presented it as an overview of Goodman v Bouzy in support of my efforts, but was there...


**Ghost Town NYC – Why Is Stupid Mario Luigi Desperate to Hide Musk's Twitter Security Assault On Me?**
Crowdsource the Truth 8 · 1.3K views · Streamed 9 months ago
#NYC #NYPD #twitter It is no secret that the Stupid Mario Brothers have been persistently harassing me for the past five and a half years. They've been involved in every single one of the...

https://www.youtube.com/@crowdsourcethetruth8954/search?query=mario



### Ghost Town NYC – Stupid Mario World in an Uproar as Goodman v Bouzy Shifts Into High Gear (RICO)

Crowdsource the Truth 8 • 1.4K views • Streamed 6 months ago

original.'" *Abilene Music, Inc. v. Sony Music Ent., Inc.* , 320 F. Supp. 2d 84, 91 (S.D.N.Y. 2003) (quoting *Campbell* , 510 U.S. at 580–81, 114 S.Ct. 1164 ); *see also Warhol* , 992 F.3d at 110 (noting that "parody[ ] needs to mimic an original to make its point"). A secondary work that simply appropriates material from an existing work without directing its criticism at the copied work itself is not parody. *Abilene Music, Inc.* , 320 F. Supp. 2d at 91. Defendant admits that "[n]either the Emmy statuette nor the Television Academies were mentioned in the broadcast." Def. Mem. of Law, Dkt. 25 at 7; *see also* Pls.' Motion for Judicial Notice, Dkt. 37-1, Ex. 4, at 10:30 to 11:00 (stating that the Television Academies "narcissistically think [the Crony Awards] was referring to them"). Accordingly, the Crony Graphic is not parody.

Nat'l Academy of Television Arts & Sciences v. Multimedia Sys. Design, Inc.

...Liar Joins Stupid Mario World

...26, 2022 livestream dedicated to #BouzyBucks. He ...of my efforts, but was there...

### Ghost Town NYC – Why Is Stupid Mario Luigi Desperate to Hide Musk's Twitter Security Assault On Me?

Crowdsource the Truth 8 • 1.3K views • Streamed 9 months ago

#NYC #NYPD #twitter It is no secret that the Stupid Mario Brothers have been persistently harassing me for the past five and a half years. They've been involved in every single one of the...



### Ghost Town NYC – Is New York's "Taxi King" About to Crush Stupid Mario World From the Grave?

Crowdsource the Truth 8 • 1.9K views • Streamed 2 months ago

Many people have never heard of Evgeny Friedman, but many more have heard of Trump's former attorney Michael Cohen. What do the Stupid Mario Bros know about them? Become a sponsor & enjoy...



### Ghost Town NYC – It's Official Nasty Nina Crowned Princess of Stupid Mario World

Crowdsource the Truth 8 • 1.2K views • Streamed 6 months ago

We already knew Nasty Nina was down for trampling the First Amendment. She's suspected of being involved in the Maidan Revolution Coup in Kyiv during 2014. Now we are learning just exactly...



### Ghost Town NYC – Is Lawfare Editor Ben Wittes the Wario of Stupid Mario World?

Crowdsource the Truth 8 • 1K views • Streamed 3 months ago

There is a literal cast of character in Goodman v Bouzy and they have remarkable ties to events exposed in the Durham Report. Become a sponsor & enjoy exclusive content on SubscribeStar,...



### Ghost Town NYC – Is Lawfare Editor Ben Wittes the Wario of Stupid Mario World?

Crowdsource the Truth 8 • 1K views • Streamed 3 months ago

There is a literal cast of character in Goodman v Bouzy and they have remarkable ties to events exposed in the Durham Report. Become a sponsor & enjoy exclusive content on SubscribeStar,...



### Ghost Town NYC – Lawfare Descends on Fulton County Georgia

Crowdsource the Truth 8 • 1.4K views • Streamed 2 weeks ago

Stupid Mario Luigi is a terrible poker player who cannot control his tells. Become a sponsor & enjoy exclusive content on SubscribeStar, Odysee, Substack & Patreon http://www.subscribestar.com...



### Ghost Town NYC – Has FBI Whistleblower Nate Cain Been Subjected to Stupid Mario Bros' Harassment?

Crowdsource the Truth 8 • 1.4K views • Streamed 4 months ago

Although I had previously heard of Nate Cain's story, I was not entirely familiar with the details prior to Charles Ortel arranging the interview that was broadcast last night. Since the broadcast...



### Ghost Town NYC – Is a Counterlawfare "Neutron Bomb" About to Go Off?

Crowdsource the Truth 8 • 1.2K views • Streamed 13 days ago

The legal equivalent of a neutron bomb is about to be filed. Can Stupid Mario World survive? Become a sponsor & enjoy exclusive content on SubscribeStar, Odysee, Substack & Patreon http://www.su...



### Ghost Town NYC – Docket Haymaker to Smash Stupid Marios Monday Bouzy Thanksgiving Goose Still Cooked

Crowdsource the Truth 8 • 1K views • Streamed 9 months ago

#NYC #Lawfare #Bouzy While the Stupid Mario Bros continue to push utter bulls#!t in their ongoing efforts to destroy Crowdsource the Truth, a late filing awaits docket entry on Monday. Will...











**EXHIBIT C**



Open in app ↗

Get unlimited access

Search Medium

29

Jason Goodman

Dec 22, 2022 · 3 min read · ▶ Listen

🔖 Save    🐦    📘    in    🔗

# THE TWITTER COUP Part 1



Twitter's former Government Liaison Adam Sharp has stars in his eyes as he stares longingly at President Barack Obama during the Twitter Townhall @thewhitehouse July 6, 2011

**Preliminary Statement**

Over the past four years, U.S. District Court Judge Valerie Caproni has presided over three cases in which the author was a litigant.

(Case 1:18-cv-08653-VEC-SDA, Case 1:20-cv-07269-VEC-OTW, Case 1:21-cv-10627-VEC)

In two of the cases, the author was opposed by Adam Sharp. Facts surrounding an alleged relationship between Caproni and Sharp were unknown prior to researching and writing this article in December 2022. A motion to disqualify Caproni was denied on January 10, 2022 (Case 1:21-cv-10627-VEC Document 17).

Recusal is warranted in cases where, "a reasonable person, knowing all the facts would have doubts about the judge's ability to be impartial in the case." Judges may also recuse themselves to avoid the appearance of conflicts of interest.

**The Fundamental Transformation of America**

Elon Musk's "Twitter Files" reveal a deeply troubling, previously hidden relationship between federal law enforcement and private sector social media companies, but an important question remains unanswered. Who could have executed such a vast government infiltration of private industry and how could they overcome the technical and legal hurdles? As implausible as it seems, this all occurred in plain sight right under our noses over the past two decades.

Evidence in the public domain is likely to prove that former President Barack Obama, former FBI General Counsel Valerie Caproni, and Twitter's former Government Liaison Adam Sharp, were the three most important conspirators at the outset. It appears they worked together and with others to launch one of the most sinister and sophisticated crimes in our nation's history.

**From Weatherman to U.S. President — The Rise of Barack Obama**

Just after his historic Presidential win, the New York Times ran a story about "How Obama Tapped Into Social Networks' Power". Journalist David Carr wrote, "In February 2007, a friend called Marc Andreessen, a founder of Netscape and a board member of Facebook and asked if he wanted to meet with a man with an idea that sounded preposterous on its face." Carr never reveals the identity of Andreessen's friend but goes on to depict Obama as the genius behind a grass roots campaign facilitated by emerging technology.

In 2015, long after Ayers and Dohrn helped the obscure Illinois State Senator rise to international prominence, President Obama held a technology summit at Stanford University. After delivering remarks on the future of technology and industry, Obama signed Executive Order 13691 Promoting Private Sector Cybersecurity Information Sharing. In it, the President commanded that, "private companies, nonprofit organizations, executive departments and agencies (agencies), and other entities must be able to share information related to cybersecurity risks and incidents and collaborate to respond in as close to real time as possible." Stanford students in attendance were probably unaware, but this order codified long standing FBI demands to supersede the fourth amendment and investigate anyone they wanted. This paved the way for the Neo-fascism now being exposed in the ongoing releases of the "Twitter Files".

Making good on his campaign promise, Obama ensured that America would be fundamentally transformed from a Constitutional Republic into a Neo-fascist Technocratic Autocracy. This new authority would be enforced by a digitally enabled Super-Stasi made up of FBI InfraGard members, (https://www.infragard.org/) and other contractors including hundreds, perhaps even thousands of ordinary citizens patrolling on-line as America's Secret Police.

Such an Orwellian overthrow would be calculated to happen without anyone noticing until it was too late. The merger of government and corporate technological power enabled a class of politically aligned bureaucratic elites to maintain control by monitoring and stifling opposition rather than allowing open debate in a free marketplace of ideas. These traitors have trampled the Constitution and destroyed the most fundamental aspect of American greatness.

Part two of this series will explore Congressional allegations of criminal malfeasance within the FBI.

Twitter       FBI        Obama        Corruption        Elon Musk

Open in app ↗

Get unlimited access

Search Medium

29

Jason Goodman

Dec 22, 2022 · 2 min read · ▶ Listen

🔖 Save

# THE TWITTER COUP Part 2



Accusations of Criminal Malfeasance in the FBI General Counsel's Office

On April 14, 2010, the House Judiciary Subcommittee held a hearing on the Inspector General's "Report on the FBI's Use of Exigent Letters and Other Informal Requests for Telephone Records". Committee Chair John Conyers (D-Mich.) issued a harsh rebuke of FBI General Counsel Valerie Caproni, when he said, "Today's hearing showed that the FBI broke the law on telephone records privacy and the General Counsel's Office, headed by Valerie Caproni, sanctioned it and must face consequences."

Conyers went on to say he was "outraged" that the FBI Office of the General Counsel had invented exigent letters apparently out of whole cloth, "It's not in the Patriot Act. It never has been. And its use, perhaps coincidentally, began in the same month that Ms. Valerie Caproni began her work as general counsel."

Given the most recent revelations of Elon Musk's "Twitter Files" concerning the FBI, Conyers' closing statement in a letter to then FBI director Mueller is eerily prescient, "I'm extremely disappointed that every time Congress has tried to plug potential civil rights and civil liberties violations in our counterterrorism activities, the FBI seems to have figured out a way to get around it."

Chairman Conyers implored Mueller to take action and fire the responsible parties in Caproni's Office. No records of any action in response could be located and the press release has been removed from the House Judiciary web page.

Rather than face any consequences for her actions, Caproni would leave the FBI to join Northrup Grumman as Deputy General Counsel in 2011. She was nominated for a District Court Judge position in the Southern District of New York by Barack Obama in 2012.

During the course of her contentious Senate confirmation, Ranking Member of the Judiciary Committee Chuck Grassley sent a letter to the Dept. of Justice Office of the Inspector General. The letter detailed Senator Grassley's concerns about undue resistance to the committee's requests for documents and transcripts related to Caproni's ongoing constitutional abuses including repeated inappropriate use of National Security Letters and the even more urgent "exigent letters" throughout her tenure. The Grassley letter describes a culture of autocracy at the FBI that obstructed oversight, ignored the law and operated with impunity.

Valerie Caproni was confirmed by the Senate in 2013 and still serves as a U.S. District Court Judge for the Southern District of New York where she continues her abuse of citizens' constitutional rights to this day.

Part three will discuss how technical and legal barriers were overcome in the effort to destroy Americans' constitutional protections.

FBI        Twitter        Valerie Caproni        Corruption        Congress

Open in app ↗

 Search Medium

 Jason Goodman
Dec 22, 2022 · 4 min read · ▶ Listen

🔖 Save   🐦   f   in   🔗

# THE TWITTER COUP Part 3



President George W. Bush and a gaggle of neocon cronies delight in laying the groundwork for the destruction of the U.S. Constitution

**Overcoming Legal Hurdles Takes a Village**

The groundwork was laid by the George W. Bush Administration. In the wake of the national trauma of 9/11, the Patriot Act was passed under the guise of increased security. This unconstitutional statute called for the creation of the National Cyber Investigative Joint Task Force, an interagency intelligence sharing organization led by the FBI. It also granted federal law enforcement new tools in their self-declared "war on terror". For the first time since the signing of the Bill of Rights, federal agents were granted unilateral authority to surveil any person they deemed a national security threat without first establishing probable cause or providing any evidence to a judge. Due process was bypassed, the need for warrants ignored, and newly created National Security Letters decimated the Fourth Amendment.

No longer were We the People "secure in our persons, houses, papers, and effects, against unreasonable searches and seizures". The FBI and other Federal agencies could simply send a National Security Letter to your phone company or internet provider seeking any information associated with any account for any reason. Although National Security Letters do not have the same legal force and effect as Court Orders or properly issued search warrants, the practical impact is virtually identical with an historical record nearing 100% compliance by providers.

During her tenure as general counsel at the FBI, Valerie Caproni coined the phrase "Going Dark". The term purported to describe an increasing proliferation of digital communications technologies and a widening gap in law enforcement's ability to penetrate those technologies in the due course of criminal investigations. Things like end-to-end encryption and automatically decimated chat logs had investigators in the dark according to Caproni.

The FBI's proposed solution was to create new legislation granting agencies unfettered access to all digital communications in real time. Setting aside the unrealistic network bandwidth and storage requirements of such a concept, the idea was controversial to say the least. Caproni and the FBI aimed to compel all technology companies to modify their products with "back doors" that would bypass primary security measures and allow federal investigators instant and full access to any account upon receipt of a National Security Letter.

Caproni would come under fire throughout her career for gross abuses of the process including the arbitrary creation of so called "exigent letters" which have no statutory

basis in the Patriot Act and the reliance on false statements to open alleged counterintelligence investigations.

https://www.c-span.org/video/?197219-1/fbi-national-security-letters

https://www.grassley.senate.gov/imo/media/doc/judiciary/upload/Caproni-03-19-13-letter-to-OIG-requesting-information.pdf

https://www.techdirt.com/2013/09/09/former-fbi-lawyer-who-oversaw-years-fourth-amendment-violations-agency-nominated-federal-judge-seat/

https://www.washingtonpost.com/world/national-security/former-fbi-official-questioned-on-abuse-of-intelligence-gathering-tools/2013/02/04/b228c4dc-6eef-11e2-aa58-243de81040ba_story.html

Caproni and her successors Andrew Weissman and James Baker went as far as suggesting modifications that amounted to hobbling the most sophisticated products available. These products' creators admonished FBI luddites and articulated how the changes would dramatically weaken security and expose all users to data theft and hacking. Despite a fundamental lack of subject matter knowledge, for years the FBI continued to make demands that industry experts argued would pose too great a risk for everyone should they be compelled to comply.

**A Decade of "Going Dark"**

Nearly eight years after Valerie Caproni delivered an address at Lewis & Clark Law School on "Crimes, War Crimes, and the War on Terror", the New York Times reported, "Obama Won't Seek Access to Encrypted User Data". Perhaps this was true of encrypted data, but perhaps this was just a lawyerly way of talking around a new cooperative plan to intercept data at the source, before it was encrypted or after it had been decrypted. Going back as far as 2005, Caproni had made the FBI's position on "Going Dark" extremely clear, it was a top priority. The persistence with which the FBI pursued this agenda cannot be overstated, nor can the public resistance to it.

Would secretly planting FBI operatives directly inside Twitter allow agents to address management's "Going Dark" concerns without the need to crack encryption keys or reveal their efforts to the public? Could such a cozy relationship indicate that Twitter

had agreed to implement the long-sought FBI back door without informing unsuspecting users? Twitter's new CEO has revealed emails indicating reimbursements to Twitter from the FBI for the fulfilment of requests related to investigations. While Twitter's CEO may have <u>incorrectly characterized</u> the nature and purpose of the payments, it is not denied that the payments were made.

Was Twitter motivated to comply with FBI investigation requests by law or by financial incentives? Did the FBI need warrants to investigate, penetrate or terminate the private Twitter accounts of U.S. citizens? These and other questions remain open. Many may ask, would the FBI do something illegal? Would they take action even if it had no basis in law? House and Senate oversight of the FBI General Counsel's Office and the Inspector General's report on the matter indicate they were in a regular practice of doing exactly that.

<u>Part four will reveal how the U.S. Government essentially became one with private industry when it infiltrated Twitter.</u>

Twitter        Elon Musk        FBI        Patriot Act        Valerie Caproni

Open in app ↗

Get unlimited access

Search Medium

Jason Goodman
Dec 22, 2022 · 4 min read · ▶ Listen

🔖 Save    🐦  f  in  🔗

# THE TWITTER COUP Part 4



President Barack Obama and Twitter CEO Jack Dorsey at the Whitehouse Twitter Town Hall July 6, 2011

**The Marriage of the U.S. Government and Social Media**

Although Barack Obama does not consider himself a luddite, during a 2022 address at the Stanford Internet Observatory he admitted he has to ask his "daughters how to work basic functions" on his phone. Even fifteen years after joining Twitter, Barack Obama's background, experience and technological profile is inconsistent with that of

someone who could have foreseen the impact social media would have on politics all the way back in 2007.

It is impossible to understand the U.S. Government's infiltration into Twitter without exploring the role of the man who is most likely to have presided over this unholy union. Today, he is the President and CEO of the National Academy of Television Arts and Sciences ("NATAS"), an obscure individual named Adam Sharp. Before handing out EMMY awards, Sharp joined Twitter in its pre-IPO days, early in November of 2010. Hot topics in DC at that time included regulation of social media firms. It was quietly coming out that many had hired lobbyists to get in front of the issue. Just prior to Sharp joining Twitter, in October of 2010, the LA Times ran an op-ed reporting "Facebook lobbies California on online privacy act (but shhh — don't tell anyone).

Evidence indicates Sharp's interest in Twitter began long before he was hired there. While serving as an Executive Producer for C-SPAN in 2009, Sharp launched a public affairs database that included "Twitter and Facebook API integration". API stands for application programming interface and describes a set of software tools provided to developers to enable customization and integration with other products. Sharp's utilization of Twitter's development API is an indication that he was very familiar with the inner workings and unrealized potential of Twitter at least by 2009, likely prior.

Sharp's online resume fails to discuss Valerie Caproni's appearance on C-SPAN3 in June of 2009 during the time he was the Executive Producer and managed primetime programming. It is difficult to imagine that the Executive Producer would not interact at all with such an important FBI guest. At very least, as programming manager, Sharp would be aware of the content of the broadcast in which Caproni articulated the FBI's goals to penetrate online communications. It remains unknown if any interaction occurred between Sharp and Caproni. Even in the event that there was none, Sharp was very likely aware of the FBI's concerns about "Going Dark" as long ago as 2009.

While at Twitter, Sharp made incredible inroads both for the company and the U.S. Government. https://www.cnn.com/2015/02/03/politics/twitter-washington-office

Throughout his time at Twitter, Sharp separately owned and operated Sharp Political Consulting, LLC. Sharp incorporated this firm in April of 2007. This is notably close in time proximity to the March 5, 2007 creation of the @barackobama Twitter account

cited in the Atlantic Magazine article, "You're Not Really Following @BarackObama on Twitter".

Creation of Obama's now famous Twitter account is especially notable because Twitter was virtually unknown in 2007. Jack Dorsey had published the world's first Tweet less than one year prior on March 21, 2006. Obama was not only one of the first politicians to join Twitter, but he was also among the first of all users. Technology moguls including current Twitter CEO Elon Musk, and former Microsoft CEO Bill Gates would not join until years later in June 2009. No other person fits the profile or was in the position to put Barack Obama and Twitter together in the way Adam Sharp clearly was.

Journalist Phillip Bump told Atlantic Magazine readers that Obama's "Twitter account was created by a staffer on March 5, 2007, two months before he formally announced his Presidential candidacy." The Senate staffer has never been identified, but Sharp was serving as Deputy Chief of Staff for Senator Mary L. Landrieu at the time. An election postmortem from the New York Times citing Obama's genius in leveraging social media declared an anonymous "friend" brought Marc Andreessen to the Obama campaign. Could both of these anonymous King Makers be Sharp? The answer remains a mystery, but it is likely 'yes'.

Even after Sharp became Twitter's official Government Liaison, Sharp Political Consulting, LLC remained active and engaged in matters that do not seem to have clear connections to Twitter.

Sharp Political Consulting made over $50,000 in political contributions to Democrat candidates in 2014.

In January 2016, pollsters calculated a 71% likelihood of a Hillary Clinton presidential win. For reasons that are unclear, Sharp voluntarily dissolved Sharp Political Consulting, LLC on January 29, 2016. In December 2016, less than one year later and precisely one month after Donald Trump's largely unexpected victory over Clinton, Sharp abruptly left his beloved Twitter and promptly formed SharpThings, LLC, just one week after the press release announcing his departure. Sharp would spend a lot of time lecturing about Disinformation in various public speaking engagements from 2016 through 2018 and then during his tenure as CEO of NATAS beginning in 2018. Was

Sharp's departure motivated by an urgent need to step up *la Résistance* to Donald Trump?

Part five will bring the story up to today and connect the suspected conspirators to the events being exposed in The TWITTER FILES.

Obama        Jack Dorsey        Twitter        FBI        Elon Musk

Open in app ↗

Get unlimited access



Jason Goodman
Dec 22, 2022 · 3 min read · ▶ Listen

🔖 Save

# THE TWITTER COUP Part 5



President Barack Obama, Twitter Head of News, Politics and Elections Adam Sharp, Twitter General Counsel Alexander Macgillivray and other staff members celebrate their success at the Whitehouse on July 6, 2011

**Operational Deployment of FBI–Twitter**

For more than a decade, FBI leadership was acutely focused on a "Going Dark" public relations campaign. James Comey and Christopher Wray each spoke about it throughout their respective tenures as FBI Director.

But it was Valerie Caproni's disciples in the FBI General Counsel's office that finally made the plans operational. Her direct successor Andrew Weissman led the Mueller Investigation into Russian Collusion with the Donald Trump Presidential Campaign. This investigation was marred by the abuse of the secret FISA Court process and was distinctly categorized by Mueller's team as a Counterintelligence investigation rather than a criminal investigation. This distinction allowed investigators to access the unconstitutional and disputed powers imbued upon the FBI by Caproni. Ultimately, no evidence was found to substantiate the Mueller accusations.

Because the mere suggestion of Russian interference with a U.S. Presidential election represents a national security threat, the accusation alone absent evidence, was legally sufficient to open an investigation under the Patriot Act. This would have allowed Andrew Weissmann to use National Security Letters to merely allege that Trump represented a national security threat and initiate the years long and highly disruptive probe. This is perhaps the clearest example of naked abuse of the Patriot Act since its inception and provides good grounds for its termination.

Weissmann's successor James Baker. Director Comey appointed Baker General Counsel of the FBI on January 15, 2014. Baker was reassigned by Wray in 2017 and then resigned amid accusations that he leaked classified documents related to the Mueller investigation of Trump.

Senior Fellow in Governance Studies at the Brookings Institution, Benjamin Wittes was the likely recipient of the leak. Wittes is the editor of Lawfare, an online publication of the Brookings Institution that James Comey told an audience he reads every day. Wittes has claimed to be among James Comey's closest friends. Baker would transition to Brookings and Lawfare after departing the FBI and prior to becoming Twitter's Deputy General Counsel. The Brookings Institution is a non-profit think tank and a potential incubator for domestic coup d'etats, perhaps along the lines of what was done with Twitter. Baker appeared on MSNBC as recently as 2019 restating unconstitutional FBI demands to access everyone's data at any time.

**FBI All in at Twitter**

On or around May 28, 2020, a new Twitter policy began adding warnings to "fact check" users' Tweets. After warnings were applied to Tweets sent from @realDonaldTrump, the President issued executive order 13925 titled "Preventing Online Censorship". The order sought to curb perceived abuse of 47 USC § 230, the infamous Communications Decency Act that shields online service providers from liability even if they editorialize content that does not violate the law or civil torts. If implemented, the proposed changes threatened to expose Twitter to thousands of civil legal actions. Less than three weeks after Trump's order, former FBI General Counsel Baker joined Twitter as Deputy General Counsel. Was this a coincidence or was Baker still serving the demands of his long-time FBI colleagues? Baker had transitioned through the FBI revolving door of non-profit think tanks, including the Brookings Institution, Lawfare and the R Street Institute, following the plan articulated in Obama's 2015 Stanford inspired order.

It has now been widely reported that during Baker's time as Deputy General Counsel, Twitter suppressed a true and accurate news story published by the New York Post that likely affected the outcome of the 2020 Presidential election. Dr. Michael Shellenberger provides evidence of communications between FBI Special Agent Elvis Chan and employees of Twitter in the Twitter Files 7.

The communications indicate the FBI had foreknowledge of facts that would be asserted by the New York Post and knew them to be true, but falsely informed Twitter it was the product of a Russian "hack and leak" operation.

Now we stand at the brink of world war in Ukraine. Even stating the opinion "Joe Biden and Twitter rigged the 2020 election with the help of the FBI" is considered spreading disinformation. The FBI and CISA have determined disinformation is a national security threat. This logically could lead to the FBI investigating you if they decide something you say is false.

America has been transformed right before our eyes, and all that was needed was a pen and a phone.

Sources and Additional Information

Application DENIED.  Defendant's Rule 60(b) motion to vacate this Court's prior orders is denied as frivolous.


SO ORDERED.          11/29/2023

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE